

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

RCH:BW/MG/RB                                    *271 Cadman Plaza East*
F. #2021R00629                                   *Brooklyn, New York 11201*

August 15, 2023

<u>By ECF and E-mail</u>

Honorable LaShann DeArcy Hall
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:    United States v. Jiahui Miao
             <u>Criminal Docket No. 22-458 (LDH)</u>

Dear Judge DeArcy Hall:

        The government respectfully writes to inform the Court that the defendant Jiahui Miao has violated a condition of his pretrial release by committing a federal crime after his release. Specifically, on or about June 5, 2023, Miao applied for a life insurance policy with a face value of $150 million using false information, in violation of 18 U.S.C. § 1343 (wire fraud).[1] This conduct violates the condition of pretrial release that he "must not violate any federal . . . law while on release." Order Setting Conditions of Bond, ECF No. 72.

        For the following reasons, the government moves to revoke the defendant's bond and issue a permanent order of detention pending trial pursuant to 18 U.S.C. § 3148(b).

I.      <u>Background and Procedural History</u>

        On October 6, 2022, a grand jury returned an indictment charging the defendant with money laundering and money laundering conspiracy, in violation of 18 U.S.C. §§ 1956(h) and 1957, and operating an unlicensed money transmitting business and conspiracy, in violation of 18 U.S.C. §§ 371 and 1960(a).

---

      [1] The government learned of this information on July 5, 2023, and informed Pretrial Services. At that time, the government indicated that it would investigate the potential violation before informing the Court as to whether there was probable cause that the violation occurred. The government is informing the Court of this criminal conduct at this time because, after further investigation, it has concluded that there is such probable cause.

The money laundering counts stem from the "T5 Scam" in which victims were contacted on messaging applications, such as WhatsApp, by strangers who claimed to have made money investing in various investment markets, such as cryptocurrency markets and foreign exchange markets.  After being convinced to invest, the victims were referred to purported account managers who directed the victims to wire funds to specific bank accounts.  The victims were later denied the ability to withdraw their invested funds.  Law enforcement estimates there are over 200 victims of the T5 Scam with losses totaling almost $18 million.

Once the victims wired funds to bank accounts, the defendant and his co-conspirators laundered those funds to their personal checking accounts and then again into other bank accounts, cryptocurrency accounts or withdrew the funds as cash.  The evidence in this case reveals that the defendant not only knew that the funds represented proceeds from some type of criminal offense, but that he also knew that they were specifically derived from the T5 Scam.

The two other counts charge the defendant with operating, and conspiring to operate, an illegal, underground "bank" that, among other things, converted cash into cashier checks for customers in exchange for a fee.

The defendant was arrested on October 13, 2022.  At the defendant's arraignment, bond was set at $100,000 secured by two suretors, and the defendant was released subject to location monitoring with a curfew.  Among other standard conditions of release, the defendant was advised that he "must not violate any federal, state or local law while on release."  See ECF No. 72.  Because the defendant resided in New Jersey, he was placed under supervision by New Jersey's Pretrial Services.

II.     Conduct While on Bond

On October 24, 2022, the defendant moved to modify his conditions of pretrial release by removing curfew because the "signature bond and other release conditions obviate the need for curfew."  ECF No. 73.  The defendant stated that the removal of curfew "would leave in place conditions sufficient to assure . . . any other concern pursuant to 18 U.S.C. § 3142."  Id. Pretrial Services in New Jersey opposed the modification, and after a conference on December 5, 2022, the modification request was discussed and denied.  See Dec. 5, 2022 Dkt Entry.

On February 23, 2023, Pretrial Services in the Eastern District of New York ("Pretrial Services") informed the government and defense counsel by email that the defendant was evicted from his apartment in New Jersey the prior day, on February 22, 2023, and that a judge denied his request to return to the apartment.  The defendant then stayed at the residence of his co-defendant, Hua Zhou, in Flushing, Queens—in violation of the conditions of his pretrial release.  Pretrial Services advised defense counsel that the defendant could not stay with a co-defendant per the condition of release that he "must avoid all contact with . . . codefendants except in the presence of counsel."  ECF No. 72.  The defendant then moved into an apartment in Long Island City, New York (the "Long Island City Address").

On April 11, 2023, Pretrial Services informed the government by email that during a home visit to the Long Island City Address, the defendant asked to have his passport

returned in order to use it as a source of identification to secure a New Jersey driver's license. According to Pretrial Services, the defendant explained that he had a New York driver's license but wished to change it to New Jersey, despite not living in New Jersey at the time. When pressed further, the defendant initially claimed that he needed this new driver's license because his New York driver's license was expiring. He then told Pretrial Services that the New York driver's license had in fact already expired. Pretrial Services asked to see the New York driver's license, which was not due to expire until 2024.

On August 3, 2023—after the criminal conduct described below—the government was informed by email that one of the defendant's suretors, David Lee, contacted the magistrate clerks twice requesting to be released from the bond.

III.   <u>Criminal Conduct While on Bond</u>

On June 5, 2023, the defendant applied for a life insurance policy with a total face amount of $150 million from Guardian Life Insurance Company of America ("Guardian"). As part of the life insurance policy, the defendant added a "paid-up additions" rider, which required him to pay $320,000 upfront with the option of depositing an additional $4.4 million; the defendant could then withdraw these funds from the life insurance policy as a loan from Guardian. This type of policy provides the opportunity for money laundering because the depositor is able to deposit laundered funds and withdraw clean funds from the insurance company.

Guardian declined to issue the policy because Guardian discovered that the defendant had been charged with several felonies by indictment, yet on his application, the defendant checked "No" to the question "Within the last 10 years, have you been convicted of a felony, or is such a charge pending against you?" In addition, Guardian could not verify certain information, such as the primary residence the defendant provided, which was an office building located at 888 7th Avenue #23A, New York, New York. That address is in contrast to the primary residence the defendant told to Pretrial Services, which is the Long Island City Address, not an office building in Manhattan.

The Guardian application contains additional inconsistencies or implausibilities. For example, the defendant, who is 25 years old, listed that his net worth was $30 million, his expected earned income this year is $20 million, and his actual income last year was $27 million. He reported his occupation as self-employed as an "investor" for "more than one year." None of this income was reported to Pretrial Services, and it is uncertain how and whether it was obtained.[2] The defendant also wrote that his three individual beneficiaries, who were his parents and brother, lived with him at the office building address, in contrast to his interview with Pretrial Services in which he reported that his parents lived in China and he had no family

---

[2] Pretrial Services reported that when asked about his means of employment on or about July 10, 2023, the defendant stated he is a real estate investor, works for several nonprofit charity organizations, and that he is in the process of purchasing a $10 million building.

members in the United States.  For each of his beneficiaries, he provided the same birthdate of January 1.

The evidence confirms that the defendant submitted the Guardian application. According to Guardian, the defendant met with a Guardian representative in person to discuss the application and then digitally submitted the application.  One of the two IP addresses tied to the submission of the application, 68.233.185.14, was traced back to the Long Island City Address—the same address as where the defendant currently resides.[3]  The application also listed a phone number that the defendant used to contact the U.S. Attorney's Office press line on or about July 3, 2023, in which he left a voicemail requesting a copy of the indictment.[4]  That phone number is also listed as the contact phone number on the website for the business, VertCity, which names the defendant as its principal along with a photograph of the defendant.[5] (David Lee, the defendant's suretor who recently requested to be released from the bond, is also listed as a principal.)  VertCity claims to invest in real estate properties and that it has filed an annual report and other reports with the Securities and Exchange Commission ("SEC"), but a review of the SEC database reveals no filings by VertCity or any information about VertCity at all.[6]

The Guardian application also stated that the defendant had applied for a life insurance policy in the amount of $80 million at Massachusetts Mutual Life Insurance Company, but the government has not yet confirmed this information.

IV.   Legal Standards

Pursuant to 18 U.S.C. § 3148(a), a defendant on bail may be subject to "revocation of release" if he "has violated a condition of his release under" § 3142.  At a revocation hearing, the Court must make specific "written findings," which may entail "the written transcript" of the revocation hearing in which the Court "clearly set[s] out" the "findings and reasons for issuing a detention order."  United States v. English, 629 F.3d 311, 321 (2d Cir. 2011); see also United States v. Davis, 845 F.2d 412, 415 (2d Cir. 1988).

At the hearing, the government may proceed by proffer and rely on letters to the Court, see United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000), because the revocation hearing is not intended to be a "mini-trial" or a "discovery tool for the defendant," Davis, 845 F.2d at 415 (quoting United States v. Martir, 782 F.2d 1141, 1145 (2d Cir. 1986)), and the hearing is "typically informal," United States v. Brooks, 872 F.3d 78, 84 n.11 (2d Cir. 2017) (quoting LaFontaine, 210 F.3d at 131).

---

[3] The second IP address did not return to a provider and could not be traced.

[4] This voicemail message was provided to defense counsel.

[5] See "Our Team," VertCity LLC, available at https://www.vertcity.com/our-team-vertcity (last accessed August 15, 2023).  The government has screenshots of the referenced webpages that it can provide to the Court.

[6] VertCity lists three business addresses—each of which is different from the address the defendant provided on the Guardian application.

The Court may release a defendant consistent with 18 U.S.C. § 3142 if the Court "finds that there are conditions of release that <u>will</u> assure that the person will not flee or pose a danger to the safety of any other person or the community, and that the person <u>will</u> abide by such conditions." 18 U.S.C. § 3148(b) (emphasis added). But this Court must revoke bail and detain the defendant under certain circumstances set forth in 18 U.S.C. § 3148(b).

Relevant here, revocation "<u>shall</u>" occur if the Court "determines . . . that there is 'probable cause to believe that the person has committed a Federal, State, or local crime while on release,'" and one of the two conditions set forth in Section 3148(b)(2) applies. <u>LaFontaine</u>, 210 F.3d at 130 (quoting 18 U.S.C. § 3148(b)(1)(A) (emphasis added)). Probable cause "requires only a 'practical . . . probability' that the evidence supports a finding 'that the defendant has committed a crime while on bail.'" <u>Id.</u> at 133 (quoting <u>United States v. Gotti</u>, 794 F.2d 773, 777 (2d Cir. 1986)); <u>see also</u> <u>Gotti</u>, 794 F.2d at 777 (rejecting preponderance standard and requiring "only that the facts available to the judicial officer 'warrant a man of reasonable caution in the belief' that the defendant has committed a crime while on bail" (citation omitted)).

Under Section 3148(b)(2), the Court also "must find that [1] 'there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community,' <u>or</u> that [2] 'the person is unlikely to abide by any condition or combination of conditions of release.'" <u>LaFontaine</u>, 210 F.3d at 133 (emphasis added) (quoting 18 U.S.C. § 3148(b)(2)(A), (B)). The government bears the burden of proving one of those two Section 3148(b)(2) conditions by a preponderance of the evidence. <u>See</u> <u>id.</u> at 133-34.[7] "Either finding provides an independent basis for detention . . . ." <u>United States v. Manafort</u>, 897 F.3d 340, 345 (D.C. Cir. 2018).

With respect to dangerousness under the first § 3148(b)(2) condition, the Court must consider the factors set forth in § 3142(g). <u>See</u> 18 U.S.C. § 3148(b)(2)(A). Those factors are "the nature and circumstances of the offense charged," "the weight of the evidence against the person," "the history and characteristics of the person," and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." <u>Id.</u> § 3142(g).

If there is probable cause to believe that the defendant committed a felony during pretrial release, "a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any person or the community." 18 U.S.C. § 3148(b). "Once the presumption arises, the ball is in the defendant's court, and it is incumbent on the defendant to come forward with some evidence to rebut the presumption." <u>United States v. Parker</u>, 65 F. Supp. 3d 358, 364 (W.D.N.Y. 2014) (quoting <u>United States v. Cook</u>, 880 F.2d 1158, 1162 (10th Cir. 1989)). Otherwise, the government is entitled to rely on the presumption alone. <u>See</u> <u>id.</u> (citing <u>United States v. Rodriguez</u>, 950 F.2d 85, 88 (2d Cir. 1991)). And "[t]hat presumption does not disappear once the defendant has produced some

---

[7] The government's burden is thus lighter in the § 3148 context than in the § 3142 context. <u>See, e.g.</u>, <u>United States v. Mattis</u>, 963 F.3d 285, 291 (2d Cir. 2020) (noting burden to prove dangerousness by clear and convincing evidence in a § 3142 detention application); <u>Gotti</u>, 794 F.2d at 777-78 (noting difference).

rebuttal evidence, but 'continues to be weighed along with other factors.'" <u>LaFontaine</u>, 210 F.3d at 130 (quoting <u>Rodriguez</u>, 950 F.2d at 88).

As for the defendant's compliance under the second § 3148(b)(2) condition, the Court may consider the defendant's "previous[] disregard[]" of court orders and his "latest violation of the trial process." <u>LaFontaine</u>, 210 F.3d at 135 n.6

V.      <u>Application for Detention</u>

The defendant's criminal conduct, as well as his conduct while on pretrial release, weigh heavily in favor of detention. The defendant's bond and restrictions of location monitoring and curfew were initially intended to secure his appearance in court. Now, the defendant has taken the opportunity afforded him by the Court to engage in continuing criminality. Because there is probable cause to believe that the defendant committed a federal crime, and that he is unlikely to abide by any conditions of release—or alternatively, he represents a danger to the community—the government respectfully submits that the defendant should be remanded into custody.

A.      <u>The Defendant Has Committed a Felony While on Release</u>

The facts set forth above establish probable that the defendant violated the terms of his release by committing a crime, specifically wire fraud in violation of Title 18, United States Code, Section 1343.

As found by a grand jury, there is probable cause to believe that the defendant engaged in money laundering, specifically that he laundered and concealed proceeds of a wire fraud scheme. The defendant's instant conduct continues this pattern of deception. The defendant concealed the existence of the significant pending charges and lied about biographical information—facts that must be accurate for Guardian to determine whether to issue a life insurance policy to a particular individual. The defendant made these fraudulent representations in order to obtain both "money and property," <u>i.e.</u>, the potential withdrawal of funds from the policy as a loan and the life insurance policy itself. <u>See</u> 18 U.S.C. § 1343 (criminalizing a scheme to "obtain[] money or property . . . by means of false or fraudulent . . . representations").

Because there is probable cause to believe that the defendant committed a federal crime, the bail revocation condition set forth in 18 U.S.C. § 3148(b)(1)(A) is satisfied as to the defendant. (Relatedly, and for the same reasons, the government submits that there is "clear and convincing evidence" that the defendant "violated [a] condition of release"—that is, the duty not to commit a federal crime. 18 U.S.C. § 3148(b)(1)(B).)

B.      <u>The Defendant Will Not Abide by Any Combination of Release Conditions</u>

The defendant also is "unlikely to abide by any condition or combination of conditions of release." 18 U.S.C. § 3148(b)(2)(B). The defendant failed to abide by a pivotal condition of his pretrial release—that he commit no further crimes. If the defendant "committed a new crime even while ordered not to commit a new crime, it [i]s likely to happen again." <u>Manafort</u>, 897 F.3d at 348 (affirming revocation under § 3148(b)(2)(B)).

6

The most stringent of release conditions outside of detention—home detention—would be insufficient to ensure the defendant's compliance.  Here, the defendant committed the violation by submitting his application online.  Home detention would not prevent the defendant from committing the instant violation, or other financial frauds, from his home.  Additionally, the defendant has shown his resistance to compliance with pretrial conditions.  As described above, four months after his arrest, the defendant violated a condition of pretrial release when he stayed at the apartment of a co-defendant.  He also requested his passport from Pretrial Services under the demonstrably false pretense that he needed it to obtain a new driver's license, in a state in which he did not reside, and despite his current driver's license being valid.

Accordingly, there is no combination of release conditions that can assure his compliance, and the bail revocation condition set forth in 18 U.S.C. § 3148(b)(2)(B) is satisfied as to the defendant.

C.    Alternatively, Detention Will Assure the Defendant Will Not Pose a Danger

Alternatively, a finding of probable cause to believe that the defendant violated his conditions of release by committing the federal crime of wire fraud triggers the statutory presumption that no combination of conditions can assure that he "will not pose a danger to the safety of any other person or the community."  18 U.S.C. § 3148(b)(2)(A); see United States v. Bartok, 472 F. App'x 25, 28-29 (2d Cir. 2012) ("The law plainly states that the presumption may be triggered by a probable cause finding as to a defendant's commission of any felony, regardless of whether the felony itself involves violence, threats, or other indicia of dangerousness.").  At this point, the defendant cannot provide any evidence to rebut that presumption, and analysis of the Section 3142(g) factors also demonstrates that no combination of release conditions can assure community safety from the defendant's dangerousness.  See 18 U.S.C. § 3148(b)(2)(A).

The defendant's recent conduct demonstrates he continues to represent a financial danger to the community.  See LaFontaine, 210 F.3d at 134 ("[A] record of violence or dangerousness in that sense is not necessary to support pretrial detention."); see also United States v. Barrett, No. 15-CR-103 (KAM) (E.D.N.Y. May 17, 2016), ECF No. 94 (revoking bond after defendant committed wire fraud while on pretrial release thus posing "financial/economic harm to health care programs").  The defendant lied to Guardian to secure an $150 million life insurance policy that he knew, absent his lies, would not have been issued to him.  Indeed, Guardian denied the application after it learned the defendant had lied about pending federal charges.  The issuance of the life insurance policy would have caused Guardian to make available up to $4.7 million in cash and put Guardian in a position where it could be used to recycle laundered funds.

The proffered evidence demonstrates that the defendant is a danger to individuals and institutions through the charges in the indictment and the defendant's misrepresentations to Guardian.  The "nature and circumstances" of the pre- and post-release misconduct and the weight of the evidence thus counsel in favor of detention.  18 U.S.C. § 3142(g)(1), (2) and (4).  And, as explained above, the defendant has been unable to stay law-abiding while released.  See 18 U.S.C. § 3142(g)(3) (finding relevant the defendant's "history and characteristics").

Therefore, the bail revocation condition set forth in 18 U.S.C. § 3148(b)(2)(A) is satisfied as to the defendant.

VI.     <u>Conclusion</u>

For these reasons, the government respectfully requests that the Court hold a hearing, revoke the defendant's bond, and enter a permanent order of detention.[8]

Respectfully submitted,

BREON PEACE
United States Attorney

By:       <u>       /s/              </u>
        Benjamin Weintraub
        Miranda Gonzalez
        Raffaela Belizaire
        Assistant U.S. Attorneys
        (718) 254-7000

cc:     Clerk of the Court (LDH)
        Angelo MacDonald, Esq. (defense counsel)
        Tara Sarnelli, U.S. Pretrial Services Officer

---

[8] The government understands that defense counsel is traveling from August 17, 2023 through August 22, 2023 and that the assigned Pretrial Services Officer is in training during the week of August 14, 2023. Accordingly, the government respectfully requests a hearing on August 23, 2023 or at a time thereafter convenient to the Court.