1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - X

UNITED STATES OF AMERICA,          : 22-CR-458(LDH)
                                   :
                                   :
                                   :
        -against-                  : United States Courthouse
                                   : Brooklyn, New York
                                   :
                                   :
LINGMING ZENG,                     : Monday, January 29, 2024
                                   : 3:00 p.m.
        Defendant.                 :
                                   :
                                   :
- - - - - - - - - - - - - - X

TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
BEFORE THE HONORABLE SANKET J. BULSARA
UNITED STATES MAGISTRATE JUDGE

A P P E A R A N C E S:


For the Government:    BREON S. PEACE UNITED STATES ATTORNEY
                       EASTERN DISTRICT OF NEW YORK
                         271 Cadman Plaza East
                         Brooklyn, New York 11201
                       BY:RAFFAELA BELIZAIRE
                          BENJAMIN WEINTRAUB
                          Assistant United States Attorney


For the Defendant:     R-SQUARE, ESQ., PLLC
                         112 West 34th Street - 18th Floor
                         New York, New York 10120
                       BY:ROYCE RUSSELL, ESQ.


Court Reporter:        LINDA A. MARINO, OFFICIAL COURT REPORTER
                       225 Cadman Plaza East/Brooklyn, NY 11201
                       lindacsr@aol.com


Proceedings recorded by mechanical stenography, transcript
produced by Computer-Aided Transcription.

*Proceedings*                                                   2

1       THE COURTROOM DEPUTY:  We are here on criminal case

2   22-CR-548, USA v. Zeng.

3       Counsel, please state your appearances for the

4   record, starting with Government.

5       MR. WEINTRAUB:  Good afternoon, your Honor.  Ben

6   Weintraub and Raffaela Belizaire for the United States.

7       THE COURT:  Good afternoon.

8       MR. RUSSELL:  Good afternoon.  Royce Russell

9   representing Mr. Lingming Zeng.

10      THE COURT:  Good afternoon.

11      And good afternoon, Mr. Zeng.

12      Just give me one moment while I get everything in

13  order.

14      (Pause in proceedings.)

15      THE COURT:  Mr. Russell, I just want to confirm

16  that, and I may ask this again, but I want to confirm that

17  your client is ready to proceed today.

18      MR. RUSSELL:  My client is ready to proceed, your

19  Honor.

20      THE COURT:  And has he had enough time to meet with

21  the interpreter -- sorry, not meet with the interpreter but to

22  have the relevant documents explained to him via an

23  interpreter?

24      MR. RUSSELL:  That is correct.  The last meeting in

25  explanation was on Friday.

*Proceedings* 3

1      THE COURT:  Okay.  Let me ask the Government, I have
2  an updated agreement.
3      Is the only change to the agreement the date on
4  which the plea is to be taken in order to get acceptance and
5  responsibility credit?
6      MR. WEINTRAUB:  Yes, your Honor.
7      THE COURT:  Mr. Zeng, I'm advised by your lawyer
8  that you wish to plead guilty to some of the charges contained
9  in the indictment that's been filed against you.
10      Is this correct?
11      THE DEFENDANT:  Yes.
12      THE COURT:  This is a serious decision.  I have to
13  make sure you understand what it means to enter a guilty plea,
14  what rights you'd be giving up if you entered a guilty plea,
15  and the consequences of entering a guilty plea in your case.
16  And I will be asking you some questions and it's very
17  important that your answers to my questions be made under
18  oath.
19      And, so, what I'm going to have you do is be sworn
20  in now by my deputy, Mr. Manson, and, if you could, just
21  follow his instructions.
22      THE DEFENDANT:  Okay.
23      THE COURTROOM DEPUTY:  Would you please stand?
24      Do you solemnly affirm that the testimony you're
25  about to give will be the truth, the whole truth, and nothing

*Proceedings*                                                4

1    but the truth?

2              THE DEFENDANT:  Yes.

3              THE COURT:  You may have a seat.

4              Mr. Zeng, do you understand that now that you've

5    been sworn, your answers to my questions are subject to the

6    penalty of perjury or making a false statement if you don't

7    answer truthfully?

8              THE DEFENDANT:  Yes.

9              THE COURT:  To be clear, what that means is if I ask

10   you a question and you tell me a lie, the Government could

11   prosecute you for making a false statement and use what you

12   say today in such a case against you.

13             Do you understand that?

14             THE DEFENDANT:  Yes.

15             THE COURT:  Now, the first thing, Mr. Zeng, I want

16   you to understand is that this is Judge DeArcy Hall's case.

17   She is the judge who will sentence you and make the ultimate

18   decision on whether to accept your plea.  Now, if you wish,

19   you have an absolute right to enter your plea before her.

20   There would be no prejudice to you.

21             As an alternative, I will listen to your plea today.

22   As you can see, we have a court reporter present who is

23   preparing a transcript of today's proceedings.  Judge DeArcy

24   Hall will review the transcript in connection with your

25   sentencing and make a decision on whether to accept your plea.

*Proceedings*                                                        5

1          Do you understand?

2          THE DEFENDANT:  I understand.

3          THE COURT:  And do you wish to give up your right to

4   have Judge DeArcy Hall hear your plea and do you wish to

5   proceed instead before me?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Is your decision to proceed before me

8   voluntary and of your own free will?

9          THE DEFENDANT:  Yes.

10         THE COURT:  Has anyone threatened you or forced you

11  or pressured you or made any promises to you that are causing

12  you to proceed before me?

13         THE DEFENDANT:  No.

14         THE COURT:  I'm marking as Court Exhibit 1 a consent

15  to have a plea taken before United States Magistrate Judge.

16         (Court Exhibit 1 so marked.)

17         THE COURT:  Mr. Zeng, can you just confirm for me

18  that this is your signature on this document?

19         THE DEFENDANT:  It is.

20         THE COURT:  And was this document translated for you

21  either word-for-word or in substance explained to you what it

22  means?

23         THE DEFENDANT:  Yes.

24         THE COURT:  I note that Court Exhibit 1, the consent

25  form, has been signed by Mr. Zeng, it's been signed by his

*Proceedings*                                                        6

1   lawyer, it's been signed by the Government.  And based upon

2   this document, as well as the colloquy, meaning the questions

3   and answers I went over with Mr. Zeng, I find that his consent

4   to proceed before me is voluntary and of his own free will;

5   and, therefore, I will proceed to take his plea.

6          Now, Mr. Zeng, before I can accept a plea or take

7   your plea, I need to ask you some questions to make sure that

8   any plea we take today is a valid one.  So, I'm going to be

9   asking you some questions.  If you don't understand what I'm

10  asking you, let me know, and I'll rephrase, okay?

11         Sir, can you tell me what your full name is?

12         THE DEFENDANT:  Yes, Lingming Zeng.

13         THE COURT:  And Mr. Zeng, how old are you?

14         THE DEFENDANT:  I am 39 years old.

15         THE COURT:  And how far did you get in school, sir?

16         THE DEFENDANT:  I only went to elementary school.

17         THE COURT:  And you're understanding today's

18  proceedings through an interpreter; is that correct?

19         THE INTERPRETER:  Sorry, little technical issue.

20         (Pause in proceedings.)

21         THE INTERPRETER:  Okay.

22         THE COURT:  Mr. Zeng, you're understanding today's

23  proceedings through the assistance of an interpreter; is that

24  correct?

25         THE DEFENDANT:  Yes.

*Proceedings*                                                        7

1          THE COURT:  And sir, are you currently under the

2    care of a doctor or a psychiatrist for any reason?

3          THE DEFENDANT:  No.

4          THE COURT:  In the last 24 hours, have you had any

5    drugs or medicine or pills?

6          THE DEFENDANT:  No.

7          THE COURT:  And have you had any alcoholic beverages

8    in the last 24 hours?

9          THE DEFENDANT:  No.

10          THE COURT:  And sir, have you ever been hospitalized

11    or treated for drug addiction or alcoholism?

12          THE DEFENDANT:  No.

13          THE COURT:  Have you ever been treated or

14    hospitalized for any mental or emotional health condition?

15          THE DEFENDANT:  No.

16          THE COURT:  Is your mind clear, sir?

17          THE DEFENDANT:  Yes.

18          THE COURT:  You understand what's going on here

19    today?

20          THE DEFENDANT:  I do.

21          THE COURT:  Mr. Zeng, as someone who has been

22    charged in a federal criminal case, you have certain rights.

23    One of the rights you have is a right to counsel, which is a

24    right to a lawyer.

25               You have a right to have a lawyer represent you at

*Proceedings* 8

1   every stage of your case, from the time you're arrested or

2   charged to however your case may end, including any trial or

3   any appeal.  And if you couldn't afford a lawyer, the Court

4   would appoint one for you.

5          Do you understand what I've explained?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Is Mr. Russell your lawyer?

8          THE DEFENDANT:  Yes.

9          THE COURT:  If at any time today you wish to speak

10  with him for any reason at all, maybe because you have a

11  question, you want some reassurance, any reason at all, I will

12  permit you to do so.  You just need to let me know.

13         Okay?

14         THE DEFENDANT:  I will.

15         THE COURT:  Have you had any difficulty meeting or

16  communicating with Mr. Russell?

17         THE DEFENDANT:  My attorney and I have communicated.

18         THE COURT:  Have you had enough time to discuss your

19  decision to enter a plea with him?

20         THE DEFENDANT:  Yes.

21         THE COURT:  And are you fully satisfied with the

22  representation and advice that he's given you?

23         THE DEFENDANT:  Yes, I'm very satisfied.

24         THE COURT:  Mr. Russell, have you met with your

25  client about entering a plea today and his case generally?

*Proceedings*                                                             9

1          MR. RUSSELL:  Yes, I have.

2          THE COURT:  Have you had any difficulty meeting with

3   him or discussing the case with him?

4          MR. RUSSELL:  No.

5          THE COURT:  Are you fully satisfied that he

6   understands the rights he'd be waiving if he were to enter a

7   plea today?

8          MR. RUSSELL:  Yes.  With the assistance of an

9   interpreter, he's fully competent to understand.

10         THE COURT:  And you believe that he's capable of

11  understanding today's proceedings?

12         MR. RUSSELL:  Yes.

13         THE COURT:  Do you have any doubt at all about his

14  competence to enter a guilty plea?

15         MR. RUSSELL:  No, I do not.

16         THE COURT:  Have you discussed with him the maximum

17  and minimum fine and sentence that could be imposed upon him

18  on the charges if he were to enter a plea?

19         MR. RUSSELL:  Yes.

20         THE COURT:  Have you discussed with him the

21  sentencing guidelines and how the guidelines might effect his

22  case?

23         MR. RUSSELL:  We discussed the potential sentencing

24  guidelines, correct.

25         THE COURT:  All right.  And Mr. Russell, did you

*Proceedings*                                                    10

1   with the assistance of an interpreter discuss the indictment

2   with Mr. Zeng?

3              MR. RUSSELL:  Many occasions.

4              THE COURT:  Okay.

5              Mr. Zeng, did you have an opportunity to discuss the

6   charges in the indictment with your lawyer?

7              THE DEFENDANT:  Yes, last Friday and we often

8   discuss about that.

9              THE COURT:  What I'm going to do right now just to

10  make sure you understand is tell you what the Government has

11  charged you with, okay?

12             The charging document in the case is an indictment,

13  okay?

14             The first count of that indictment charges you with

15  a felony.  And that felony, the title of it, is a conspiracy

16  to commit bank fraud.

17             The Government alleges that you engaged in or

18  entered into an illegal agreement.  And the illegal agreement,

19  its objective or purpose was to commit bank fraud, okay?

20             And specifically, the indictment alleges that in

21  between or around September 2020 and May 2022, you, along with

22  others, conspired or entered into an agreement to defraud one

23  or more financial institutions.  And the purpose of that

24  agreement was to defraud those institutions of money and

25  property or funds and assets and specifically by using or

*Proceedings* 11

1  making one or more false statements.

2      Do you understand what I've explained to you, sir,

3  this first count?

4      THE DEFENDANT:  Yes.

5      THE COURT:  In Count Eight --

6      MR. WEINTRAUB:  Just to -- is the Court going to

7  read only the counts he's pleading to or the counts he's

8  charged with?

9      THE COURT:  My typical practice, unless you believe

10 I should do something else here, I would only be discussing

11 the counts that I understand Mr. Zeng is intending to enter a

12 guilty plea to.

13     MR. WEINTRAUB:  That works perfectly.  There was

14 Count Seven that he was charged with.  I just wanted to make

15 sure we didn't skip it.

16     THE COURT:  In Count Eight, you're charged with a

17 conspiracy to operate an unlicensed money transfer business.

18 This is also a felony.

19     And the Government alleges that between January 2021

20 and July 2022, you entered into an illegal agreement whose

21 objective was to operate what's known as an unlicensed money

22 transmitting business; and specifically, the business that's

23 called Zhang's Cash to Carriers Check Business.  And the

24 Government alleges that there were various what are known as

25 overt acts or steps that were taken to further or carry out

*Proceedings*                                                                12

1    that illegal agreement to operate this illegal business, okay?

2              And the indictment alleges specific acts, the

3    Government alleges, you or other members of the conspiracy,

4    other members who participated in the illegal agreement,

5    carried out.

6              Do you understand what I've explained, sir?

7              THE DEFENDANT:  Yes.

8              THE COURT:  Now, in Count Eleven, the Government has

9    charged you with a felony that's called a money laundering

10   conspiracy, okay?

11             And here, the Government alleges that you were a

12   member of a conspiracy, you joined an illegal agreement, whose

13   objective was money laundering.  And specifically, they allege

14   that the objective or purpose of that conspiracy was to use

15   financial institutions and engage in financial transactions

16   with proceeds that were derived from unlawful activity, okay?

17             And they allege that the amount of those proceeds

18   was greater than $10,000 and that the proceeds were derived

19   from specific unlawful activity; specifically, wire fraud.

20             Do you understand what I've explained, sir?

21             THE DEFENDANT:  Yes.

22             THE COURT:  And Mr. Zeng, in Count Twenty-Eight, the

23   Government has alleged what's known as a conspiracy to commit

24   passport fraud.  And again, this is a felony.

25             And, again, this is an illegal agreement that the

1   Government alleges that you participated in or joined in.  And

2   here, the Government alleges that the purpose of this illegal

3   agreement was to use false or forged or counterfeit passports

4   or things that were supposedly passports and the Government

5   has alleged that you and other members of the conspiracy took

6   steps to carry out this illegal scheme related to passport

7   fraud.

8            Do you understand what I've explained, sir?

9            THE DEFENDANT:  Yes.

10           THE COURT:  Now, Mr. Zeng, when somebody pleads

11  guilty to a felony offense in federal court, they're giving up

12  their right to a trial, to have a jury determine their guilt,

13  okay?

14           In order for you to fully understand what it means

15  to give up that right, I'm going to explain to you what

16  happens during a jury trial, okay?

17           In a jury trial in a federal criminal case, it's the

18  Government that bears the burden of proof.  It's their burden

19  to prove your guilt.  And they have to do that beyond a

20  reasonable doubt.  You don't have to prove your innocence,

21  okay?

22           And in order for the Government to get a jury to

23  return a guilty verdict against you on any of these counts,

24  they have to prove certain things.  Those things are called

25  elements, okay?

*Proceedings*                                                          14

1          And what I'm going to do is explain to you for each

2     of these offenses that you're charged with in the indictment

3     what the Government would have to prove to a jury in order for

4     that jury to return a guilty verdict against you on that

5     charge.

6          Do you understand what I'm about to explain to you,

7     sir?

8          THE DEFENDANT:  Yes.

9          THE COURT:  The first count of the indictment

10    charges you with, as I mentioned, conspiracy to commit bank

11    fraud.  And I mentioned that that's an illegal agreement the

12    Government alleges you joined.

13         For the Government to get a jury to return a guilty

14    verdict on that charge, they've got to prove that two or more

15    people formed an unlawful agreement whose purpose was to

16    commit bank fraud.  Then they have to prove that you knowingly

17    and intentionally joined that agreement.

18         But what does it mean to have an illegal objective

19    to commit bank fraud?

20         That basically means the objective of this illegal

21    conspiracy was a scheme to defraud a bank with an intention to

22    defraud that bank and to defraud banks that are insured by

23    what is known as the Federal Deposit Insurance Corporation, or

24    FDIC.

25         In other words, to recap, the Government has to

*Proceedings*                                                    15

1   prove that two or more people formed an unlawful agreement,

2   they've got to prove that you joined that unlawful agreement,

3   and they've got to prove that the purpose of that agreement

4   was to commit bank fraud, as I've explained what that is,

5   which is a scheme to defraud a bank whose deposits are insured

6   by the FDIC.

7           Do you understand what I've explained, sir?

8           THE DEFENDANT:  Yes.

9           THE COURT:  Mr. Zeng, in Count Eight, as I

10  mentioned, the Government has charged you with conspiring to

11  operate an unlicensed money-transmitting business.

12          For the Government to get a jury to return a guilty

13  verdict on that charge, they've got to prove that two or more

14  people entered into an unlawful agreement, that you joined

15  that unlawful agreement intentionally and with knowledge, that

16  one member of that agreement committed an overt act, meaning

17  they took some step to further or carry out that illegal

18  agreement.  And here the illegal agreement, the purpose, the

19  Government alleges, is to operate an unlicensed money

20  transmitting business, okay?

21          And basically, what that is is a purpose to operate

22  a business that transmits money across state lines or across

23  international lines that's unlicensed and to have someone, a

24  person, control or manage or operate or supervise that

25  unlawful business.

*Proceedings*                                                    16

1          So, to recap, the Government alleges that there was

2     a conspiracy to operate an unlicensed money-transmitting

3     business.  Two or more people have to have formed that

4     agreement.  They have to prove that you joined that agreement

5     knowingly, intentionally, that somebody took some step to

6     carry out that agreement in furthering or carrying out the

7     purpose of that agreement, which was to operate a

8     money-transmitting business that was unlicensed.

9          Do you understand what I've explained, sir?

10         THE DEFENDANT:  Yes.

11         THE COURT:  In Count Eleven, the Government alleges

12    that there was a conspiracy to commit money laundering.

13         For the Government to have a jury return a guilty

14    verdict on that charge, they've got to show that there were

15    two or more people who joined an unlawful agreement, that you

16    became a member of that unlawful agreement with knowledge and

17    an intention to join that agreement, and that the objective of

18    that agreement was to commit money laundering; in other words,

19    the purpose of that agreement was to commit money laundering.

20         What's money laundering?

21         That's when someone engages in a transaction that

22    effects interstate commerce, which means it could be money

23    that crosses state or international lines, the money or the

24    transaction involving the money involves proceeds that are

25    greater than $10,000, those proceeds are derived from illegal

*Proceedings*                                                    17

1   activity, and the people engage in that transaction with

2   knowledge that the proceeds involved in the transaction are

3   derived from illegal activity.

4          And in order for it to be money laundering, the

5   transaction has to either take place in the United States or

6   the person being charged with it has to be a U.S. citizen or

7   national or permanent resident.

8          To recap, the Government has alleged that you are a

9   member of a conspiracy to engage in money laundering.  To

10  prove that, they've got to show there was an agreement by two

11  or more people to engage in money laundering, that you became

12  a member of that agreement, and the money laundering involved

13  transactions greater than $10,000 and involves money or

14  property that are proceeds that are derived from illegal

15  activity.

16         Do you understand what I've explained, sir?

17         THE DEFENDANT:  Yes.

18         THE COURT:  In Count Twenty-Eight, which is the

19  conspiracy to commit passport fraud, for a jury to return a

20  guilty verdict on that count, the Government has to prove that

21  two or more people entered into an unlawful agreement whose

22  purpose was to commit passport fraud, they've got to prove

23  that you joined that illegal agreement knowingly and

24  willfully, they've got to show that somebody took -- one

25  member of that illegal agreement took a step to further or

*Proceedings*                                          18

1   carry out that illegal agreement.  And, as I mentioned, here

2   the charge is that the purpose of the illegal agreement was to

3   commit passport fraud.

4          Passport fraud, what is that?

5          That's the use or attempted use or giving to another

6   person a false or forged or counterfeit passport or something

7   that purports to be a passport.

8          So, to recap, the Government has alleged that you

9   engaged in a conspiracy to commit passport fraud, which means

10  they're alleging that two or more people entered into an

11  unlawful agreement whose objective was to use, attempt to use,

12  false, forged, or counterfeit passports or things that purport

13  to be passports, and that you intentionally joined that

14  agreement with knowledge of what you were doing and that some

15  member of that illegal agreement took some step to carry out

16  or further that agreement.

17         Do you understand what I've explained, sir?

18         THE DEFENDANT:  I understand everything now.

19         THE COURT:  Does the Government believe I've

20  correctly summarized the charge and the elements?

21         MR. WEINTRAUB:  Yes, your Honor.

22         THE COURT:  Mr. Russell, do you agree?

23         MR. RUSSELL:  Yes.

24         THE COURT:  Mr. Zeng, what I'd like to go over now

25  with you is the rights you have and the rights that you'd be

*Proceedings*                                                    19

1  giving up if you entered a guilty plea.

2          First of all, you previously entered a plea of not

3  guilty, which means you have a right to plead not guilty and

4  continue with your not guilty plea.

5          Do you understand that?

6          THE DEFENDANT:  Yes.

7          THE COURT:  What that means is even if you are

8  guilty, you have a choice.  It's up to you to decide what to

9  do.  You don't have to enter a guilty plea today.  It's not up

10 to your lawyer what to do, it's not up to me, it's not even up

11 to the Government as to what to do.

12         If you wish, you can keep your not guilty plea and

13 proceed to trial or you can withdraw your not guilty plea and

14 enter a guilty plea, as I hear you wish to do.

15         Do you understand?

16         THE DEFENDANT:  Yes.

17         THE COURT:  If you continue with your not guilty

18 plea, you're entitled to, under the Constitution and laws of

19 the United States, to what is known as a speedy and public

20 trial.  And that's before a jury, and you would have the

21 assistance of your lawyer at that trial and the trial would be

22 about the charges against you in the indictment.

23         Do you understand that?

24         THE DEFENDANT:  Yes.

25         THE COURT:  Now, as I mentioned before, at any

*Proceedings*                                              20

1    trial, you would be presumed innocent.  You would not have to

2    prove your innocence.  Under the Constitution and laws of the

3    United States, no person is required to prove their innocence.

4           It's the Government's burden to prove your guilt and

5    do so beyond a reasonable doubt.  If the Government failed to

6    meet its burden of proof on any count, the jury would be

7    required to find you not guilty on that particular charge.

8           Do you understand that?

9           THE DEFENDANT:  Yes.

10          THE COURT:  Now, during a trial, witnesses for the

11   Government would come forward and they'd have to testify in

12   your presence in court.  Your lawyer would have the

13   opportunity and ability to cross-examine those witnesses, to

14   offer argument on your behalf, to object to evidence offered

15   by the Government, and to also offer evidence on your behalf

16   if that's what you wish to do.

17          Do you understand that?

18          THE DEFENDANT:  Yeah.

19          THE COURT:  Your lawyer would also have the right

20   and ability to subpoena or compel or force witnesses to come

21   to court and testify in your case.

22          Do you understand that?

23          THE DEFENDANT:  Yes.

24          THE COURT:  Now, if at a trial you wanted to testify

25   in your own case, you could do that.

*Proceedings*                                                          21

1          On the other hand, if you chose not to testify you

2   wouldn't be forced to.  You could not be forced to.  And

3   that's because under the Constitution and laws of the United

4   States, no person can be forced to be a witness against

5   himself or herself.

6          If you had a trial and you chose not to testify,

7   Judge DeArcy Hall would be required to inform the jury that

8   they could not hold that fact, meaning your decision not to

9   testify, they couldn't hold that against you in deciding

10  whether or not the Government had met its burden of proof.

11         Do you understand that?

12         THE DEFENDANT:  Yes.

13         THE COURT:  Now, if instead of going to trial you

14  plead guilty to the charges or some of the charges in the

15  indictment and Judge DeArcy Hall accepts your guilty plea,

16  you're giving up your right to a trial and all the other

17  rights I've mentioned.  There will not be a trial in the case.

18  The Court will simply enter a judgment of guilty based upon

19  today's plea proceedings.

20         Do you understand that?

21         THE DEFENDANT:  Yes.

22         THE COURT:  Now, if you do plead guilty, I'm going

23  to have to -- if you decide to plead guilty, I'm going to have

24  to ask you questions about what you did in order to satisfy

25  myself and Judge DeArcy Hall that you are, in fact, guilty of

*Proceedings*                                                      22

1   some crime.

2           What that means is you have to answer my questions,

3   you have to acknowledge your guilt, but, most importantly, it

4   means that you are giving up your right not to be a witness

5   against yourself.

6           Do you understand that?

7           THE DEFENDANT:  Yes.

8           THE COURT:  If you enter a guilty plea today and if

9   you admit to criminal conduct and if Judge DeArcy Hall accepts

10  your plea, you cannot appeal to a higher court about whether

11  or not you committed those crimes or not; do you understand?

12          That would be over by your plea; do you understand

13  that, sir?

14          THE DEFENDANT:  Yes.

15          THE COURT:  So, you're willing to give up your right

16  to trial and each of the other rights I've mentioned, sir?

17          THE DEFENDANT:  Yes.

18          (Court Exhibit 2 so marked.)

19          THE COURT:  I have what has been marked as Court

20  Exhibit 2, which is an agreement that's been signed by the

21  Government, Mr. Zeng, his counsel, and it indicates it's been

22  translated.

23          Mr. Zeng, did you read this agreement carefully?

24          THE DEFENDANT:  Yes.

25          THE COURT:  And you discussed it with your lawyer?

1              THE DEFENDANT:  Yes.

2              THE COURT:  You believe you understand it?

3              THE DEFENDANT:  Yes.

4              THE COURT:  And does the Government represent that

5    Court Exhibit 2 is the entirety of the understanding that the

6    U.S. Attorney's Office has reached with Mr. Zeng?

7              MR. WEINTRAUB:  Yes.

8              MR. RUSSELL:  Your Honor, may I interject?

9              THE COURT:  Yes.

10             MR. RUSSELL:  I just want to make sure it's clear,

11   the plea agreement was read to him despite the language

12   barrier, just given his level of education.

13             THE COURT:  Thank you.

14             Mr. Zeng, this agreement, it was translated for you

15   orally, word-for-word?

16             THE DEFENDANT:  Yes.

17             THE COURT:  And any questions you had about it and

18   what it meant, it was explained to you, sir?

19             THE DEFENDANT:  No.

20             THE COURT:  Sorry, any questions you had about the

21   agreement, were they answered?

22             THE DEFENDANT:  Yes.

23             THE COURT:  Okay.  And was your lawyer there to

24   assist you in answering any questions you had about the

25   agreement?

*Proceedings*                                                  24

1        THE DEFENDANT:  Yes.

2        THE COURT:  Mr. Russell, you've reviewed the

3    agreement with your client?

4        MR. RUSSELL:  Yes, on two separate occasions.

5        THE COURT:  And you had the assistance of an

6    interpreter during those occasions?

7        MR. RUSSELL:  Actually, your Honor, three separate

8    occasions, and at all times we had an interpreter.

9        THE COURT:  This agreement, Court Exhibit 2, is that

10   the entirety of the understanding your client has reached with

11   the Government?

12       MR. RUSSELL:  Yes, outside of the change in dates.

13       THE COURT:  And to be clear, the change in dates is

14   reflected in the agreement that your client has signed?

15       MR. RUSSELL:  That is correct.

16       THE COURT:  And the change in date the Government

17   has previously represented is only to the day on which today's

18   proceeding is taking place; is that correct, Mr. Russell, to

19   your understanding?

20       MR. RUSSELL:  That is correct.

21       THE COURT:  Mr. Zeng, is there any particular

22   provision or topic that you didn't understand that you need me

23   to explain in this agreement?

24       THE DEFENDANT:  No.

25       THE COURT:  There are certain parts of it that I'm

*Proceedings*                                                    25

1   required to explain to you, which is what I'm going to do now,

2   okay?

3            Before I do that, outside of this agreement, are

4   there any other promises that anyone has made to you that are

5   causing you to plead guilty today?

6            THE DEFENDANT:  No.

7            THE COURT:  So, I'm going to explain to you what the

8   minimum and maximum terms of time in prison and fines and

9   penalties can be imposed upon you for each of these counts,

10  okay?

11           The first count is the conspiracy to commit bank

12  fraud.  The minimum time in prison is zero years.  The maximum

13  time in prison is 30 years.

14           Now, after someone is in federal prison, they're

15  subject to what's known as supervised release.  Supervised

16  release means that they're out of prison but they're under the

17  supervision of the probation department.  And the probation

18  department imposes certain conditions upon the person and

19  they're supervised by the probation department, okay?

20           For this offense, you could be subject to a maximum

21  of five years of supervised release.

22           What happens if you violate any of those conditions?

23           You could be subject to an additional maximum of

24  three years in prison.

25           You're also subject to a maximum fine of $1 million,

*Proceedings*                                        26

1   a mandatory special assessment fee of $100, and you're subject

2   to removal from the United States as a potential penalty.

3           Do you understand what I've explained for this

4   count?

5           THE DEFENDANT:  Yes.

6           THE COURT:  For Count Eight, conspiracy to operate

7   an unlicensed money-transmitting business, the time in prison

8   goes from a minimum of zero years to a maximum of five years.

9   The supervised release, the maximum is three years.  And if

10  you violate a condition, you can be subject to an additional

11  two years in prison.

12          The fine here is the greater of $250,000 or twice

13  the gross gain or gross loss from your offense, whichever of

14  those amounts is greater.

15          You're subject to an obligation of forfeiture, which

16  means giving up rights to certain property or money, which I

17  will describe in detail in a moment.

18          You're also subject to a $100 special assessment fee

19  that's mandatory.

20          And a penalty for this crime is also potentially

21  removal from the United States.

22          Do you understand what I've explained, sir?

23          THE DEFENDANT:  Yes.

24          THE COURT:  The money laundering conspiracy count,

25  which is Count Eleven, the minimum time in prison is zero

*Proceedings*                                                    27

1    years, the maximum time in prison is ten years.  The

2    supervised release, the maximum you could be on supervised

3    release for this offense is three years, and you could be

4    subject to an additional two years in prison if you violate a

5    condition of your release.

6              The fine is the same as the prior offense that I

7    described, which is the greater of $250,000 or twice the gross

8    gain or twice the gross loss.

9              You're also subject to what's known as a restitution

10   obligation.  Those are payments to victims to compensate them

11   for their losses, and that's in an amount that the Court will

12   determine.

13             You are, again, subject to forfeiture, which I will

14   describe in a moment, a mandatory $100 special assessment fee,

15   and, again, this crime could lead to your removal from the

16   United States.

17             Do you understand what I've explained, sir?

18             THE DEFENDANT:  Yes.

19             THE COURT:  For the conspiracy to commit passport

20   fraud, the minimum time of imprisonment is zero years, the

21   maximum time is five years.  The maximum time of supervised

22   release is three years, and if you violate a term of your

23   supervised release you could be subject to an additional two

24   years in prison.

25             The maximum fine for that offense is $250,000,

*Proceedings*                                                    28

1    you're subject to a $100 mandatory special assessment fee, and

2    this offense can also lead to, or this crime, the penalty can

3    lead to your removal from the United States.

4            Do you understand what I've explained?

5            THE DEFENDANT:  Yes.

6            THE COURT:  I described four different counts and

7    penalties for four different counts.  The sentence, the prison

8    sentence, could potentially run consecutively, which means one

9    after the other, after the other, after the other.

10           Do you understand that?

11           THE DEFENDANT:  Yes.

12           THE COURT:  On page four of the agreement, I'm going

13   to read the sentence to you and then explain to you what it

14   means.  It's what's known as an appellate waiver.

15           It says:  The Defendant agrees not to file an appeal

16   or otherwise challenge the conviction or sentence in the event

17   the Court imposes a term of imprisonment at or below 63

18   months.

19           What that says is you are agreeing that if Judge

20   DeArcy Hall imposes a sentence of 63 months or less, you're

21   agreeing that you will not challenge either your conviction or

22   your sentence.

23           Do you understand that?

24           THE DEFENDANT:  What do you mean by challenge?

25           THE COURT:  Meaning you will not file an appeal

*Proceedings*                                                           29

1    or --

2              THE DEFENDANT:  If it's under 36 months?

3              THE COURT:  63 months.

4              THE DEFENDANT:  Yes.

5              THE COURT:  Do you understand that, sir?

6              THE DEFENDANT:  Yes.

7              THE COURT:  Do you have any questions about what

8    I've just explained?

9              THE DEFENDANT:  No.

10             THE COURT:  Do you understand that under this

11   agreement, you have certain obligations or things that you

12   have to do?

13             THE DEFENDANT:  Yes.

14             THE COURT:  And you understand that if you don't do

15   those things, you will not be able to withdraw your guilty

16   plea?

17             In other words, if you breach this agreement, you're

18   still bound by today's guilty plea?

19             THE DEFENDANT:  Yes.

20             THE COURT:  There's a forfeiture obligation, which

21   means you are giving up your rights to certain property or

22   things.  And specifically in this agreement, you're giving up

23   your rights to $853,052.66 and that you will not challenge the

24   Government's ability to take those monies.

25             Do you understand that?

*Proceedings*                                                    30

1              THE DEFENDANT:  Yes.

2              THE COURT:  Do you understand, sir, that pleading

3     guilty today may lead to your removal from the United States?

4              THE DEFENDANT:  Yes.

5              THE COURT:  And do you understand that removal from

6     the United States and immigration is a separate proceeding,

7     it's not decided by Judge DeArcy Hall?

8              THE DEFENDANT:  Yes.

9              THE COURT:  Any other provision the Government would

10    like me to explain to Mr. Zeng?

11             MR. WEINTRAUB:  No, your Honor.  Thank you.

12             THE COURT:  Mr. Russell?

13             MR. RUSSELL:  No.

14             THE COURT:  Mr. Zeng, I'm going to explain to you

15    how Judge DeArcy Hall will determine what sentence to impose

16    upon you, okay?

17             As a first step, she will consider what are known as

18    the advisory federal sentencing guidelines to determine what a

19    reasonable sentence would be in your case.  The sentencing

20    guidelines are issued by a federal agency known as the United

21    States Sentencing Commission.

22             What does it mean that they're advisory?

23             The guidelines lead to a calculation of a guidelines

24    range, which means a term or range of time in prison.  They're

25    advisory, meaning they're not mandatory, meaning Judge DeArcy

*Proceedings*                                             31

1    Hall is not required to give you a prison term in that range.

2              But she is required to conduct or calculate that

3    range and they're an important part of sentencing, even if

4    she's not required to give you a sentence in that range.

5              Do you understand what I've explained?

6              THE DEFENDANT:  Yes.

7              THE COURT:  And have you discussed the sentencing

8    guidelines with Mr. Russell and how they might affect your

9    case?

10             THE DEFENDANT:  Yes.

11             THE COURT:  Now, as a second step, Judge DeArcy Hall

12   will determine whether there are any factors that allow her to

13   depart either upwardly or downwardly from the guidelines

14   calculation; in other words, impose a sentence that's either

15   more severe or less severe than the guidelines range.

16             In addition, there's a federal sentencing law and it

17   requires Judge DeArcy Hall to consider certain factors in

18   determining what your sentence should be.

19             What are those factors?

20             Those are things like what you did, your background.

21   Your facts and circumstances, in other words.  And it may be

22   that what's known as a nonguidelines sentence would be

23   appropriate.

24             The bottom line of all of this is until your actual

25   date of sentencing, you cannot know with certainty what the

*Proceedings*                                                    32

1    guidelines calculation will be, whether there are grounds to

2    depart upwardly or downwardly, or whether a nonguidelines

3    sentence is appropriate in your case.

4              Do you understand what I've explained, sir?

5              THE DEFENDANT:  Yes.

6              THE COURT:  Now, Judge DeArcy Hall has set your

7    sentencing date currently as July 10 of 2024 at 11 in the

8    morning.

9              Now, if the parties need to get a different date,

10   you should contact Judge DeArcy Hall's chambers.

11             Mr. Zeng, I tell you that because prior to your

12   sentencing, you'll be interviewed by the probation department.

13   They will issue what is known as a presentence investigation

14   report.  That will report certain facts and circumstances,

15   what you did, your background, things like that.

16             You'll have an opportunity to review that report

17   with Mr. Russell and to challenge anything contained in that

18   report.  That report will also recommend a guideline range to

19   Judge DeArcy Hall.

20             Do you understand what I've explained?

21             THE DEFENDANT:  Yes.

22             THE COURT:  Now, despite what I've said, it's

23   important for you to know now what the potential guidelines

24   sentence may be for you based upon facts that are known now.

25   You have to understand that this is a guess that could be

*Proceedings*                                            33

1    wrong.

2             Do you understand that we're about to give you just

3    a guess, an estimate, of the guidelines?

4             THE DEFENDANT:  Yes.

5             THE COURT:  What's the Government's estimate of the

6    guidelines range?

7             MR. WEINTRAUB:  Would the Court like just the sort

8    of bottom line after everything, all the counts?  Okay.

9             So, with acceptance of responsibility and

10   contemplating that the Defendant would also receive an

11   additional two-point reduction as a zero-point offender, the

12   Government estimates that the total adjusted offense level is

13   21, that the Defendant would be in criminal history category

14   I, which carries with it an advisory guidelines range of 37 to

15   46 months imprisonment.

16            THE COURT:  Mr. Zeng, the Government estimates that

17   the guidelines range for you is 37 to 46 months.

18            Do you understand that?

19            THE DEFENDANT:  Yes.

20            THE COURT:  Now, do you understand that that

21   estimate or guess, it's not actually binding on Judge DeArcy

22   Hall, it's not even binding on the probation department or the

23   Government; do you understand that?

24            THE DEFENDANT:  Yes.

25            THE COURT:  And do you understand that if that

1    estimate is wrong, you cannot withdraw your guilty plea?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Now, counsel, have you provided your

4    client with an estimate?

5              I don't need to know what it is, but have you

6    provided him with an estimate of the guidelines range?

7              MR. RUSSELL:  We talked about the guideline range

8    and the estimates.

9              THE COURT:  Mr. Zeng, do you understand that if your

10   lawyer's estimate of the guideline range is wrong you cannot

11   withdraw your guilty plea?

12             THE DEFENDANT:  Yes.

13             THE COURT:  Mr. Zeng, the point here is that Judge

14   DeArcy Hall is not bound by anything in the agreement, what

15   the Government says, what your lawyer says, the sentencing

16   guidelines range will be.  She can sentence you based on her

17   interpretation and application of the guideline range and

18   sentencing law.  And although she will consider the guideline

19   range calculation as one part of sentencing, she can decide

20   upon a sentence that's either more severe or less severe than

21   that range.

22             Do you understand that?

23             THE DEFENDANT:  Yes.

24             THE COURT:  Also, under the federal sentencing

25   system for individuals who are sentenced now, there is no

*Proceedings*                                                        35

1    parole board or parole commission.  What that means is,

2    practically speaking, whatever sentence you receive from Judge

3    DeArcy Hall, that's going to come pretty close to the actual

4    amount of time you spend in prison and you don't have the

5    opportunity to appeal to a parole board or parole commission

6    to get out early because for individuals sentenced now in the

7    federal system there is no parole board or parole commission.

8              Do you understand that, sir?

9              THE DEFENDANT:  No parole?

10             THE COURT:  Do you understand that?

11             THE DEFENDANT:  Yes.

12             THE COURT:  Mr. Zeng, is there anything that you

13   want to ask me about what you're charged with, what your

14   rights are, or anything else that may not be clear?

15             THE DEFENDANT:  No, thank you.

16             THE COURT:  And are you ready to plead, sir?

17             THE DEFENDANT:  Yes.

18             THE COURT:  Mr. Russell, do you know any reason your

19   client shouldn't enter a guilty plea to Counts One, Eight,

20   Eleven, and Twenty-Eight in the indictment?

21             MR. RUSSELL:  No.

22             THE COURT:  Are you aware of any complete legal

23   defense to any of those charges that would prevail at a trial

24   in this case?

25             MR. RUSSELL:  No.

*Proceedings*                                                    36

1          THE COURT:  Mr. Zeng, how do you plead to the first

2    count, conspiracy to commit bank fraud, guilty or not guilty?

3          THE DEFENDANT:  Guilty.

4          THE COURT:  And how do you plead to the eighth

5    count, conspiracy to operate an unlicensed money-transmitting

6    business, guilty or not guilty?

7          THE DEFENDANT:  Guilty.

8          THE COURT:  And how do you plead to Count Eleven, a

9    conspiracy to commit money laundering, guilty or not guilty?

10          THE DEFENDANT:  Yes, guilty.

11          THE COURT:  And how do you plead to

12    Count Twenty-Eight, a conspiracy to commit passport fraud,

13    guilty or not guilty?

14          THE DEFENDANT:  Guilty.

15          THE COURT:  And are you making these guilty pleas

16    voluntarily and of your own free will?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Has anyone threatened you or forced you

19    or pressured you in any way to plead guilty?

20          THE DEFENDANT:  No.

21          THE COURT:  And outside of the agreement we talked

22    about, has anyone made any promises that are forcing you to

23    plead guilty today?

24          THE DEFENDANT:  No.

25          THE COURT:  And has anyone promised you what

*Proceedings*                                                    37

1   sentence you would receive from Judge DeArcy Hall if you

2   entered a guilty plea today?

3          THE DEFENDANT:  No.

4          THE COURT:  Can you tell me in your own words what

5   you did that's leading you to enter -- that leads you to

6   believe you've committed these crimes?

7          I just want to make the record clear as to what's

8   happening.  Mr. Zeng is reading a statement --

9          Is that correct, sir, you're reading a statement?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Okay.  So, what I'll do is you should

12   read the statement from beginning to end, and it can be then

13   translated for me in English, and if I have any follow-up

14   questions, we'll do it that way, okay?

15          THE DEFENDANT:  Okay.

16          THE COURT:  Go ahead, sir.

17          THE DEFENDANT:  I helped create and exchange false

18   or fake passports with fake names and other information and I

19   did this with other people.

20          THE COURT:  Okay.  Sir, when you did this with other

21   people, did you know what you were doing?

22          THE DEFENDANT:  Yes.

23          THE COURT:  And was it your intention to create or

24   use or sell fake passports?

25          THE DEFENDANT:  Can you repeat that?

*Proceedings*                                                    38

1              I didn't hear you.

2              THE COURT:  Was it your intention or purpose to

3    create, use, or sell fake passports?

4              THE DEFENDANT:  Yes.

5              THE COURT:  And when did you do this, sir?

6              THE DEFENDANT:  In 2021.

7              THE COURT:  Where were you in -- where did this

8    happen in 2021; what borough or location in New York City?

9              THE DEFENDANT:  In Brooklyn.

10             THE COURT:  Can you tell me what you did or what

11   anyone else involved in this activity did to carry out your

12   plan?

13             THE DEFENDANT:  Can you repeat that?

14             Are you asking me who I was doing it with?

15             THE COURT:  No, I'm just asking what you did or what

16   anyone else did to carry out this plan.

17             THE DEFENDANT:  I deposited money in bank using fake

18   business names for which I received money to make the deposit,

19   and I did this with other people.

20             THE COURT:  That money that you deposited, how was

21   it related to the passport activity you just described?

22             THE DEFENDANT:  Can you repeat that?

23             THE COURT:  Sure.  I'm trying to understand the

24   connection between the money you deposited and the fake

25   passports.

*Proceedings* 39

1          THE DEFENDANT:  I used fake passports to deposit the
2    money.
3          THE COURT:  So, you used the fake passports to
4    deposit the money; is that what you said?
5          THE DEFENDANT:  Yes.
6          THE COURT:  And why were you depositing the money,
7    sir?
8          THE DEFENDANT:  Deposit the money and then to get a
9    check.
10          THE COURT:  And the money, where was it from?
11          In other words, how was it earned or created or what
12    activity did it come from?
13          THE DEFENDANT:  The money was -- came from other
14    people.  It was through illegal activity.
15          THE COURT:  And the money -- if the money was from
16    illegal activities, what was the nature of the illegal
17    activities?
18          THE DEFENDANT:  I just obtained it from other
19    people.  I don't know how they obtained the money.
20          It was used to get checks.
21          THE COURT:  But you understood that the money or the
22    proceeds were from illegal activity, though?
23          THE DEFENDANT:  Yes.
24          THE COURT:  And was this taking the money and
25    depositing it, was it part of some business?

*Proceedings*                                                40

1      THE DEFENDANT:  It was to get bank checks for other

2  people and then make, like, a profit.

3      THE COURT:  What I'm asking is were you doing this

4  by yourself or doing it with other people?

5      THE DEFENDANT:  I did it with other people.

6      THE COURT:  And were you or any of the other people

7  operating any kind of business or was it part of just a plan

8  that some people came up with?

9      THE DEFENDANT:  It was a plan that other people

10  thought of, came up with.

11      THE COURT:  And the banks that you deposited the

12  money with, where were they?

13      THE DEFENDANT:  The bank?  They were in Brooklyn.

14      THE COURT:  Do you know any of the names of the

15  banks?

16      THE DEFENDANT:  I just know Bank of America.

17      THE COURT:  When you did this and you joined in this

18  activity, did you understand that the purpose was to mislead

19  or defraud the bank?

20      THE DEFENDANT:  I didn't know in the beginning but I

21  know that now.

22      THE COURT:  And what were the amounts involved in

23  the deposits?

24      THE DEFENDANT:  The money deposited was more than

25  $10,000.

*Proceedings*                                                      41

1          THE COURT:  Does the Government believe any other

2    follow-up is necessary?

3          MR. WEINTRAUB:  May I have a minute to confer with

4    my colleague?

5          (Pause in proceedings.)

6          MR. WEINTRAUB:  Can we also confer with Mr. Russell?

7          (Pause in proceedings.)

8          THE COURT:  I should say there are questions I have

9    stipulations about that I'm happy to do first or we could do

10   any questions you believe --

11         MR. WEINTRAUB:  Sure.  One thing that I was going to

12   ask if the Court wanted to do would be to maybe direct

13   Mr. Zeng's attention to certain overt acts for the 371 counts

14   to just establish at least one of those on the record.

15         THE COURT:  Okay.

16         MR. WEINTRAUB:  To the extent he knows or can

17   confirm, can recall being involved in one of those overt acts.

18         There is an overt act that relates specifically to

19   him to each of the 371 counts.

20         THE COURT:  Okay.

21         Mr. Zeng, the Government has alleged that on or

22   about February 22, 2022, you obtained a cashier's check from

23   the Manhattan branch of a bank and it was in the amount of

24   $20,000.

25         Did you, in fact, do that?

*Proceedings*                                                    42

1          THE DEFENDANT:  No.

2          THE COURT:  At any point did you obtain a cashier's

3    check or a check from a bank in Manhattan?

4          THE DEFENDANT:  After I was arrested, I never

5    touched any of that, so...

6          THE COURT:  Before you were arrested, you mentioned

7    obtaining a check or checks from banks.

8          Can you give me a date on which you might have done

9    it, approximately, even if it's just a month and a year?

10         THE DEFENDANT:  I did obtain it, but I don't

11   remember exactly which month or which day.

12         THE COURT:  I don't need the exact day, but do you

13   have an approximate month in which that took place?

14         THE DEFENDANT:  I did these acts in Brooklyn, New

15   York, and I knew my actions were illegal when I did them

16   during the period of January 2021 to July 2022.

17         THE COURT:  I understand that.  I'm asking a

18   different, more specific question.

19         I'm just trying to establish on what specific -- one

20   specific instance, some more detail about what you did.

21   That's all I'm trying to do.

22         MR. WEINTRAUB:  Your Honor, if I may show

23   Mr. Russell a document.

24         THE COURT:  Sure, you may do that.

25         (Pause in proceedings.)

*Proceedings*                                                     43

1          MR. RUSSELL:  So, your Honor, if you want to re-ask

2     that question.

3          THE COURT:  I will.

4          Mr. Zeng, before you were arrested, did you ever

5     receive from a bank a check?

6          And can you tell me approximately when you received

7     that check and in what amount?

8          THE DEFENDANT:  February 2, 2022, in the amount of

9     20,000.

10         THE COURT:  And did you obtain that check as part of

11    the plan that you had just described to me?

12         THE DEFENDANT:  Yes.

13         THE COURT:  Now --

14         MR. WEINTRAUB:  Your Honor, just so the record is

15    clear so there's not any thought upon a cold reading of the

16    record, the Government just showed Mr. Russell a photograph of

17    that check, which I believe jogged Mr. Zeng's memory that he,

18    in fact, received that check.

19         MR. RUSSELL:  And I would confirm that my client's

20    inquiry upon seeing the check was trying to calculate what

21    month came before what month, whether October came before

22    February or whether February came first.

23         And, so, with that recollection, he was able to

24    articulate that this happened before he got arrested.

25         THE COURT:  Mr. Zeng, is that correct, that seeing

*Proceedings*                                                    44

1   this photograph jogged your recollection and helped you

2   remember the check we just talked about?

3           THE DEFENDANT:  Yes.

4           THE COURT:  Now, did you ever use a forged Chinese

5   passport?

6           THE DEFENDANT:  Yes.

7           THE COURT:  And around July 6 of 2022, did you use a

8   forged Chinese passport to obtain checks from a bank in

9   Borough Park?

10          THE DEFENDANT:  Yes.

11          THE COURT:  To the best of your recollection, was

12  the amounts involved in those checks more than $10,000?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Now, do the parties stipulate that Bank

15  of America is an FDIC-insured bank?

16          MR. WEINTRAUB:  Yes, your Honor.

17          THE COURT:  Mr. Russell?

18          MR. RUSSELL:  Yes.

19          THE COURT:  And the parties stipulate that

20  transactions of obtaining the check, depositing the monies at

21  the banks we've talked about, Mr. Zeng, constitute

22  transactions involving interstate or foreign commerce?

23          MR. WEINTRAUB:  Yes, your Honor.

24          THE COURT:  Mr. Russell?

25          MR. RUSSELL:  Yes.

*Proceedings*                                                45

1          THE COURT:  Is there a stipulation that the

2    transmitting of the monies that were conducted by Mr. Zeng

3    were not part of any licensed business operation?

4          MR. WEINTRAUB:  Yes.

5          THE COURT:  Mr. Russell?

6          MR. RUSSELL:  Yes.

7          THE COURT:  Mr. Zeng, is it correct that you

8    understood that when you were obtaining monies -- obtaining

9    checks and depositing monies, you weren't doing that as part

10   of any formal licensed business, right?

11         THE DEFENDANT:  Correct.

12         THE COURT:  Does the Government believe any

13   further --

14         MR. WEINTRAUB:  Just to put on the record -- the

15   Defendant allocuted that the money that he was transacting in

16   he knew at the time was the proceeds of illegal activity.

17         The Government would just put on the record that the

18   money was the proceeds of wire fraud, which is a specified

19   unlawful activity under 18 U.S.C. 1956.

20         THE COURT:  And I don't believe that for the

21   conspiracy offense that Mr. Zeng has to know that, in fact,

22   but I'm happy to have that put on the record unless you think

23   any further inquiry is required.

24         I don't believe any further inquiry is required.

25         MR. WEINTRAUB:  No, thank you, your Honor.

*Proceedings*                                    46

1      THE COURT:  Does the Government otherwise believe

2  that the colloquy is sufficient?

3      MR. WEINTRAUB:  Yes, your Honor.

4      THE COURT:  Mr. Russell, do you agree?

5      MR. RUSSELL:  I would agree.

6      THE COURT:  Based on the information that's been

7  given to me, I find that Mr. Zeng is acting voluntarily, that

8  he fully understands the charges against him, his rights, the

9  consequences of his plea, and there's a factual basis for his

10  guilty plea to these four counts.

11      And it is, therefore, my recommendation to Judge

12  DeArcy Hall that she accept his guilty plea to Counts One,

13  Eight, Eleven, and Twenty-Eight in the indictment.

14      MR. RUSSELL:  Your Honor, may I have one moment?

15      THE COURT:  Yes.

16      (Pause in proceedings.)

17      MR. RUSSELL:  Thank you.

18      THE COURT:  What's the Government's position on

19  bail?

20      MR. WEINTRAUB:  The Government is not seeking any

21  remand or any changes to the bail conditions.

22      THE COURT:  Mr. Russell, I assume you agree as well?

23      MR. RUSSELL:  I do.

24      THE COURT:  Mr. Zeng, you're still being released on

25  bail and the same conditions of your bail apply to you.

*Proceedings*                                                    47

1          Do you understand that?

2          THE DEFENDANT:  Yes.

3          THE COURT:  Okay, is there anything else from the

4     Government?

5          MR. WEINTRAUB:  No, your Honor.

6          THE COURT:  Mr. Russell, anything else?

7          MR. RUSSELL:  Nothing.

8          THE COURT:  I wish you all good health.  Have a nice

9     day.

10         MR. WEINTRAUB:  Thank you very much, your Honor.

11         (Matter concluded.)

12

13

14                    * * * * *

15

16               **E X H I B I T S**

17

18    Court Exhibit 1                              Page  5

19    Court Exhibit 2                              Page 22

20

21

22

23                    * * * * *

24

25