```
1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF NEW YORK
2      -----------------------------x
                                        22-CR-458(LDH)
3      UNITED STATES OF AMERICA,
                                        United States Courthouse
4                                       Brooklyn, New York

5              -against-
                                        March 14, 2024
                                        11:30 a.m.
6      JIAHUI MIAO,

7              Defendant.

8      -----------------------------x

9       TRANSCRIPT OF CRIMINAL CAUSE FOR BOND REVOCATION HEARING
              BEFORE THE HONORABLE LaSHANN DeARCY HALL
10                  UNITED STATES DISTRICT JUDGE

11

12                   A P P E A R A N C E S

13     For the Government:        BREON S. PEACE
                                  United States Attorney
14                                UNITED STATES ATTORNEY'S OFFICE
                                  Eastern District of New York
15                                271 Cadman Plaza East
                                  Brooklyn, New York 11201
16                                BY:  MIRANDA GONZALEZ, ESQ.
                                  Assistant United States Attorney
17

18     For the Defendant:        MURRAY E. SINGER, ESQ.
                                  14 Vanderventer Avenue, Suite 147
19                                Port Washington, New York 11050
                                  BY:  MURRAY E. SINGER, ESQ.
20

21

22     Court Reporter:           LEEANN N. MUSOLF, RPR, CCR
                                  Phone:  718-613-2489
23                                Email:  lmusolf.edny@gmail.com

24

25     Proceedings recorded by mechanical stenography.  Transcript
       produced by computer-aided transcription.
```

*LEEANN N. MUSOLF, RPR, Official Court Reporter*

Proceedings

1              (In open court.)

2              THE COURTROOM DEPUTY:  Good morning.  This is a

3    criminal cause for detention hearing in the matter of United

4    States of America versus Jiahui Miao, Docket Number 22-CR-458.

5    The Mandarin interpreter has been previously sworn.

6              Can counsel please state their appearance for the

7    record, starting with the Government.

8              MS. GONZALEZ:  Good morning, Your Honor.

9              For the United States, Miranda Gonzalez, and with

10   the Court's permission, I am joined by an intern in our office

11   Yasmeen Mohammed Rafee.

12             THE COURT:  Well, hello.  Is it morning still?  Good

13   morning to you.

14             THE INTERN:  Thank you.

15             THE COURT:  All right.

16             MR. SINGER:  Yes, it's still morning.  For Mr. Miao,

17   Mr. Murray Singer.  Good morning.

18             THE COURT:  Good morning, Mr. Singer.  Good morning,

19   Mr. Miao.

20             All right, folks, we're here for a detention hearing

21   with respect to the Defendant Miao.  Now, Defendant Miao was

22   arrested on October 13, 2023 and charged with conspiracy to --

23             MR. SINGER:  Twenty-two.

24             THE COURT:  Oh, yeah, I guess you're right.  Thank

25   you for the correction -- and charged with conspiracy to

Proceedings

1  operate an unlicensed money transmitting business in violation

2  of Title 18 U.S.C. Section 1960(A).  Now, Defendant Miao made

3  his initial appearance before Magistrate Judge Peggy Kuo.  He

4  was released on $100,000 bond cosigned by three sureties.

5          Now, on August 30, 2023, a bond revocation hearing

6  was held before then Magistrate Judge Reyes and the bond was

7  modified to include the following conditions:

8          One, the defendant shall be subject to home

9  detention with location monitoring, the defendant shall be

10  subject to cyber monitoring, he was restricted to one cell

11  phone and one laptop to be monitored by pretrial services, he

12  was required to participate in mental health evaluation and

13  treatment as deemed appropriate by pretrial services, and his

14  travel was restricted to New York City and Long Island.

15         Now, on September 18, 2023, the Court received a

16  pretrial services memorandum to report defendant's access to

17  the Internet on his iPhone and his MacBook devices in

18  violation of the Court's order.  Now, on February 29, 2024,

19  pretrial services filed another memorandum under seal to

20  provide additional information concerning the defendant's

21  alleged noncompliance.

22         Now, specifically, it was reported that based on

23  cyber monitoring, between January 8, 2024 and

24  February 26 2024, on the defendant's monitored MacBook, it was

25  revealed that the defendant conducted several web searches

Proceedings

1  pertaining to crypto currency, Bitcoin, Coinbase Commerce,

2  PayPal, and overseas banking.  Also on February 15, 2024, the

3  defendant appeared to search and view a website related to the

4  State of Hawaii identification card application.  In addition,

5  on February 20, 2023, defendant appeared to research Swiss

6  Life, Switzerland's oldest life insurance company.

7          Now, to be clear, the searches in and of themselves

8  are not expressly precluded, but the nature of the searches

9  raise concern for this Court.  In any event, on February 18,

10  2024, pretrial services directed the defendant by email to

11  report to pretrial services offices on February 22, 2024 with

12  the two monitored devices for inspection and to discuss the

13  concerns raised by the searches that were revealed previously

14  on February 26th and January 8th of 2024.

15          Now, Defendant failed to report to the office as

16  directed on February 22nd, and was then directed to report the

17  following day, February 23rd.  After being directed to report

18  the following day, the defendant contacted pretrial services

19  by phone and stated that he would not report to the office.

20  He noted that he did not have the financial means to travel to

21  pretrial services offices.  Now, the Court held a hearing on

22  March 7, 2024 to address the content of the February 29, 2024

23  memorandum by pretrial services and the violation report that

24  was filed by that office.

25          Now, at that hearing, this Court directed the

LEEANN N. MUSOLF, RPR, Official Court Reporter

5

Proceedings

1    defendant to meet with pretrial services on that day to hand

2    over his cell phone.  The defendant, at that time, had failed

3    to bring in his laptop as pretrial services had previously

4    directed him to do so.  Accordingly, this Court directed him

5    to return to pretrial services the following day on March 8th

6    with his laptop to address his concerns regarding travel.

7    The Court indicated that pretrial services was to provide him

8    with a MetroCard which would allow him to travel to the court,

9    which pretrial services did.

10           Now, pretrial services was able to conduct at least

11   a cursory review of the defendant's cell phone which was one

12   of the devices at issue.  It appeared that the defendant had

13   bypassed the cyber monitoring software that had been

14   previously installed and that he had accessed the Onion

15   browser which, according to pretrial services, allows the

16   defendant to access Internet sites undetected, otherwise known

17   as the dark web.

18           The Court had set March 8th as a date for this Court

19   to hold a hearing concerning Mr. Miao's request for new

20   counsel.  At the time of that hearing which was scheduled for

21   4:00 p.m., the Court learned that the defendant failed to

22   appear before pretrial services at 1:00 p.m. on March 8th as

23   the Court had directed him on the prior day.

24           Now, upon learning of the defendant's further

25   noncompliance and coupled with the information that the Court

6

Proceedings

1  had from pretrial services concerning the Internet searches

2  and the nature of the searches, this Court determined that the

3  defendant should be remanded into custody based on a potential

4  risk of flight and I set this date as a hearing on the remand

5  issue.

6          I think -- does that fully and completely give you

7  all the background here?

8          MS. GONZALEZ:  Yes, Your Honor.  I would just note

9  that the defendant was charged with four counts in total.  In

10 additional to the unlicensed money laundering, he was also

11 charged with money laundering conspiracy in the substantive

12 offense, and also conspiracy in the substantive for the other

13 count that Your Honor mentioned.

14         THE COURT:  Okay.  All right.

15         So where things stand now is that there's been a

16 couple of issues that have been raised since March 8th.  The

17 information that the Court has in trying to determine whether

18 there is a clear and convincing evidence that Defendant poses

19 a risk of flight are, again, that the kind of concerning

20 searches that the defendant made on his cell phone which,

21 again, included web searches regarding out-of-state

22 identifications, foreign banking, and insurance institutions,

23 searches regarding crypto currency, as well as the access to

24 what we refer to, again, as the dark web.

25         I have since learned that based on a search of the

7

Proceedings

1  laptop that pretrial services was able to ultimately conduct

2  that the defendant has also been conducting searches that seem

3  related to the purchase of an airplane.

4         Now, this Court noted previously that the defendant

5  is not a citizen of the United States, but remains a citizen

6  of China.  I have also learned that since his initial bail

7  package was set, where as I understand it, he was residing

8  with his then girlfriend, she may still be his girlfriend, but

9  that he no longer resides with her.  It's unclear what his

10 residence is, but that also at least one of the three suretors

11 has asked to be removed as a suretor.  These three additional

12 facts only raise a specter of concern that the Court relied

13 upon in determining that this defendant posed a flight risk

14 and remanding him on March 8th.

15        Mr. Singer, do you wish to put on any evidence or

16 make any argument in connection with the Court's determination

17 on remand at this time?

18        MR. SINGER:  Yes.

19        THE COURT:  Okay.  I'll hear from you.

20        MR. SINGER:  Do you want me to stand, Judge?

21        THE COURT:  Yes, please.  You can move that podium

22 closer to you and put your papers there if it's --

23        MR. SINGER:  No, it's fine.  I will work with it.

24        I have spent, since last Friday, doing a lot of

25 catch up --

*LEEANN N. MUSOLF, RPR, Official Court Reporter*

Proceedings

1    THE COURT:  And with the Court's gratitude.

2    MR. SINGER:  And Mr. Macdonald, whom I replaced on

3  late Friday afternoon, left from court and left the country on

4  vacation so I haven't been able to get any materials from him.

5  I expect him to be back next week.  We had spoken beforehand,

6  he has indicated that he will fully turn over everything.

7  It's just that he was on his way out of town so I don't have

8  any of that.  So I'm dancing as fast as I can.

9    So, there were three suretors on the bond, there

10  were two on the original bond and then a third was added, I

11  think it was August 30th of last year.  One of the three men

12  named David Lee, I have spoken to, he has indicated --

13    THE COURT:  Is this the business partner or no?

14    MR. SINGER:  He is the business partner from a

15  company called VertCity.  He has asked to be removed from the

16  bond.  I spoke with him.  He has indicated that even if the

17  Court were to grant a new bond or modify the present one, that

18  he still wish to be removed.  The other two, a -- I know I'm

19  gonna -- I have trouble with the names, and I apologize, a

20  Mr. Liu, L-I-U, Mr. Liu is here in the audience, and the other

21  is Ms. Huang, H-U-A-N-G.  Ms. Huang is in the audience.  She

22  is the person that Mr. Miao has been living with and is still

23  living with.

24    THE COURT:  He's still living with?

25    MR. SINGER:  Still living with.

Proceedings

Proceedings

1    THE COURT:  All right.

2    MR. SINGER:  The nature of the relationship may have

3 changed since the beginning but they're --

4    THE COURT:  I understand that it has.  I also

5 understand that on at least one occasion Ms. Huang had

6 indicated she wanted to be removed as suretor.  So I

7 understand --

8    Hold on.  Only one of us.  So I understand that her

9 current position is that she would remain, but, nonetheless,

10 the Court is aware that she had strongly indicated previously

11 that she did not want to remain and, so, I understand the

12 current state of play, but, nonetheless, the fact that there

13 has been at least some ambivalence at a minimum on her part is

14 something that the Court considers noteworthy.

15    MR. SINGER:  I am uncertain of the timing of that

16 and my understanding -- and, again, I stand to be corrected by

17 whoever has different information if I'm wrong about this, my

18 understanding that Ms. Huang's request to be taken off the

19 bond was based on an understanding that Mr. Miao was going to

20 be incarcerated and --

21    THE COURT:  This predated the remand, just so that

22 you're clear.

23    MR. SINGER:  Okay.

24    THE COURT:  Just so that you understand, when I

25 remanded him, the information I received concerning Ms. Huang

Proceedings

1  had predated that.

2          MR. SINGER:  Okay.  I did -- I've had conversations

3  with Ms. Huang about this and with Mr. Liu and both have

4  indicated to me that if the Court were to, again, either grant

5  a new, or continue the bond, they indicated that they were

6  prepared to sign and they're here, and if that becomes an

7  issue, obviously, the Court can question them about that.

8          And I believe that efforts are being made to secure

9  another possible suretor if the Court were to grant a bond to

10 replace Mr. Lee.  I don't have that specific information on

11 that for the Court yet, but if you were to consider that, we

12 certainly would bring that information to the Court.

13         So I've worked into the details and then I, as is my

14 own process, I sit back and try to big-picture it because I

15 am, again, rushing into this as fast as I can but also trying

16 not to lose the forest for the trees.  So I want to do a

17 little bit of the forest if I can, Judge.

18         The concerns that are raised, you know, for someone

19 who is not a U.S. sis, who is a risk of flight, obviously it's

20 a consideration for the Court and for the Government.

21 Mr. Miao has been -- was arrested in October of '22.  It's

22 been a year and a half he's been out, he's known what the case

23 was about, he's received all the discovery, he knows what this

24 is about, he hasn't gone anywhere.  So I understand there's

25 always a concern about risk of flight and he hasn't kept every

Proceedings

1    appointment, I mean, I can't sit here and say he's done a

2    great job --

3              THE COURT:  Nor has he allowed us to monitor fully

4    his devices and, so, you know --

5              MR. SINGER:  I'll address that because I'm not sure

6    that's completely accurate, but in terms of flight, you know,

7    searching for the cost of an airplane, I mean, I've done that.

8    I can't afford it and I'm never gonna do it.

9              THE COURT:  Just so that you're clear, the Court

10   stated in summary that it appeared as if he was searching

11   regarding the purchase of an airplane but what appeared on his

12   device goes far beyond simply a Google search.  There were

13   steps taken to obtain information concerning -- I can only

14   ascribe it in the layman's term that I might understand,

15   airplane's Carfax report, which the average person cannot

16   simply obtain.  I can't just get an airplane's Carfax report,

17   nonetheless, this was information that was found to reside on

18   his computer.  So it's more than simply Google searches.

19   There are clearly efforts that are being taken to search for

20   IDs --

21             MR. SINGER:  I'll address that --

22             THE COURT:  -- look at potential airplanes, crypto

23   currency, the dark web.  There are a lot of kind of small

24   pieces that are making a picture to a puzzle for this Court

25   that raises a concern about risk of flight.

Proceedings

1          MR. SINGER:  I was not aware about the information

2    obtained from the computer until Your Honor mentioned it --

3          THE COURT:  I just learned as well.  Fair enough.

4          MR. SINGER:  Okay.  A lot of this strikes me as sort

5    of scary language that -- that's made to paint a picture, and,

6    again, I want to do it from the forest.  He -- Mr. Miao hasn't

7    gone anywhere.  He's made all of his court appearances, not

8    all -- I understand he hasn't kept everything he's supposed to

9    do, but when he's required to be in court, he's been in court

10   and has made no effort to flee.  He is a young man who, since

11   August, has been on the -- has been on home detention and

12   unable to leave.  It's been very difficult.  I think there's

13   been some mental health concerns raised, as well.  He's

14   struggling with that and dealing with that.  He's also trying

15   to maintain work with a company called VertCity, which I

16   believe he is one of the principals of, and also with a

17   nonprofit company in New York called Velocity.  And I think

18   it's through Velocity, this nonprofit, that is doing work for

19   some governments that -- that have raised some of the concerns

20   here about crypto currency, they're doing projects and he's

21   sort of the computer guy to do some of these projects.

22          One of them, in terms of the State of Hawaii, as I

23   understand it, again, I haven't had time to research it to the

24   nth degree to know, but I believe this Velocity -- the State

25   of Hawaii is working on digital identification, which is where

Proceedings

1    the world is going for you and I --

2             THE COURT:  And you're telling me that the State of

3    Hawaii is contracting with Mr. Miao to address their need for

4    digital identification --

5             Only one of us can talk at a time.  You're telling

6    me that the State of Hawaii is contracting with Defendant Miao

7    to create, design some kind of, I don't know, I'd --

8             MR. SINGER:  Not with him.

9             THE COURT:  Right.  So --

10            MR. SINGER:  But through the company that he -- this

11   Velocity nonprofit.

12            THE COURT:  You see how none of this -- it's not

13   really making sense to the Court.  I mean --

14            MR. SINGER:  Again, he -- I mean, I can -- I've had

15   conversations with him, I've had some conversations with

16   others, and I -- I mean, I'm provided --

17            THE COURT:  This doesn't present as a coherent story

18   for me.

19            MR. SINGER:  It's just that there is -- none of

20   these efforts have led to anything.  The monitoring has been

21   on since September.

22            THE COURT:  Right.  I'm trying to assure it doesn't

23   lead to anything.  It's called a risk of flight, otherwise we

24   would be in a different posture and I would be issuing a

25   warrant for someone who has already fled.  I'm trying to

Proceedings

1  address the risk.  So the risk of flight presumes he hasn't

2  done it yet.

3          MR. SINGER:  The Onion web browser, I understand, is

4  a web browser that provides greater levels of security than

5  Google or Bing or Edge or whatever we all use.

6          THE COURT:  Or another way for saying the Onion web

7  browser is a web browser that allows you to access the

8  Internet in an undetected manner.  There's another way to look

9  at that.

10         MR. SINGER:  Well, there's gonna be detection of it

11 because any activity on the computer is monitored by the -- I

12 believe it's an outside company that pretrial works with to --

13 that puts the material --

14         THE COURT:  If it hasn't been disabled, which we

15 have some evidence that there was an issue with the monitoring

16 that was placed on the device.  So, again, there's lots of

17 pieces here.

18         MR. SINGER:  Last week it was that it had been

19 removed from the phone, and I don't believe that he has the

20 ability to and I don't believe it was removed from the phone.

21 Now we're hearing it was disabled.

22         THE COURT:  I used the word disabled.  That was

23 perhaps my inartful way of addressing it.  I can have pretrial

24 services state it in a more exacting fashion.  But in any

25 event, removal, disable, inoperable, you can pick whichever

Proceedings

1   word, the outcome and the meaning and the consequence is the

2   same.

3          MR. SINGER:  I mean, I'm at a disadvantage here

4   because I don't know what was found on the phone.  I certainly

5   haven't had an opportunity --

6          THE COURT:  We can do this:  The law provides, or

7   the statute provides for a detention hearing to be reopened at

8   any time.  Now, typically, it's if I find that there is

9   information that was not known to the movant at the time of

10  hearing.  This was a sua sponte issue, but given the fact that

11  you were just brought on to this case, if additional time is

12  what you would like to be able to explore some of these

13  issues, to be able to make potentially more cogent arguments

14  in an effort to avoid remand here, I will allow you the

15  opportunity to do so.

16         But as it stands now, the information that you are

17  providing me is not sufficient to overcome the Court's

18  concerns regarding what I deem to be clear and convincing

19  evidence of a risk of flight here.

20         MR. SINGER:  My disagreement, I suppose, is with the

21  conclusion that the Court is reaching.  Risk of flight, if --

22  if the concern is him leaving, I just don't see that as being

23  a realistic concern based on any of this.  If there's

24  limitations in terms of -- that can be made -- more intensive

25  monitoring.

Proceedings

1        THE COURT:  He's already on location monitoring.

2   He's already on cyber monitoring.  I'm not really certain,

3   short of me moving into his home, what more I can do.  I mean,

4   we're monitoring every aspect.

5        MR. SINGER:  I don't know that the -- again,

6   pretrial gets the monitoring information from an outside

7   company, that's my understanding of this, that there's an

8   outside company that loads the app or the program onto the

9   phone or the computer, that they are monitoring -- they have

10  the capacity to monitor things live, and when there is a

11  concern, that they bring it to pretrial which then brings it

12  to the Court.  There was no concern or indication that

13  whatever is going on with this app on the phone was --

14        THE COURT:  No concern by whom?  Pretrial services

15  raised this as a concern.  Pretrial services has a concern.

16  The Court has a concern.  Whether some third party company

17  finds the searches concerning is completely irrelevant and

18  they have no basis to make an assessment.

19        MR. SINGER:  Not the search.  They didn't raise,

20  with pretrial, that we can't access his phone.  They're saying

21  it was disabled or removed in some way, not providing updated

22  information on the phone, and that was not raised until

23  pretrial had the phone and looked at it.  I am presuming from

24  that that there was a steady flow of information that was

25  coming in through the monitoring software from the phone.

Proceedings

1          THE COURT:  Hold on.

2          Can you give me some clarification on this issue

3   with respect to what was either removed or I said disabled,

4   can you just clarify for the record, please?

5          Just state your name for the record before you

6   start.

7          PRETRIAL OFFICER:  Jeannine Quijije, Pretrial

8   Services.

9          Just to be clear, so the monitoring software,

10  Mr. Singer is correct, comes from a third party vendor.  The

11  vendor puts whatever software is on the phone and we get live

12  data.  So the issue with the terminology, disabled, removed,

13  is it wasn't reporting, it wasn't reporting data.

14          So if Your Honor recalls the memorandum that we

15  drafted in February 20-something that Your Honor was referring

16  to, we indicate that we were asking the defendant to please

17  bring in the devices because something wasn't right and he --

18  he kept stalling or refusing, and that was when became the

19  issue.  We were concerned.  We weren't -- we weren't

20  reporting -- we weren't seeing the reported data.  The more we

21  kept telling him, the more he just came up with excuses as to

22  why he couldn't bring in the device.

23          So, normally, our course of duty is when we see the

24  device is not reporting data, we ask the defendant to come in

25  and we inspect the devices to make sure that if there is an

Proceedings

1  issue, we're looking at it and we're trying to troubleshoot

2  it, but we never got that opportunity.

3          So when I did finally get the device, there was no

4  software in there.  It was completely gone.  I don't know why.

5  I didn't get an opportunity to speak with Mr. --

6          THE COURT:  But it had been previously installed on

7  his phone?

8          PRETRIAL OFFICER:  It was reporting data, correct.

9          THE COURT:  And when you then got the device, the

10 software was no longer on the phone?

11         PRETRIAL OFFICER:  Yes.  Correct.

12         THE COURT:  This was his phone?

13         PRETRIAL OFFICER:  Yes.  Yes.

14         THE COURT:  Okay.

15         MR. SINGER:  Do we know when -- if I may, Judge,

16 just when it stopped --

17         THE COURT:  You can answer that question.  Go ahead.

18         MR. SINGER:  -- when the data was no longer coming

19 in on the phone?

20         PRETRIAL OFFICER:  It was about February 20th, a

21 little bit before we wrote the memo.  I'm sorry, I don't have

22 the memo in front of me, but it was around the time frame of

23 the memorandum.

24         THE COURT:  And you had asked him to come in

25 repeatedly to address this issue?

Proceedings

1          PRETRIAL OFFICER:  Yes.

2          THE COURT:  He didn't come in?

3          PRETRIAL OFFICER:  Yes.

4          THE COURT:  You got the phone and the software was

5    not there?

6          PRETRIAL OFFICER:  Correct.

7          THE COURT:  That is the information.

8          MR. SINGER:  All right.  I appreciate that and I now

9    have some new information because that level of detail was not

10   in the report, so I did not have that information.

11         THE COURT:  So, I don't know, is that disabled or is

12   that removed in terms of terminology?

13         MR. SINGER:  Well, we can have that discussion

14   perhaps at some other time.

15         I think it best -- I feel the wind blowing, I think

16   it best that I be given some additional time, if I can, to

17   request --

18         THE COURT:  Yes.  Listen --

19         MR. SINGER:  -- to be able to try and put a full

20   explanation to the Court together if that's possible.

21         THE COURT:  That's absolutely possible.  Again, you

22   just stepped into the role as counsel for Defendant Miao.  I

23   certainly appreciate that you are trying to put these pieces

24   together.  I would like to give you an opportunity.  We can

25   revisit this issue.  It's going to have to be the week of

Proceedings

1    April 1st.

2              How about April 4th, at 12:30, folks?

3              MS. GONZALEZ:  That works for the Government,

4    Your Honor.

5              MR. SINGER:  April 4th, at 12:30, I can do that.

6              THE COURT:  Okay, wonderful.

7              MS. GONZALEZ:  Your Honor, could the Government just

8    put additional facts on the record?

9              THE COURT:  Yes, please.

10             MS. GONZALEZ:  Thank you, Your Honor.

11             I don't think it's accurate to say that the events

12   in Pretrial's memorandum represent the first time that

13   Defendant has not been compliant.  In the Government's motion

14   for revocation of the bond which was filed in August, and

15   that's ECF 149, we discussed how in 2023 Defendant tried to

16   get his passport back from pretrial multiple times and he made

17   excuses as to why he needed that passport, and that was in the

18   motion that Judge Reyes had considered when revoking the bond

19   and Judge Reyes did find that there was probable cause to

20   think that the defendant committed wire fraud when he

21   submitted an application for life insurance with materially

22   false information.  Instead of remanding the defendant,

23   Judge Reyes increased the amount of the bond.

24             THE COURT:  I'm sorry, when was that application

25   made?

Proceedings

1          MS. GONZALEZ:  That was August 15, 2022, and

2    Your Honor referred it to the magistrate judge.

3          THE COURT:  No, when the application for the life

4    insurance was made.

5          MS. GONZALEZ:  That was in June, June 5, 2023.

6          THE COURT:  Okay.  And what was the inaccurate

7    information contained in that?

8          MS. GONZALEZ:  So, the most obvious is when the

9    application asked whether within the last ten years have you

10   been convicted of a felony or such a charge pending against

11   you, the defendant said no.

12         In addition, the life insurance company, which was

13   Guardian, could not verify certain information such as the

14   residence the defendant provided which was an office building

15   and not his primary residence.  The defendant had also listed

16   that his net worth was $30 million on that application.

17         THE COURT:  Three-zero-million?

18         MS. GONZALEZ:  That's correct, Your Honor.  And he

19   also wrote that his three individual beneficiaries, which were

20   his parents and brother, lived with him at the office building

21   address, in contrast to his interview with pretrial services

22   in which he had reported that his parents lived in China and

23   that he had no family members in the U.S.  And for each of

24   those beneficiaries he provided the same birthdate of

25   January 1, which just seems implausible.

Proceedings

1          So based on that application, Judge Reyes did find

2    that there was probable cause, but he gave the defendant, as

3    he said, one last chance.  And he said in his hearing, when

4    pretrial raised the concern that they would not be able to

5    monitor devices of the roommate he was living with,

6    Judge Reyes said if he is found to have used his roommate's

7    devices, there's going to be a violation of the bond and there

8    will be no third chance, you will be detained and his roommate

9    may face a contempt charge.  That's on page 25 of the

10   transcript.  So the searches for Swiss Life Insurance and

11   Hawaii are very concerning to us.

12          In addition, I just want to put a few additional

13   facts, and Pretrial will tell me if I'm saying this

14   inaccurately, but the defendant has been saying that he

15   doesn't have money, he can't make it to the courthouse.

16          I understand from pretrial that he Ubered to and

17   from the courthouse last week.  So I don't know -- despite

18   them being willing and able to provide a MetroCard.  So I

19   don't know what funds --

20          THE COURT:  Oh.  Wait a minute.  So I provided the

21   MetroCard, but that MetroCard wasn't used, instead Uber was

22   used on March 8th?

23          PRETRIAL OFFICER:  Your Honor, he -- on March 8th,

24   he came to the -- I'm sorry, the hearing before March 8th, the

25   status conference, he Ubered home.  We provided him a

*LEEANN N. MUSOLF, RPR, Official Court Reporter*

Proceedings

1  MetroCard, and the next day, March 8th, it appeared that he

2  did use the MetroCard.

3           THE COURT:  Okay.  But on the date of March 7th, he

4  Ubered home?

5           PRETRIAL OFFICER:  He Ubered home, yes, to Queens.

6           THE COURT:  To Queens?

7           PRETRIAL OFFICER:  Yes.

8           THE COURT:  Okay.

9           MS. GONZALEZ:  In addition, obviously that raises

10  red flags to us because the defendant has been saying he has

11  no money and he has also been saying that he's unable to work,

12  but the defendant can work.  He can reach out to pretrial and

13  figure out a way to get employment, but I understand from

14  pretrial that he has not provided any efforts for employment

15  or proof of employment.

16           I understand from the defendant that he is an

17  independent real estate investor, but there are other ways

18  that he can make a living while he is on home detention.  And

19  Judge Reyes noted that he can get stationary employment during

20  this time.

21           So when we're looking at these searches, we're

22  seeing efforts to obtain money, we're seeing searches for

23  airplanes, we're seeing inconsistencies and I would submit

24  outright misrepresentations to pretrial, and this is all --

25  you know, this all goes to show his risk of flight and -- and

LEEANN N. MUSOLF, RPR, Official Court Reporter

Proceedings

1   one thing I will say is I believe it's a preponderance of the

2   evidence standard for risk of flight specifically, but even if

3   it were clear and convincing, I think we've met -- we've gone

4   beyond that.

5           THE COURT:  I think so.  Okay.  At least now -- all

6   right.  Thank you.  I think the additional information is

7   particularly helpful, particularly that information related to

8   the hearing before Judge Reyes.

9           Nonetheless, we can all convene again on April 4th,

10  at 12:30.  I think you have an uphill climb, but I'm going to

11  give you the opportunity, nonetheless.

12          And so that I'm clear, I think that the evidence

13  here certainly, at least as I currently understand it, you may

14  be able to present some of this evidence to me in a different

15  light, but as I currently understand it, I believe that this

16  evidence certainly meets the standard for the Court to make a

17  finding that the defendant is, as I am finding now, a serious

18  flight risk and, therefore, I intend to continue his remand.

19          Now, to overcome that determination not only would

20  you have to address what I think is considerable evidence in

21  support of this Court's finding which, notably, is not

22  inconsistent with my colleague's finding that was made in

23  August, but in addition, even if you were to overcome that

24  evidence, I think we still have some issues with respect to

25  the suretors anyway, right?  I think, you know, Ms. Huang's

Proceedings

1    current willingness, but the back and forth that we've seen

2    with respect to her willingness to serve as a suretor and

3    Mr. Lee's indication that he no longer wishes to serve as a

4    suretor creates some additional hurdles, but that's almost

5    cart before the horse, quite candidly, because the true issues

6    that brought this question before the Court related to the

7    concerns raised by, first, pretrial services or the

8    Government, I don't know which one comes first in August, and

9    then pretrial services in February, which we've addressed I

10   think now, at length, at this hearing.

11          So, again, the Court does find that Defendant Miao

12   poses a serious flight risk, and as a result, the Court

13   intends to remand him pursuant to 18 U.S.C. 3141(E)(1).  We'll

14   have another hearing set for April 4th.

15          Is there anything else, folks, that we need to

16   address before we adjourn?

17          MS. GONZALEZ:  Not from the Government.  Thank you.

18          THE COURT:  Thank you.

19          Mr. Singer?

20          MR. SINGER:  No, Judge.  I would just ask -- I would

21   do whatever paperwork is necessary, but I would like to get a

22   copy of the minutes of today's proceeding.

23          THE COURT:  That's above my pay grade.  You can talk

24   to the court reporter.

25          MR. SINGER:  You may have to sign off.

Proceedings

1          THE COURT:  You have permission to do so.  In terms

2     of, if you're talking about costs, you can.

3          MR. SINGER:  All right.  Thank you.

4          THE COURT:  All right.

5          Anything else, folks?

6          All right.  Thanks.

7                    *   *   *   *   *

8     I certify that the foregoing is a correct transcript from the

9     record of proceedings in the above-entitled matter.

10

11

12    /s/ Leeann N. Musolf      3/14/2024

13    Leeann N. Musolf          DATE

14

15

16

17

18

19

20

21

22

23

24

25

*LEEANN N. MUSOLF, RPR, Official Court Reporter*