```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF NEW YORK

------------------------------X Docket#
UNITED STATES OF AMERICA,      : 22-cr-00458-LDH-SJB-9
                               :
                               :
   - versus                    : U.S. Courthouse
                               : Brooklyn, New York
JIAHUI MIAO,                   :
                               : November 26, 2024
              Defendant        : 10:41 a.m.
------------------------------X
```

            TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
           BEFORE THE HONORABLE SANKET J. BULSARA
              UNITED STATES MAGISTRATE JUDGE

**A   P   P   E   A   R   A   N   C   E   S:**


**For the Government**:        **Breon S. Peace, Esq.**
                              United States Attorney

                     BY:      **Benjamin Weintraub, Esq.**
                              Assistant U.S. Attorney
                              271 Cadman Plaza East
                              Brooklyn, New York 11201



**For the Defendant**:         **Samantha Chorny, Esq.**
                              SMC Law Firm
                              433 Broadway, Suite 401
                              New York, NY 10013



**Transcription Service**:     **Transcriptions Plus II, Inc.**
                              61 Beatrice Avenue
                              West Islip, New York 11795
                              RL.Transcriptions2@gmail.com



Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

Proceedings

THE CLERK:  We're here for a criminal action in a plea hearing, case number 22-cr-458, *United States v. Defendant Miao*.

Counsel, please state your appearance for the record starting with the government counsel.

MR. WEINTRAUB:  Good morning, your Honor. Benjamin Weintraub for the United States.

THE COURT:  Good morning.

MS. CHORNY:  Good morning, your Honor. Samantha Chorny, C-H-O-R-N-Y, for Mr. Miao.  Good morning.

THE COURT:  Good morning and good morning, Mr. Miao.

THE DEFENDANT:  Good morning.

THE COURT:  Mr. Miao, before I proceed today, do you need the assistance of an interpreter?

THE DEFENDANT:  Yes, I do.

THE COURT:  Okay.  Has the interpreter been previously sworn?

THE INTERPRETER:  Your Honor, I have worked on this case, a status conference, before but would you like me to swear again?

THE COURT:  You don't need to be sworn again. You just need to state your name for the record.

THE INTERPRETER:  Okay.  (Indiscernible).  I'm

3

Proceedings

the Mandarin interpreter.  Good morning, your Honor.

THE COURT:  Good morning.  Okay.  I have a couple of questions before we proceed.

First for the government, in the agreement for Mr. Miao and the government, paragraph 2 refers to stipulated conduct.  Does that relate to a specific count in the indictment?

MR. WEINTRAUB:  Yes, your Honor.  Let me find the specific count in the indictment.

THE COURT:  I didn't know whether it was Count 9 but I could be wrong about that.

MR. WEINTRAUB:  It's Count 8 and 9.  Count 8 is the conspiracy to operate and then Count 9 is the substantive operation of the unlicensed money transmitting business.

THE COURT:  So paragraph 2 is for both Counts 8 and 9?

MR. WEINTRAUB:  Yes.

THE COURT:  Okay.  Counsel, do you agree?

MS. CHORNY:  Yes.

THE COURT:  Okay.  The second question I have is about the global resolution potential point reduction in Mr. Miao's guidelines calculation in paragraph 17.  What's the status of that?

MR. WEINTRAUB:  First off, we have changed the

4

Proceedings

date to November 26th and have noted that in the copy that will be signed.  The status is that not all of these defendants who are identified here have to date pleaded guilty so it is, as of now, not operative.

THE COURT:  Okay.  And counsel, have you explain to your client that not all of the individuals in paragraph 17 have yet pleaded guilty and as of now the government is not going to make a motion for a two point reduction in the guidelines calculation?

MS. CHORNY:  Yes.  As of this morning my client is aware of that fact, your Honor.

THE COURT:  Okay.  And is he still prepared to proceed with his plea today?

MS. CHORNY:  Yes.

THE COURT:  Okay.  You can utilize the --

THE INTERPRETER:  I turn it off for my preference simultaneous Mandarin so my voice doesn't come on the line, but when I speak English I will turn it back on so you guys can hear me loud and clear.

THE COURT:  Sorry, I was just saying that if M Mr. Miao needed the interpreter during his sidebar conversations with his counsel, you're welcome to assist.

(Pause in proceedings)

THE COURT:  Okay.  Mr. Miao, I'm advised by your lawyer that you wish to plead guilty to at least one

Transcriptions Plus II, Inc.

5

Proceedings

of the charges that's been filed against you by the government in the indictment.  Is that correct?

THE DEFENDANT:  Yes.

THE COURT:  Okay.  This is a serious decision. I need to make sure you understand what it means to plead guilty, what the consequences of pleading guilty are, and what rights you'd be giving up if you pled guilty today. I'm going to be asking you some questions and it's important that your answers to my questions be made under oath.  And therefore, my deputy, Mr. Manson, is going to swear you in.  If you can kindly follow his instructions?

THE DEPUTY:  Sir, can you please stand up and raise your right hand?

J I A H U I   M I A O,

    called as a witness, having been first duly sworn,

    was examined and testified as follows:

THE DEPUTY:  Thank you.  You may have a seat.

THE COURT:  Okay.  Mr. Miao, do you understand now that you have been sworn, your answers to my questions are subject to the penalties of perjury or making a false statement if you don't answer truthfully?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Okay.  What that means, to be clear, is if I ask you a question and you tell me a lie, the government can prosecute you for making that lie and

6

Proceedings

use what you say today in the case against you.  Do you understand that?

THE DEFENDANT:  Yes, Honor.

THE COURT:  Okay.  The first thing I need you to understand is that this is Judge DeArcy Hall's case. She is the district judge who will accept your plea and also make the ultimate decision on your sentencing.  Now, if you wish, you have an absolute right, because it is her case, to have her hear your plea.

Alternatively, I will listen to your plea. Today's proceeding is being recorded.  A transcript will be made and Judge DeArcy Hall will review the transcript in deciding whether to accept your plea and in imposing a sentence upon you.  Do you understand what I've explained?

THE DEFENDANT:  Yes, Honor.

THE COURT:  Okay.  And so do you wish to give up your right to have Judge DeArcy Hall hear your plea and do you wish to instead proceed before me?

THE DEFENDANT:  Yes, Honor.

THE COURT:  Is your decision to proceed before me voluntary and of your own free will?

THE DEFENDANT:  Yes, Honor.

THE COURT:  And has anyone threatened you or forced you or pressured you in any way that's causing you

7

Proceedings

to proceed before me today?

THE DEFENDANT:  No, Honor.

THE COURT:  Okay.  I have before me a document that we're marking as Court Exhibit 1 which is to have a plea taken before a United States Magistrate Judge.  This document says that United States Magistrate Judge Bulsara, that's me, has informed you of your right to have your plea taken before a United States District Judge.

It goes on to say that you have been advised and you may consent to have your plea taken before Judge Bulsara.  It says further that you understand that you will suffer no prejudice if you refuse to consent.  And then it goes on to say you understand that if you don't consent the district judge assigned, Judge DeArcy Hall rather than the magistrate judge, me, will conduct the plea allocution.

And it concludes with saying after having discussed this matter fully with your lawyer, you consent to have your plea taken before Magistrate Judge Bulsara. That's what this form says.  That's Court Exhibit 1.  Can you confirm this is your signature on the document?

THE DEFENDANT:  Yes, Honor.

THE COURT:  Okay.  I note that Court Exhibit 1 is signed by Mr. Miao, his lawyer, it's signed by the

8

Proceedings

government, and therefore, I have signed it.  And based upon the questions I asked him, the answers he gave me, as well as the written consent form, I'm going to proceed to take his plea today.

Mr. Miao, before I can actually take your plea, I need to ask you some questions to make sure that what we do today is valid and appropriate and it's okay to go forward.  If you don't understand my questions, let me know and I'll rephrase them.  Okay?

THE DEFENDANT:  Okay.

THE COURT:  What's your full name, sir?

THE DEFENDANT:  My first name is Jiahui Miao, my last name is M-I-A-O.  Oh, my first name is Jiahui, my last name is Miao.  Sorry.

THE COURT:  Okay.  And how old are you?

THE DEFENDANT:  I'm 26 years old.

THE COURT:  And how far did you get in school?

THE DEFENDANT:  University.

THE COURT:  Okay.  And did you graduate from University?

THE DEFENDANT:  Not yet.

THE COURT:  Okay.  And you have the assistance of an interpreter to understand today's proceedings.  Is that correct?

THE DEFENDANT:  Yes.

9

Proceedings

THE COURT:  Okay.  Are you currently under the care of a doctor or psychiatrist for any reason?

THE DEFENDANT:  Yes.

THE COURT:  And what kind of doctor are you under the care for?

THE DEFENDANT:  Therapist.

THE COURT:  Sorry, what?

THE DEFENDANT:  I was being (indiscernible) by Judge Hall to go into the therapy session.

THE COURT:  Oh, therapy sessions.

THE DEFENDANT:  Yes, yes.

THE COURT:  Okay.  And the therapist that you're meeting with, did he or she diagnose you with a condition?

THE DEFENDANT:  No.

THE COURT:  Okay.  And are you taking any medication or drugs related to your therapy sessions?

THE DEFENDANT:  Yes.

THE COURT:  Okay.  And what medication are you taking?

THE DEFENDANT:  Sorry, your Honor, the present therapist, the doctor issued to me.  I don't even know the name right now on my mind.

THE COURT:  Okay.  Do you know what condition the medication is for?

10

Proceedings

THE DEFENDANT:  Oh yeah, just calm my mind down and then don't over thinking and then I need to sleep and also on the morning a pill.  I don't know what is that for but it just get me relaxed now.  I get too nervous about it.

THE COURT:  Okay.  Is it an anti-anxiety medication?

THE DEFENDANT:  I think so but I'm not really sure.

THE COURT:  Okay.  How many medications are you on?

THE DEFENDANT:  I just take one pill today, morning.

THE COURT:  And that's -- you just take one pill every day?

THE DEFENDANT:  Morning -- oh sorry, Honor. It's morning and the afternoon and then at night.

THE COURT:  Okay.  And is it the same medication or three different medications?  Do you know?

THE DEFENDANT:  Yeah, it's three different medication.

THE COURT:  Okay.  And all related to mental health?

THE DEFENDANT:  Yeah, and one for the painkiller.  That's it.  For painkiller.  For the -- I

Transcriptions Plus II, Inc.

11

Proceedings

got fracture on the jail so they gave me the painkiller.

THE COURT:  Can you say it in Mandarin so the interpreter can explain it?

THE DEFENDANT:  I had a fracture as well in the prison, so the doctor prescribed to me a pain medication.

THE COURT:  Oh, I see.  I'm sorry, painkiller medication.

THE DEFENDANT:  Yeah.

THE COURT:  Okay.  And so you take medication for pain as well as the other medications for mental health condition.  Is that correct?

THE DEFENDANT:  Yes, correct.

THE COURT:  Any other medication?

THE DEFENDANT:  No.

THE COURT:  Okay.  And you take these medications every day?

THE DEFENDANT:  Yes.

THE COURT:  Okay.  And did you take them yesterday?

THE DEFENDANT:  Yes.

THE COURT:  Okay.  And you took one medication this morning?

THE DEFENDANT:  Yes.

THE COURT:  Okay.  And when you take these medications, does it prevent you from understanding

12

Proceedings

what's going on or thinking in any way?

THE DEFENDANT:  I don't think so, Honor.

THE COURT:  Okay.  Does it prevent you -- you took your medication yesterday and you took your medication this morning.  Does it prevent you from understanding what's going on here today?

THE DEFENDANT:  I don't think so, Honor.

THE COURT:  Okay.  Do you have any reason to believe that you cannot understand what's going on here today?

THE DEFENDANT:  I don't think so, Honor.

THE COURT:  Okay.  And did anyone tell you when they gave you this medication that if you take it, you shouldn't make important decisions?

THE DEFENDANT:  My doctor didn't tell me that.

THE COURT:  Okay.  And your mind clear now?

THE DEFENDANT:  Yes.

THE COURT:  And you understood everything I've discussed with you thus far?

THE DEFENDANT:  Yes.  Mandarin tell me, yes.

THE COURT:  Okay.  And you feel comfortable going forward today?

THE DEFENDANT:  Yes, Honor.

THE COURT:  Okay.  Outside of the medication we discussed and the therapist that you mentioned, are you

13

Proceedings

being treated by any other doctor?

THE DEFENDANT:  One before I was on bail, yes. Right now, no.

THE COURT:  Okay.  And what was that doctor treating you for?

THE DEFENDANT:  It's like -- they call it PTSD. It's --

THE COURT:  PTSD?

THE DEFENDANT:  Yeah.

THE COURT:  Okay.  And when did that treatment stop for PTSD?

THE DEFENDANT:  When I got remanded.

THE COURT:  Okay.  And did that doctor give you any medication for your PTSD?

THE DEFENDANT:  While I was on bail, yes.  But right now I was hard to communicate with the doctor so I lost communicate for a while.

THE COURT:  Okay.  But are you suffering from the conditions that led you to get that treatment before you were remanded?

THE DEFENDANT:  Are you talking about before or after I was remanded?

THE COURT:  Before you were remanded I understood that you were being treated for PTSD.  And my question is are you still suffering from the same things

Transcriptions Plus II, Inc.

14

Proceedings

that caused your PTSD?

THE DEFENDANT:  Yes.

THE COURT:  Okay.  And is the therapist that you're seeing now assisting you with that?

THE DEFENDANT:  No.  I was being on the schedule but I'm still on the line.  I'm waiting for different doctors.

THE COURT:  Okay.

THE DEFENDANT:  Yeah.

THE COURT:  And are you taking any medication for your PTSD?

THE DEFENDANT:  No.

THE COURT:  Okay.  And even though you have stopped for now treatment for PTSD, are you still able to understand what's going on here today?

THE DEFENDANT:  Yes, Honor.

THE COURT:  Okay.  And even though you have suffered from PTSD in the past and were receiving treatment in the past, are you still able to go forward today in making an important decision?

THE DEFENDANT:  Yes, Honor.

THE COURT:  Okay.  And has anyone as a medical professional told you that you shouldn't make important decisions because of your past PTSD?

THE DEFENDANT:  I don't think so, Honor.

15

Proceedings

THE COURT: Okay. And outside of the doctors and the treatment we've just gone over, your therapist, the medication you take including the medication for anxiety, the medication for pain, and your past PTSD treatment, have you recently been under the treatment for any other condition by any other doctor?

THE DEFENDANT: No, Honor.

THE COURT: Okay. And outside of the medication we discussed, have you taken any other medication in the last 24 hours?

THE DEFENDANT: No, Honor.

THE COURT: Okay. And have you had any alcoholic beverages in the last 24 hours?

THE DEFENDANT: No, Honor.

THE COURT: Okay. And have you ever been hospitalized or treated for drug addiction or alcoholism?

THE DEFENDANT: No, Honor.

THE COURT: Okay. And outside of the mental health treatment that we talked about, the therapist you see now, the PTSD we discussed a moment ago have you been treated or hospitalized for any other emotional or mental health condition?

THE DEFENDANT: Yes, but it's long time ago, Honor.

THE COURT: Okay. How long ago was that?

16

Proceedings

THE DEFENDANT:  It's like five years ago.

THE COURT:  Okay.  And what condition was that?

THE DEFENDANT:  It's just got too nervous for mental disability but I don't think right now it's that situation.  I think my mind is very clear.

THE COURT:  Okay.  So did anyone ever treat you for schizophrenia?  Has anyone said that you have schizophrenia?

THE DEFENDANT:  I don't think so, Honor.

THE COURT:  Okay.  Has anyone ever told you from your prior mental health condition, including the treatment that you received five years ago, that you shouldn't make important decisions because of your mental health condition?

THE DEFENDANT:  No, Honor.

THE COURT:  Okay.  Is your mind clear today?

THE DEFENDANT:  Yes, Honor.

THE COURT:  Okay.  And you understand what's going on?

THE DEFENDANT:  Yes, Honor.

THE COURT:  And you feel comfortable moving forward with an important decision today?

THE DEFENDANT:  Yes, Honor.

THE COURT:  Okay.  Mr. Miao, as someone who's been charged in a federal criminal case, you have certain

Transcriptions Plus II, Inc.

17

Proceedings

rights that stay with you throughout your case from the time you are charged and arrested to however your case may end including any trial or any appeal.  One of those rights is your right to a lawyer.  Lawyer representation starts from the time you are arrested and charged until your case ends.  If you couldn't afford a lawyer, the Court would appoint one for you.  Do you understand what I've explained?

THE DEFENDANT:  Yes, Honor.

THE COURT:  And is Ms. Chorny your lawyer?

THE DEFENDANT:  Yes.

THE COURT:  Okay.  If at any time you need to consult with her or ask her a question because you need reassurance or for any reason at all, let me know and I'll permit you to do so.  Okay?

THE DEFENDANT:  Okay.  Thank you, your Honor.

THE COURT:  Have you had any difficulty in communicating with your lawyer?

THE DEFENDANT:  Not really, Honor.

THE COURT:  Have you had enough time to discuss with her your decision to enter a guilty plea in your case?

THE DEFENDANT:  Yes, Honor.

THE COURT:  And are you fully satisfied with the representation and advice that she's provided you?

18

Proceedings

THE DEFENDANT:  Yes, Honor.

THE COURT:  Okay.  Counsel, have you discussed this decision to enter a guilty plea with your client?

MS. CHORNY:  Yes, your Honor.

THE COURT:  Have you had any difficulty communicating with him?

MS. CHORNY:  No.

THE COURT:  Are you fully satisfied that he understands the rights he would be waiving if he pled guilty today?

MS. CHORNY:  Yes.

THE COURT:  You believe he's capable of understanding today's proceedings?

MS. CHORNY:  Yes.

THE COURT:  Do you have any doubt at all about his competence to enter a guilty plea today?

MS. CHORNY:  None.

THE COURT:  Okay.  Have you advised him of the maximum and minimum sentence and fine that could be imposed upon him if he were to enter a guilty plea today?

MS. CHORNY:  Yes.  He's aware of the entirety of the plea agreement.

THE COURT:  Okay.  Including the sentence and fine provisions?

MS. CHORNY:  Yes, your Honor.

19

Proceedings

THE COURT:  Okay.  And have you discussed with him the federal sentencing guidelines and how the guidelines would affect his case?

MS. CHORNY:  Yes, we've gone over the guidelines.

THE COURT:  Okay.  Mr. Miao, the document that contains the charges the government has made against you is called an indictment.  Did you have an opportunity to discuss those charges with your lawyer?

THE DEFENDANT:  Yes, Honor.

THE COURT:  And you believe you understand what the government has charged you with?

THE DEFENDANT:  Yes, Honor.

THE COURT:  Okay.  And I'm going to explain to you what the government has charged you with to make sure that we're all on the same page so we understand what exactly you're pleading guilty to.  Okay, sir?

In Count 11 of the indictment, okay, the government alleges that you were a member of a conspiracy.  A conspiracy is just a different way of describing an illegal agreement.  And an illegal agreement is one where the objective or purpose of the agreement is illegal.

Here, the government charges or alleges that the illegal agreement, its purpose was money laundering.

Transcriptions Plus II, Inc.

20

Proceedings

Specifically, the government alleges that the objective or purpose of the agreement was to use financial transactions and to engage in financial transactions using proceeds that were derived from one form of unlawful or illegal activity.  The government alleges that the amounts involved greater than $10,000.

And the government alleges that the proceeds were derived from a specific form of illegal activity which is the government alleges that the purpose of the agreement was to conduct financial transactions involving money that came from illegal wire fraud.  Okay?

Now, the government alleges that you became a member of this conspiracy, which means that you became a member of this illegal agreement which is a different way of saying you joined it knowing what you were doing and with the intent to become a member of this illegal agreement whose purpose was to conduct financial transactions using proceeds from illegal activity.  Do you understand what I've explained, sir?

THE DEFENDANT:  Yes, Honor.

THE COURT:  Okay.  Mr. Miao, I'm going to say that when someone pleads guilty to a felony in federal court, okay, they're giving up their right to trial.  And when they're doing that, they're giving up their right to have a jury determine their guilt.  In order to fully

21

Proceedings

understand what it means to give up that right, in other words, to give up your right to a jury trial, I'm going to explain to you what happens in a federal jury trial in a criminal case. In a federal jury trial in a criminal case, it's the government that has the burden of proof. They have to prove someone's guilt. You don't have to prove you're innocent. They've got to prove your guilt what's known as beyond a reasonable doubt. And in order for the government to get that jury to return a guilty verdict against you, they have to prove certain things. Okay?

And I'm going to explain to you what the government has to prove in order for the jury to find you guilty of money laundering conspiracy. And the reason I'm explaining that to you is so you understand what you're giving up when you give up your right to trial and you give up your right to have the government demonstrate your guilt. Okay? Do you understand what I'm about to explain to you, sir?

THE DEFENDANT: Yes, Honor.

THE COURT: Okay. So in order for the jury to return a guilty verdict against you on money laundering conspiracy, the government has to show that there was an agreement between two or more people and that agreement's purpose was illegal. Here, they've got to show that the

22

Proceedings

objective or purpose of the agreement was to commit money laundering. Okay? What's money laundering? That's engaging in monetary transactions involving amounts greater than $10,000 that are derived from specific unlawful activity. Okay? And the transactions have to involve either individuals who are U.S. citizens or the transactions have to take place in the United States. Okay? So that's what money laundering is. They've got to show that there is an agreement between two or more people to engage in that money laundering. And then they've got to show that you became a member of that agreement. You joined that conspiracy knowing what you were doing and with the intent to join and become a part of that illegal agreement. Do you understand what I've explained, sir?

THE DEFENDANT: Yes, Honor.

THE COURT: Okay. Government believe I've correctly summarized the charge and the elements?

MR. WEINTRAUB: Yes, very thoroughly. Thank you, your Honor.

THE COURT: Counsel, do you agree?

MS. CHORNY: Yes.

THE COURT: Okay. Mr. Miao, I've previously explained to you the rights that you have that stay with you throughout your case. Okay? And that's your right

Transcriptions Plus II, Inc.

23

Proceedings

to a lawyer.  I'm now going to explain to you what rights you would be giving up if you plead guilty.  Okay?

When you were first charged, you appeared in federal court before another judge and your lawyer entered a plea of not guilty on your behalf.  Okay?  Do you remember that?

THE DEFENDANT:  Yes, Honor.

THE COURT:  Okay.  So what that means is you have an absolute right to plead not guilty.  Even if you are guilty, you have a choice.  It's up to you to decide what to do, not your lawyer, not the government, not me, or not anyone else.  You can withdraw that not guilty plea and enter a guilty plea today as I understand you wish to do.  Or you can simply keep your not guilty plea from before and proceed on to a trial.  Do you understand that?

THE DEFENDANT:  Yes, Honor.

THE COURT:  Okay.  If you keep your not guilty plea, you're entitled to under the Constitution and laws of the United States to what's known as a speedy and public trial.  And as I mentioned, that would be before a jury.  And you'd have the assistance of your lawyer and that trial would be about the charges in the indictment that's been filed against you.  Do you understand that?

THE DEFENDANT:  Yes, Honor.

24

Proceedings

THE COURT:  Okay.  At a trial, you'd be presumed innocent.  You wouldn't have to prove that you're innocent and that's because under our legal system, as I mentioned before, it's the government that bears the burden of proof.  They've got to prove your guilt beyond a reasonable doubt.  They've got to prove all of those things I just mentioned before about money laundering conspiracy.  And because the government bears the burden of proof, if they failed to prove your guilt beyond a reasonable doubt, if they fail to prove those things that I mentioned beyond a reasonable doubt, the jury has to return a not guilty verdict in your favor. Do you understand that?

THE DEFENDANT:  Yes, Honor.

THE COURT:  Okay.  Now, if you had a trial, the government would have to have its witnesses come to testify in court in front of you in your presence.  Your lawyer would have the right to cross-examine those witnesses, to object to the government's evidence, to object to the government's witnesses, cross-examine them, and offer evidence or argument on your behalf if that's what you wanted to do.  Do you understand that?

THE DEFENDANT:  Yes, Honor.

THE COURT:  Okay.  Your lawyer would also have the right to subpoena or compel, which is a fancy way of

25

Proceedings

saying your lawyer would have a right to force witnesses to come to court to testify in your case.  Do you understand that?

THE DEFENDANT:  Yes, Honor.

THE COURT:  Okay.  Now, at a trial, you would have the right to testify, excuse me, in your own case in your own defense on your behalf if that's what you wanted to do.  On the other hand, if you didn't want to testify in your own case, you could not be forced to and that's because under the Constitution and laws of the United States no person can be forced to be a witness against himself or herself.  If you had a trial and you chose not to testify, Judge DeArcy Hall would be required to tell the jury that they could not hold that fact, in other words they couldn't hold your decision not to testify against you in deciding whether or not the government had proven your guilt.  Do you understand that?

THE DEFENDANT:  Yes, Honor.

THE COURT:  Okay.  Also, if instead of going to trial you plead guilty today and if Judge DeArcy Hall accepts your guilty plea, you're giving up all the rights that I just mentioned.  There won't be a trial in the case.  There will simply be a judgment of guilty entered based upon what you say today.  Do you understand that?

THE DEFENDANT:  Yes, Honor.

26

Proceedings

THE COURT: Okay. Also, if you plead guilty, I have to ask you questions about what you did in order to assure myself that you are in fact guilty of a crime and in fact that you're guilty of the crime that you wish to plead guilty to. What that means is I have to ask you questions, you have to answer my questions, you have to acknowledge your guilt for me and for Judge DeArcy Hall. And what that means fundamentally is you're giving up your right not to be a witness against yourself. Do you understand that?

THE DEFENDANT: Yes, Honor.

THE COURT: Okay. Also, if you enter a guilty plea today and if you admit to criminal conduct and Judge DeArcy Hall accepts your plea, you cannot appeal to a higher court about whether or not you committed the crime or not. That would be over by your guilty plea. You understand that?

THE DEFENDANT: Yes, Honor.

THE COURT: Okay. And so are you willing to give up your right to trial and each of the other rights that I've just mentioned?

THE DEFENDANT: Sorry, your Honor, I didn't heard it.

THE COURT: Are you willing to give up your right to trial and each of the other rights I just

27

Proceedings

mentioned that are associated with a trial?

THE DEFENDANT:  Yes, Honor.

THE COURT:  Okay.  I have before me Court Exhibit 2 which is an agreement between Mr. Miao and the government.  I note it's signed by him, his lawyer, and the government.  Mr. Miao, did you read this agreement?

THE DEFENDANT:  Sorry, Judge, which agreement? Plea agreement?

THE COURT:  Yes.

THE DEFENDANT:  Oh, yes.

THE COURT:  Okay.  And did you need an interpreter for that?

THE DEFENDANT:  No.

THE COURT:  Okay.  Your English is sufficient for you to understand it in English?

THE DEFENDANT:  Yes.

THE COURT:  Okay.  And so when you read it, did you understand it completely?

THE DEFENDANT:  Yes.

THE COURT:  Okay.  And were you able to ask your lawyer about anything you didn't understand or for clarification?

THE DEFENDANT:  I asked my lawyer before already.  It's clear already.  Thank you, Judge.

THE COURT:  Okay.  So you able to discuss any

28

Proceedings

questions you had with her and they were answered to your satisfaction?

THE DEFENDANT:  Yes, Honor.

THE COURT:  Okay.  And Mr. Weintraub, anything in paragraph 18?

MR. WEINTRAUB:  I think the paragraph is accurate as written.  Paragraph 18?

THE COURT:  Yes.  Meaning are there dates of such -- sometimes the parties --

MR. WEINTRAUB:  Yes, there are, but it's not in my practice to put those dates in the agreement.

THE COURT:  That's fine.  I just need to make sure that you have discussed with defense counsel any such dates and you're in agreement about that because there have been instances where there's been --

MR. WEINTRAUB:  Just give me one minute to speak with counsel.

THE COURT:  Yes.

(Pause in proceedings)

THE COURT:  What, if anything, falls under paragraph 18?

MR. WEINTRAUB:  The government, yes.

MS. CHORNY:  Yes.

THE COURT:  Okay.  Outside of -- or let me ask it this way.  The government represent that this document

29

Proceedings

represents the entirety of the understanding the

government's reached with Mr. Miao?

MR. WEINTRAUB:  Yes.

THE COURT:  Counsel, have you reviewed this

agreement with your client?

MS. CHORNY:  Yes.

THE COURT:  And does it contain the entirety of

the understanding your client's entered into with the

government?

MS. CHORNY:  Yes.

THE COURT:  Okay.  Mr. Miao, is there anything

in this agreement that is not clear or you need explained

in any further detail?

THE DEFENDANT:  No, Honor.

THE COURT:  Okay.  And outside of what's said

in this agreement, anyone make you any other promises

that are causing you to plead guilty today?

THE DEFENDANT:  Sorry, Honor, I don't

understand.

THE COURT:  This agreement has certain things

the government has said they would do, there are certain

things they said they wouldn't do.  I'm asking you if

anyone has made you any promises outside of this

agreement that are causing you to plead guilty today?

For example, has anyone promised you what

30

Proceedings

sentence you would receive if you pled guilty?

THE DEFENDANT:  No, Honor.

THE COURT:  Okay.  So no one's made any other promises outside of what's in this agreement that's causing you to plead guilty today?

THE DEFENDANT:  No, Honor.

THE COURT:  Okay.  There are certain provisions of this that I'm required to go over and explain with you and I'm going to do that now.  Okay?  The first is the maximum and minimum sentence and fine that can be imposed upon you, okay, for money laundering conspiracy.  A minimum term in federal prison of zero years.  The maximum term in federal prison is 20 years.  Okay?

What happens when someone is released from federal prison?  When they're released from federal prison, they are subject to the supervision of the probation department.  The probation department monitors that person's compliance with certain conditions.  Okay?  There as things like report to your probation officer, do not commit any other crimes, conditions like that.

When someone is under the supervision of the probation department, that's called supervised release.  Okay?  How long can you be under supervised release after you're released from federal prison?  For this offense, a maximum of three years.

31

Proceedings

Now, what happens if you were to violate one of those conditions?  You could actually be sent back to federal prison.  How much additional time could you serve in federal prison?  A maximum of two years.  Do you understand what I've explained?

THE DEFENDANT:  Yes, Honor.

THE COURT:  Okay.  You're also subject to a maximum fine of 500,000 or twice the value of the -- $500,000 or twice the value of the property involved in your conduct, whichever is a greater amount.

You're also required to pay what's known as restitution which is payments to victims in an amount that the Court will determine.

You're also subject to a mandatory $100 special assessment fee.  And you're also required to forfeit your rights to property and money that the government says were involved in your illegal conduct.  Do you understand all of that, sir?

THE DEFENDANT:  Yes, Honor.

THE COURT:  Okay.  Paragraph 2 of this agreement also says that you are stipulating to certain conduct.  It provides that -- what that means is you are agreeing that you did certain things and those things can be considered by the Court, by Judge DeArcy Hall, as if you had been convicted of the crimes that charge that

32

Proceedings

conduct.  Specifically, you're agreeing that between January 2021 and July 2022 you participated in the operation of an unlicensed money transferring business that affected interstate and foreign commerce and that you did so knowingly and intentionally.  Do you understand that you are agreeing that you engaged in that conduct and that conduct can be considered by the Court as if you've been convicted of a crime that amounts to that conduct or based on that conduct?

THE DEFENDANT:  Yes, Honor.

THE COURT:  Okay.  It also says that you are waiving any rights you might have to a jury trial about that conduct, and you're waiving your rights to what's known as a Fatico hearing which is an evidentiary hearing.  You're waiving any right you might have to have a hearing about what your conduct involved that you agreed to.  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Okay.  I will explain the sentencing guidelines in detail to you but there is one paragraph I'm going to read to you before that that I'm going to go over with you, paragraph 5, page 4.  I will read it and then I'll explain it to you.

This is known as an appellate waiver.  This says, "The defendant agrees not to file an appeal or

33

Proceedings

otherwise challenge the conviction or sentence in the event the Court imposes a term of imprisonment of 78 months or below."

What that means is if Judge DeArcy Hall gives you a sentence of 78 months or less, you are agreeing that you're not going to challenge either your sentence or your conviction through an appeal or through any other method.  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Okay.  Do you have any questions about that?

THE DEFENDANT:  No, Honor.

THE COURT:  Okay.  Also, in paragraph 7 on page 6, okay, this is the forfeiture portion of the agreement. It says that you're giving up your right to certain money, specifically $39,005.12 that the government alleges was involved in your illegal conduct.  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  And do you understand that you will have to assist the government in recovering those proceeds by including disclosing your financial assets?

THE DEFENDANT:  Yes, Honor.

THE COURT:  Okay.  Do you understand that if you were not born in the United States, when someone not

34

Proceedings

born in the United States pleads guilty to a federal crime, federal felony, that can lead to their removal from the United States?  So if you were not born in the United States, pleading guilty to this crime can lead to your removal or otherwise called deportation from the United States and that can sometimes be an automatic removal from the United States.  Do you understand that?

THE DEFENDANT:  Yes, Honor.

THE COURT:  Okay.  And do you understand that immigration is a different proceeding?  It's not determined by Judge DeArcy Hall.  It's not even determined in this courthouse.  It's done in immigration court which is a separate proceeding.  Do you understand that?

THE DEFENDANT:  Yes, Honor.

THE COURT:  Okay.  There's a provision in here, paragraph 17, which talks about what's known as a global reduction.  I'm sorry, global resolution.  It provides that if certain other people plead guilty by November 26, 2024, the government must seek a reduction in your guidelines calculation.  Do you understand that that's what this provision provides?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand also that there's no guarantee that these individuals will all plead guilty

Transcriptions Plus II, Inc.

35

Proceedings

before that date and in fact thus far they have not pled guilty? Do you understand that?

THE DEFENDANT: Yes.

THE COURT: And so it remains possible that the government is not obligated to seek a reduction in your guidelines calculation. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Okay. And are you still -- because that remains a possibility, are you still willing to proceed with your guilty plea today?

THE DEFENDANT: Yes.

THE COURT: Okay. I'm going to explain to you how Judge DeArcy Hall is going to determine your sentence. Okay?

As a first step, she's going to consider what are known as the advisory -- sorry, let me just step back for a moment. Outside of the guidelines calculation, anything else the government wishes me to go over?

MR. WEINTRAUB: No, your Honor.

THE COURT: Counsel, anything else?

MS. CHORNY: No, thank you.

THE COURT: Okay. Mr. Miao, Judge DeArcy Hall in determining what a sentence would be appropriate for you, what a reasonable sentence is in a criminal case, she's going to first consider what are known as the

36

Proceedings

advisory federal sentencing guidelines.  What are those?  Those are guideline which are issued by a federal agency called the United States Sentencing Commission.

What does all of that mean?  The guidelines, they're like factors that are applied to someone's case.  It depends on the nature of their crime, their criminal history, things like that.  When those guidelines are applied to someone, they lead to a range of time of imprisonment, a sentencing range between A and B.  Okay?

What do I mean when I say that the guidelines are advisory.  That means Judge DeArcy Hall is not required to give you a sentence between A and B.  They are not mandatory.  But because they're advisory, she's going to determine what that guidelines range is and they will be an important factor in determining your sentence.  Do you understand what I've explained?

THE DEFENDANT:  Yes, Honor.

THE COURT:  Okay.  And have you discussed the sentencing guidelines with your lawyer and how they might affect your case?

THE DEFENDANT:  Yes, Honor.

THE COURT:  Okay.  Now, as a second step Judge DeArcy Hall will determine whether there are any factors that allow her to depart or vary either upwardly or downwardly which means impose a sentence even more severe

Proceedings

37

or less severe than that range in the guidelines.  Do you understand that?

THE DEFENDANT:  Yes, Honor.

THE COURT:  Okay.  Also, there's a federal sentencing law that requires that a judge consider certain factors in determining your sentence.  Those include the facts and circumstances of your case, the crime you pled guilty to, your background, your specific conduct, everything about you.  And it may be that what's known as a non-guidelines sentence would be appropriate for you.  Do you understand that?

THE DEFENDANT:  Yes, Honor.

THE COURT:  Okay.  The bottom line of all of this is until your actual date of sentencing you cannot know with certainty what the guidelines will be or whether there are grounds to depart upwardly or vary upwardly or downwardly, or vary downwardly and give you a less severe sentence.  Do you understand that?

THE DEFENDANT:  Yes, Honor.

THE COURT:  Okay.  And you understand that Judge DeArcy Hall can also impose a non-guidelines sentence entirely?

THE DEFENDANT:  Yes, Honor.

THE COURT:  Okay.  Prior to your sentencing date which is currently set for June 6th of next year at

Proceedings

12 o'clock, okay, and if the parties need a different date, they should reach out to her chambers, you're going to be interviewed by the probation department.  Okay?  The probation department is going to recommend to Judge DeArcy Hall a guideline range.  Okay?  It's also going to report back with facts about you, your conduct, things like that.  You have an opportunity to review that portion of the report with your lawyer and to object to any findings that are made by the probation department.  Do you understand that?

THE DEFENDANT:  Yes, Honor.

THE COURT:  Do you have any questions about any of that?

THE DEFENDANT:  No, Honor.

THE COURT:  Okay.  Despite what I've said, it's important for you to know what the guidelines range is now.  And so keep in mind -- and that's based on facts that are known now.  You have to keep in mind that this is an estimate and it's a different way of saying it's a guess and it could be wrong.  It might be an educated guess but it's still a guess that could be wrong.  Do you understand that?

THE DEFENDANT:  Yes, Honor.

THE COURT:  Okay.  What's the government's estimate of the guidelines range?

39

Proceedings

MR. WEINTRAUB:  Your Honor, with acceptance of responsibility points, the government estimates that the defendant's total offense level is 25 and that he falls within criminal history category I which results in a guidelines range of imprisonment of 57 to 71 months.

THE COURT:  Okay.  And that is not including any downward point variation based on a global resolution, correct?

MR. WEINTRAUB:  Correct, your Honor.

THE COURT:  Okay.  Mr. Miao, the government's estimate of the guidelines range is 57 to 71 months in federal prison.  Do you understand that?

THE DEFENDANT:  Yes, Honor.

THE COURT:  Okay.  It also, this agreement says that, "The defendant," that's you, "stipulates to the above guidelines calculation."  Okay?  What that means is that you agree that this is the calculation.  Your lawyer can argue for a lower sentence but you agree that this is the guidelines range calculation.  Do you understand that?

THE DEFENDANT:  Yes, Honor.

THE COURT:  Okay.  Now, do you understand that this government estimate is actually not binding on the government, the probation department, or Judge DeArcy Hall?

40

Proceedings

THE DEFENDANT:  Yes, Honor.

THE COURT:  Okay.  What that means is even if the government's estimate is wrong, you will not be permitted to withdraw your guilty plea if you make a guilty plea today.  Do you understand that?

THE DEFENDANT:  Yes, Honor.

THE COURT:  Okay.  Counsel, I don't need to know what it is but have you provided your client with a guidelines estimate?

MS. CHORNY:  Yes.

THE COURT:  Okay.  Mr. Miao, do you understand that nobody is bound by your lawyer's estimate of the guidelines range?  In other words, it's not binding on the government, the probation department, or Judge DeArcy Hall?

THE DEFENDANT:  Yes, Honor.

THE COURT:  Okay.  The reason I say all of that is that Judge DeArcy Hall can sentence you based upon her interpretation of the guidelines and the sentencing law. Do you understand that?

THE DEFENDANT:  Yes, Honor.

THE COURT:  And you understand that even though the guidelines range and calculation are an important part of sentencing, she could impose a more severe or less severe or non-guidelines sentence entirely.  Do you

Transcriptions Plus II, Inc.

41

Proceedings

understand that?

THE DEFENDANT: Yes, Honor.

THE COURT: Okay. Also, under the federal sentencing system for individuals who are sentenced now there is no parole board or parole commission to apply to to get out early from federal prison. What that means is practically speaking whatever sentence you receive from Judge DeArcy Hall, that's going to come pretty close to the amount of time you spend in federal prison. You will not have the opportunity to appeal to a parole board or parole commission and say, you know, I served enough of my sentence, please let me out early. You will not be able to do that because for individuals sentenced now, there is no parole board or parole board in the federal system. Do you understand that?

THE DEFENDANT: Yes, Honor.

THE COURT: Okay. Do you have any questions that you want to ask me about what you're charged with, your rights, or anything else that may not be clear?

THE DEFENDANT: Sir, can I talk to my lawyer a little bit?

THE COURT: Yes, you may.

(Pause in proceedings)

MS. CHORNY: Okay. I think my client's ready to proceed again.

42

Proceedings

THE COURT:  Mr. Miao, have your questions been answered by your lawyer to your satisfaction?

THE DEFENDANT:  Yes, Honor.

THE COURT:  Okay.  Do you have any questions for me before you plead?

THE DEFENDANT:  Yes.

THE COURT:  Okay.  Well, here's what I'm going to do.  First I want you to ask -- and if you need to use the interpreter, that's okay.  Talk with your lawyer who can then ask me the question so you're not making the statement.  Okay?

(Pause in proceedings)

MS. CHORNY:  That there are no pending record -- I mean there are no pending motions on the docket and any previous motions have been denied or withdrawn, that there's nothing pending.  That's what he wants to make clear.

THE COURT:  Okay.  Mr. Miao, I have to look at the docket sheet in the case to see if there are any pending motions and I'll quickly take a look and I'll ask the government.  But let me say this, if you enter a guilty plea today, okay, it doesn't matter if there are pending motions or not.  Those are basically gone.  Your guilty plea means that those motions are -- you've given up on those motions and frankly, you've given up on any

Transcriptions Plus II, Inc.

43

Proceedings

motions in the future which is perhaps even more important.  Pleading guilty means you are not challenging the government's case against you on that count and that you are agreeing you engaged in that conduct and Judge DeArcy Hall can sentence you on that conduct.  Do you understand that?

THE DEFENDANT:  Yes, Honor.

THE COURT:  Okay.

MR. WEINTRAUB:  If I may have a moment to speak with counsel?

THE COURT:  Yes.

MR. WEINTRAUB:  I think it would be helpful.

(Pause in proceedings)

THE COURT:  Well, there are two motions on the docket.  Okay?  But Mr. Miao, one of them is, I haven't read it, but the title is a motion for a speedy trial.  Okay?  If you plead guilty today, there's not a trial in the case and you're giving up your right to trial which is what I've just gone over with you.  Okay?  So that motion would be denied as basically no longer relevant.

The second motion is a motion to compel, okay, which I haven't read but usually is a motion to seek evidence or seek something from the government.  Okay?  If you plead guilty, that motion goes away because, as I mentioned before, you're agreeing that you committed this

Transcriptions Plus II, Inc.

44

Proceedings

crime, you engaged in this conduct, and it's okay to proceed directly to sentencing.  Okay?

Motions exist when you're challenging the government's case.  Okay?  When you're seeking a trial or challenging the government's case.  When someone pleads guilty they are no longer challenging the government's case except for at sentencing when they're arguing for a different sentence than perhaps the government wishes to impose upon you.  Okay?  Do you understand what I've explained?

THE DEFENDANT:  Yes, Honor.

THE COURT:  Okay.  And you understand that whatever motions or challenges you have to the government's case about your guilt will go away by virtue of your guilty plea if you enter one today?

THE DEFENDANT:  Yes, Honor.

THE COURT:  Okay.  And do you understand that if you enter a guilty plea today, your lawyer cannot enter and file motions about your guilt anymore and you're giving up any future challenges to your guilt.  Do you understand that?

THE DEFENDANT:  Yes, Honor.

THE COURT:  Okay.  And do you understand that the only challenge that you can make is if Judge DeArcy Hall does not give you a sentence of 78 months or less?

Transcriptions Plus II, Inc.

45

Proceedings

In other words, that's the only challenge you can make following sentencing.  Do you understand that?

THE DEFENDANT:  Yes, Honor.

THE COURT:  Okay.  And are you still prepared to plead guilty today and proceed with your guilty plea?

THE DEFENDANT:  Can you give me one minute to talk --

THE COURT:  Yes.

(Pause in proceedings)

THE COURT:  Mr. Weintraub, you don't want me to go forward.  I know that you think it may be beneficial.  It is quite clear to me that Mr. Miao needs some additional time to discuss what's going on here with his lawyer.  That's clear from even the basic colloquy and the length that it's taking.  So I think if we return for a proceeding, it would be a very short proceeding.  I would simply incorporate the prior plea proceedings as I've done in another case and we would simply go into factual allocution.  But I don't think it's appropriate to proceed at this time.  I know that's frustrating for everyone including --

MR. WEINTRAUB:  I think you're 100 percent right.

THE COURT:  But I would hate to have additional new challenges brought unnecessarily.

Transcriptions Plus II, Inc.

46

Proceedings

So Mr. Miao, I think you need more time to discuss this decision with your lawyer because I need you to understand that there are certain reasons your lawyer may explain to you to plead guilty and certain things that happen if you plead guilty. Okay? And I have certain things I'm required to explain to you. Okay? And most fundamentally when you're pleading guilty you are giving up your right to challenge your guilt. Okay? And you can only appeal in certain circumstances.

If you're not comfortable with doing that, that's something you need to discuss with your lawyer. Okay? And if you don't understand that, your lawyer can explain it to you or I can explain because I can't get involved in plea bargaining, but I can explain to you what a consequence of a guilty plea is. And the motions you have or the arguments you have about your guilt by entering a guilty plea go away when you enter a guilty plea. And if you're not comfortable with that, I can't take your guilty plea.

So I need to make sure if you do want to plead guilty, you are comfortable with that. And so, and let me say --

THE DEFENDANT: Your Honor, I think I have my mind, I'm coming here to take the responsibility today and, you know, I'm taking the plea today.

47

Proceedings

THE COURT:  Okay.

THE DEFENDANT:  I just have certain things are not clear but I'm clear with my counsel already.

THE COURT:  For everyone's sake, including as your counsel is nodding, I'm going to reschedule this in short order.

MS. CHORNY:  It's okay.

THE COURT:  Mr. Weintraub, are you available on the 3rd?

MR. WEINTRAUB:  One moment, your Honor.  If it would be possible to do it later in the day?  I have time booked in the grand jury which I'll accommodate of course, but it's going to be for much of the day.

THE COURT:  How's 3:30?

MR. WEINTRAUB:  That would be great.

MS. CHORNY:  Sure.

THE COURT:  Okay.  We'll put this on for 3:30. And counsel, I assume you'll take some time to discuss in the interim with Mr. Miao what we've discussed today and so you can answer any questions he has.

MS. CHORNY:  Absolutely.  As to the last issue discussed in the record, I'll in detail discuss that with my client before the next court date and ensure he knows how he wants to proceed.

THE COURT:  Okay.

48

Proceedings

MS. CHORNY:  I'm sorry for wasting anyone's time.

THE COURT:  You're not wasting anyone's time. It's important that this be done correctly.  And it's no burden on the Court.  And just so you understand how I would proceed, okay, and so Mr. Weintraub understands as well, if your client decides to go forward, the proceeding on the 3rd would be relatively short.  I wouldn't repeat all the other things.  I would simply ask him some basic questions about whether or not he's ready to proceed.  I might ask him some follow-up questions about some of the things that have come up recently.  And then I would proceed to simply take his plea and incorporate what was said today, in other words the explanation of the offenses, the rights given up, et cetera, and not repeat all of that.  I would just incorporate that unless for some reason the parties thought I needed to start afresh, but that's generally not my practice.

MS. CHORNY:  Okay.  That's great.

THE COURT:  Okay?  All right.

MR. WEINTRAUB:  Thank you, your Honor.

THE COURT:  Thank you.

(Matter concluded)

-oOo-

Transcriptions Plus II, Inc.

49

# C E R T I F I C A T E

I, MARY GRECO, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **2nd** day of **December**, 2024.

_Mary Greco_
Transcriptions Plus II, Inc.

Transcriptions Plus II, Inc.