

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

RCH:BW/MG/RB
F. #2021R00629

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

December 18, 2024

<u>By ECF</u>

The Honorable LaShann DeArcy Hall
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Xin Jin Chen
     <u>Criminal Docket No. 22-CR-458 (LDH)</u>

Dear Judge DeArcy Hall:

  The government respectfully submits this sentencing memorandum in advance of the January 9, 2025 sentencing hearing for the defendant Xin Jin Chen. For the reasons set forth below, the government respectfully submits that a term of imprisonment within the U.S. Sentencing Guidelines ("U.S.S.G." or the "Guidelines") range of 24 to 30 months' incarceration is appropriate in this case. This range balances the seriousness of the defendant's crime and the need for both specific and general deterrence of like behavior.

  I. <u>Background</u>

  This case involves two large-scale criminal schemes: (i) a money laundering ring whose participants laundered millions of dollars obtained from victims of a "pig butchering" investment scam and (ii) an unlicensed money transmitting business whose participants converted millions of dollars from cash into cashier's checks as part of an unregulated, underground banking system. The defendant participated in both of these schemes and, in furtherance thereof, used a fake Chinese passport to open bank accounts and conduct cash conversions.

  A. <u>The Money Laundering Scheme</u>

  As described by the Federal Deposit Insurance Corporation, Office of Inspector General, "pig butchering" is a type of "confidence and investment fraud in which the victim is gradually lured into making increasing monetary contributions, generally in the form of cryptocurrency, to a seemingly sound investment before the scammer disappears with the

contributed monies."[1] The name "pig butchering" is a "reference to the practice of fattening a pig before slaughter." Id. In 2023 alone, approximately $3.96 billion was lost by victims of cryptocurrency investment scams, such as pig butchering scams.[2] Pig butchering scams are largely operated from Southeast Asia and the individuals responsible for communicating with victims are themselves frequently the victims of human trafficking and forced labor.[3]

Between May 2021 and August 2022, co-defendant Jin Hua Zhang ("Zhang") participated directly in a pig butchering scam that he and his co-conspirators referred to as "T5." See November 12, 2024 Presentence Investigation Report ("PSR") ¶¶ 35-41. During this period, Zhang also managed a network of individuals, which included the defendant, who laundered funds fraudulently obtained from victims of the T5 scam. Id. The defendant, using two shell companies that he operated under the alias Hui Chen, laundered approximately $1,202,265 fraudulently derived from at least two victims. Id. ¶ 44. The government's investigation identified at least 59 victims of the T5 scam, whose losses totaled at least $18 million.[4]

### B. The Unlicensed Money Transmitting Business Scheme

Between January 2021 and July 2022, Zhang operated an unlicensed money transmitting business that facilitated the conversion of bulk cash to cashier's checks. Id. ¶ 27. Zhang used the services of a network of couriers, including the defendant, to conduct the conversions. Between January 2022 and April 2022, the defendant conducted at least 48 illegal conversions of bulk cash to cashier's checks at various Wells Fargo and Bank of America branches in Brooklyn and Manhattan. Id. ¶ 31. In total, the defendant converted at least $4,747,090 in these transactions. Id. The defendant conducted the transactions using, at times, a fake Chinese passport in the name of Hui Chen. Id.

On October 6, 2022, the defendant was indicted in the Eastern District of New York for: (i) bank fraud conspiracy, in violation of 18 U.S.C. § 1349 (Count One); (ii) bank fraud, in violation of 18 U.S.C. § 1344 (Count Four); (iii) conspiracy to operate an unlicensed

---

[1] See Pig Butchering Scams, Federal Deposit Insurance Corporation, Office of Inspector General, available at https://www.fdicoig.gov/pig-butchering-scams. Attached hereto as Exhibit 1.

[2] See 2023 Internet Crime Report at 12, Federal Bureau of Investigation, available at https://www.ic3.gov/AnnualReport/Reports/2023_IC3Report.pdf. Attached hereto as Exhibit 2.

[3] See New Study Estimates as Much as $75 Billion in Global Victims' Losses to Pig-Butchering Scam, Time Magazine (Feb. 29, 2024), available at https://time.com/6836703/pig-butchering-scam-victim-loss-money-study-crypto/. Attached hereto as Exhibit 3.

[4] Though the PSR for this defendant does not specifically identify this number of victims or this loss amount, the PSR for one of the defendant's co-defendants identified 59 victims and victim loss exceeding $18 million. Accordingly, the government respectfully refers the Court to the government's sentencing submission as to the defendant Yanbing Chen for the support for this assertion. See ECF No. 255 at 2.

money transmitting business, in violation of 18 U.S.C. § 371 (Count Eight); (iv) operation of an unlicensed money transmitting business, in violation of 18 U.S.C. § 1960(a) (Count 9); (v) money laundering conspiracy, in violation of 18 U.S.C. § 1956(h) (Count Eleven); (vi) money laundering, in violation of 18 U.S.C. § 1957(a) (Count Twenty-Five); (vii) passport fraud conspiracy, in violation 18 U.S.C. § 371 (Count Twenty-Eight) and (viii) passport fraud, in violation of 18 U.S.C. § 1543 (Count Twenty-Nine).  The defendant was arrested on October 13, 2022.  The defendant pleaded guilty to Count Eleven (money laundering conspiracy).  In his plea agreement, the defendant stipulated to having committed conduct constituting bank fraud, passport fraud and operation of an unlicensed money transmitting business.[5]  For his services, the defendant received approximately $77,450.07 as a commission fee, based on a percentage of the cash that he converted into cashier's checks and victim funds he laundered.  See PSR ¶ 109.

II.     Applicable Law

The Supreme Court has explained that the Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range.  As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark."  Gall v. United States, 552 U.S. 38, 49 (2007) (citation omitted).  Next, a sentencing court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party.  In so doing, [it] may not presume that the Guidelines range is reasonable.  [It] must make an individualized assessment based on the facts presented."  Id. at 50 (citation and footnote omitted).  Title 18, United States Code, Section 3553(a) provides, in part, that in imposing sentence, the Court shall consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; [and]
>
> (2) the need for the sentence imposed--
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct; [and]
>>
>> (C) to protect the public from further crimes of the defendant.

Section 3553 also recognizes the need to afford the defendant opportunities for rehabilitation.  See 18 U.S.C. § 3553(a)(2)(D).  Thus, the Court must first calculate the correct Guidelines range, and then apply the 3553(a) factors to arrive at an appropriate sentence.  The

---

[5] The money laundering scheme in Count Eleven relates to the laundering of funds from the T5 pig-butchering scheme.  The bank fraud to which the defendant stipulated related to the defendant's opening bank accounts using fake names in furtherance of the money laundering scheme.  The unlicensed money transmitting scheme to which the defendant stipulated related to the conversions of bulk cash to cashier's checks.  The passport fraud to which the defendant stipulated related to the defendant's use of a fake Chinese passport to make cash to cashier's checks conversions as part of the unlicensed money transmitting scheme.

district court must also "remain cognizant of them throughout the sentencing process." Gall, 552 U.S. at 50 n.6.

### III. Guidelines Calculation

As noted in the government's objections to the PSR, the government calculates the defendant's offense level as set forth below:

Count Eleven – Money Laundering Conspiracy

| | | |
|---|---|---:|
| | Base Offense Level (U.S.S.G. §§ 2S1.1(a)(2), 2B1.1(b)(1)(H)) | 20 |
| Plus: | 18 U.S.C. § 1957 Conviction (§ 2S1.1(b)(2)(A)) | +1 |
| Less: | Minor Role (§ 3B1.2(b)) | -2 |
| Less: | Zero-Point Offender (§ 4C1.1) | -2 |
| Total: | | __17__ |

Stipulated Conduct – Bank Fraud

| | | |
|---|---|---:|
| | Base Offense Level (§ 2B1.1(a)(1)) | 7 |
| Plus: | Sophisticated Means (§ 2B1.1(b)(10)) | +2 |
| Less: | Minor Role (§ 3B1.2(b)) | -2 |
| Less: | Zero-Point Offender (§ 4C1.1) | -2 |
| Total | | __12__[6] |

Stipulated Conduct – Unlicensed Money Transmitting Business

| | | |
|---|---|---:|
| | Base Offense Level (§§ 2S1.3(a)(2), 2B1.1(b)(1)(J)) | 24 |
| Less: | Minor Role (§ 3B1.2(b)) | -2 |
| Less: | Zero-Point Offender (§ 4C1.1) | -2 |
| Total | | __20__ |

---

[6] Pursuant to U.S.S.G. § 2B1.1(b)(10), because the sophisticated means enhancement included in § 2B1.1(b)(10) applies and because the offense level including that enhancement is less than level 12, the offense level is increased to level 12.

4

Stipulated Conduct – Passport Fraud

|  |  |  |
|---|---|---|
| | Base Offense Level (§ 2L2.2(a)) | 8 |
| Plus: | Use of a Foreign Passport (§ 2L2.2(b)(3)) | +2 |
| Less: | Minor Role (§ 3B1.2(b)) | -2 |
| Less: | Zero-Point Offender (§ 4C1.1) | -2 |
| | Total | <u>6</u> |

| Grouping Analysis (§§ 3D1.1, 3D1.2, 3D1.3, 3D1.4) | | Units | Level |
|---|---|---|---|
| Group 1: | Count Eleven, Stipulated Conduct | 1 | 20 |
| Total: | | | <u>20</u> |
| Less: Acceptance of Responsibility (§ 3E1.1(a), (b)) | | | -3 |
| Adjusted Total: | | | <u>17</u> |

      The adjusted total offense level is 17, which, based on a Criminal History Category of I, carries an advisory Guidelines range of 24 to 30 months' imprisonment.[7]

  IV.    <u>A Sentence Between 24 to 30 Months' Imprisonment is Appropriate</u>

      The government respectfully submits that a sentence within the Guidelines range of 24 to 30 months' incarceration is sufficient, but not greater than necessary to achieve the goals of sentencing.

      As an initial matter, the criminal conduct here was serious. The defendant was a willing participant in two significant criminal operations. The laundering of victim funds is a critical element of investment scams such as the pig-butchering scam at the heart of this case. Without facilitators like the defendant, who willingly opened bank accounts under shell company names and used a forged passport to do so, the individuals perpetrating the underlying investment scam would not be able to move their money surreptitiously. The impact of the pig-butchering scam for which the defendant laundered money was devastating to the victims, many of whom lost their entire savings as a result of the scam. The seriousness of the offense and the need to send a significant deterrent message that facilitating investment scams by

---

[7] In his plea agreement, the defendant stipulated to a Guidelines range of 30 to 37 months' imprisonment. However, upon a recalculation of the Guidelines as applicable here, the government submits that the correct Guidelines range is 24 to 30 months' imprisonment.

5

laundering victims' funds is wrong and will be met with consequences militate in favor of a meaningful term of imprisonment.

In addition, unlicensed money transmitting businesses such as the one the defendant participated in substantially undermine the traditional banking system and also prey on individuals who cannot or do not want to use the traditional banking system. Unlicensed money transmitting businesses frequently charge higher commission fees than traditional banks would charge for converting money, thereby harming the customers, many of whom are undocumented immigrants who cannot access the traditional banking system. The seriousness of this offense and the need to deter those who would think that operating an unlicensed money transmitting business is a harmless crime warrants a meaningful sentence.

In light of these considerations, a meaningful term of imprisonment is warranted and the government respectfully requests that the Court impose a sentence of between 24-30 months' incarceration.

Respectfully submitted,

BREON PEACE
United States Attorney

By: *Benjamin Weintraub*
Benjamin Weintraub
Miranda Gonzalez
Raffaela Belizaire
Assistant U.S. Attorneys
(718) 254-7000

6