RCH:BLW/MG/RSB
F. #2021R00629

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

     - against -                    No. 22–CR-458 (LDH)

GREGORY ARMAND,

          Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - -X


## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT GREGORY ARMAND'S MOTION TO DISMISS THE INDICTMENT WITH PREJUDICE


JOSEPH NOCELLA, JR.
UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201


Benjamin L. Weintraub
Miranda Gonzalez
Raffaela S. Belizaire
Assistant U.S. Attorneys
    (Of Counsel)

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND ............................................................................................................... 1

    I.    The Criminal Scheme ........................................................................................... 1

    II.   Procedural History ................................................................................................ 3

LEGAL STANDARD ........................................................................................................ 6

DISCUSSION ................................................................................................................... 8

    I.    The Seriousness of the Offense ........................................................................... 8

    II.   The Facts and Circumstances of the Case That Led to the Dismissal ............................ 10

    III.  The Impact of Reprosecution ............................................................................. 16

    IV.  Prejudice to the Defendant ................................................................................ 18

CONCLUSION ............................................................................................................... 20

<u>TABLE OF AUTHORITIES</u>

Page(s)

CASES

<u>United States v. Alston,</u>
    699 F.Supp. 386 (E.D.N.Y. 1988) ....................................................................... 10

<u>United States v. Bert,</u>
    814 F.3d 70 (2d Cir. 2016) ..................................................................... passim

<u>United States v. Caparella,</u>
    716 F.2d 976 (2d Cir. 1983) ...................................................................... 15

<u>United States v. Gaskin,</u>
    364 F.3d 438 (2d Cir. 2004) ........................................................................ 8

<u>United States v. Giambrone,</u>
    920 F.2d 176 (2d Cir. 1990) ................................................................. 15, 17

<u>United States v. Hernandez,</u>
    863 F.2d 239 (2d Cir.1988) ................................................................. 10, 15

<u>United States v. Hoskins,</u>
    44 F.4th 140 (2d Cir. 2022) ......................................................................... 7

<u>United States v. Kiszewski,</u>
    877 F.2d 210 (2d Cir. 1989) ...................................................................... 17

<u>United States v. McCrudden,</u>
    222 F. Supp. 2d 352 (E.D.N.Y. 2002) .................................................... 18

<u>United States v. Munlyn,</u>
    607 F. Supp. 2d 394 (E.D.N.Y. 2009) .................................................... 16

<u>United States v. Ojo,</u>
    630 F. App'x 83 (2d Cir. 2015) ............................................................ 9, 19

<u>United States v. Pikus,</u>
    39 F.4th 39 (2d Cir. 2022) ...................................................................... 6, 19

<u>United States v. Pikus,</u>
    No. 24-1262-CR, 2025 WL 1214405 (2d Cir. Apr. 28, 2025) ................. 9

<u>United States v. Simmons,</u>
    786 F.2d 479 (2d Cir. 1986) ................................................................. 7, 10

United States v. Solnin,
    81 F. Supp. 3d 193 (E.D.N.Y. 2015) ................................................................ 10

United States v. Stevenson,
    832 F.3d 412 (3d Cir. 2016) ............................................................................ 9

United States v. Taylor,
    487 U.S. 326 (1988)................................................................................. passim

United States v. Teman,
    No. 19-CR-696 (PAE), 2019 WL 7041646 (S.D.N.Y. Dec. 20, 2019) ............... 8, 17

United States v. Wells,
    893 F.2d 535 (2d Cir. 1990) ............................................................................ 19

United States v. Wilson,
    11 F.3d 346 (2d Cir. 1993) ......................................................................... 11, 16

Zedner v. United States,
    547 U.S. 489 (2006)................................................................................... 7, 16

## STATUTES

18 U.S.C. § 1956(h) ............................................................................................. 3

18 U.S.C. § 1957 .................................................................................................. 3

18 U.S.C. § 1957(b)(1) ......................................................................................... 8

18 U.S.C. § 3161(h)(7)(A) ................................................................................... 14

18 U.S.C. § 3162(a)(2).................................................................................... 7, 16

## RULES

Federal Rule of Criminal Procedure 16 .................................................................. 3

## PRELIMINARY STATEMENT

The government respectfully submits this memorandum of law in opposition to the defendant Gregory Armand's ("the defendant" or "Armand") motion to dismiss the indictment ("Indictment") with prejudice ("Mot."). The Motion is premised on the defendant's claim that the government "acknowledge[d] that it failed to request excludable time not through oversight or inadvertence, but through complete disregard for fundamental procedural requirements." Mot. at 2. That claim is false and, as set forth in detail below, the Court should deny the defendant's motion to dismiss the Indictment with prejudice.

## BACKGROUND

I.      The Criminal Scheme

The defendant, along with ten co-conspirators, engaged in a massive operation to launder the proceeds of a romance scam named the "T5 Scam." In the T5 Scam, victims were contacted on messaging applications, such as WhatsApp, by strangers who claimed to have made money investing in various investment markets, such as cryptocurrency markets and foreign exchange markets. After developing relationships and being convinced to invest, the victims were referred to a purported account manager (the "T5 Account Manager") who directed the victims to wire funds to specific bank accounts. The victims were later denied the ability to withdraw their invested funds. Law enforcement estimates there are over 200 victims of the T5 Scam with losses totaling almost $18 million.

Once the victims wired funds to these bank accounts, the defendant and his co-conspirators laundered those funds to their personal or business checking accounts and then again into other bank accounts, cryptocurrency accounts or withdrew the funds as cash. The evidence in this case reveals that the defendant not only knew that the funds represented proceeds

from illegal activity, but that he also knew that they were specifically derived from the T5 Scam. In total, the defendant and his co-conspirators laundered over $18 million of victim funds.

For example, on or about September 21, 2021, a victim ("Victim-1") made three wire transfers totaling approximately $25,000 to a bank account in the name of Armand Group LLC, which was the defendant's supposed company. The leader of the money laundering conspiracy, co-defendant Jin Hua Zhang ("Zhang"), texted screenshots of the wire transfers to the defendant confirming the transfers "should show[] in account tomorrow morning," which they did, on September 22, 2021. The defendant texted a screenshot of his account to Zhang on September 22, 2021, confirming receipt of the transfers. The defendant transferred the funds out of his account that day.

As another example, on or about September 29, 2021, Zhang texted a photograph of a victim's ("Victim-2") driver license directly to the defendant. The next day, in a separate group chat among the defendant, Zhang and co-defendant Jiahui Miao ("Miao"), Miao texted a screenshot of a cryptocurrency account. Zhang referenced "t5" and wrote that "3 batches [referring to money] can run a day." One week later, Victim-2 wired $20,000 to a bank account in the name of Armand Group LLC. Messages revealed that the T5 Account Manager spoke with Victim-2 and requested Victim-2 send him a screenshot confirming that the $20,000 wire had been successful. Approximately one minute after Victim-2 sent the screenshot to the T5 Account Manager, Zhang texted the same screenshot to the defendant. Victim-2 wired a total of $140,666 to the defendant's bank account. Furthermore, on or about October 6, 2021, a victim ("Victim-3") wired approximately $40,000 to a bank account in the name of Armand Group LLC. The defendant cashed out and closed the account about one month later.

In total, the defendant personally laundered approximately $258,300 of victim funds derived from at least two separate victims.

## II.    Procedural History

On October 6, 2022, a grand jury returned the Indictment charging the defendant with one count of engaging in a money laundering conspiracy (Count Eleven), in violation of 18 U.S.C. § 1956(h), and one count of money laundering (Count Thirteen), in violation of 18 U.S.C. § 1957.[1]  The defendant was arrested on October 13, 2022 and released on a $100,000 bond secured by two suretors.  At the defendant's arraignment on October 13, 2022, an initial status conference was scheduled for November 14, 2022, and time was excluded from October 13, 2022 to November 14, 2022.  See ECF No. 24.  The defendant consented to this exclusion of time.

On November 3, 2022, the Court adjourned the November 14, 2022 status conference until December 14, 2022 and ordered that, "[t]he parties are directed to file a letter providing a status update and indicating consent to exclusion of time to December 14, 2022 no later than November 14, 2022."  See Nov. 3, 2022 Order.  On November 14, 2022, the government filed a status update on behalf of all parties and requested an exclusion of time, to which the defendant consented.  See ECF No. 106.  On November 16, 2022, the Court entered an Order excluding time from November 14, 2022 to December 14, 2022.  See Nov. 16, 2022 Order.

On December 13, 2022, the government made its first production of discovery materials pursuant to Federal Rule of Criminal Procedure 16 to the defendant.  The first status conference was held on December 14, 2022.  Following that status conference, the court designated the case "complex" under the Speedy Trial Act and scheduled the next status conference for April

---

[1] Count Thirteen relates to the September 22, 2021 transfers of Victim-1 funds, previously described.

11, 2023.  See Dec. 14, 2022 Minute Entry and Order.  On March 9, 2023 and March 23, 2023, the government made additional productions of discovery materials to the defendant.  On April 11, 2023, the Court held another status conference.  Following the conference, the Court scheduled another status conference for September 14, 2023 and excluded time from April 11, 2023 to September 14, 2023.  See Apr. 11, 2023 Minute Entry and Order.  The defendant consented to this exclusion of time at the status conference.

On May 17, 2023 and August 31, 2023, the government made additional productions of discovery materials to the defendant.  On September 13, 2023, the Court adjourned the September 14, 2023 status conference until October 25, 2023 and entered an Order stating, "[t]he parties are directed to submit a joint letter by September 14, 2023, not to exceed two (2) pages, indicating the status of the case and whether the parties request any exclusion of time to October 25, 2023."  See Sept. 13, 2023 Order.  On September 14, 2023, the government filed a status update on behalf of all parties and requested an exclusion of time.  The defendant consented to this request for an exclusion of time.  On September 22, 2023, the Court entered an Order excluding time from September 14, 2023 to October 25, 2023.  See Sept. 22, 2023 Order.

On October 18, 2023, the government made an additional production of discovery materials to the defendant.  The Court held a status conference on October 25, 2023, and scheduled the next status conference for January 24, 2024.  The Court excluded time from October 25, 2023 to January 24, 2024.  See Oct. 25, 2023 Minute Entry and Order.  The defendant consented to this exclusion of time at the status conference.  On December 22, 2023, the government made an additional production of discovery materials to the defendant.  On January 23, 2024, the Court adjourned the January 24, 2024 status conference until March 7, 2024 and entered an Order stating, "[t]he parties shall file a joint status letter by January 23, 2024, indicating, among other things,

whether they consent to an exclusion of time until March 7, 2024." See Jan. 23, 2024 Order. On January 23, 2024, the government filed a status update on behalf of all parties and requested an exclusion of time. The defendant consented to this request for an exclusion of time. On January 30, 2024, the Court entered an Order excluding time until March 7, 2024. See Jan. 30, 2024 Order.

The Court held a status conference on March 7, 2024. Following the status conference, the Court entered an order scheduling another status conference for May 8, 2024 and excluding time from March 7, 2024 to May 8, 2024. See Mar. 7, 2024 Order. The defendant consented to this exclusion of time at the status conference. The Court held a status conference on May 8, 2024. At the status conference, the Court scheduled trial to commence on January 26, 2026. Following the status conference, the Court entered an order scheduling another status conference for September 12, 2024, and excluding time from May 8, 2024 to September 12, 2024 and memorializing the trial date. See May 8, 2024 Order. The defendant consented to this exclusion of time at the status conference.

On May 14, 2024, the government made an additional production of discovery materials to the defendant. The Court held a status conference on September 12, 2024. Following the status conference, the Court entered an order scheduling another status conference for February 6, 2025 and excluding time from September 12, 2024 to February 6, 2025. See Sept. 12, 2024 Order. The defendant consented to this exclusion of time at the status conference.

On February 5, 2025, the Court adjourned sine die the status conference scheduled for February 6, 2025 and entered and Order stating, "[t]he parties are directed to file a status letter on or before February 13, 2025." See Feb. 5, 2025 Order. In that Order, the Court excluded time from February 6, 2025 to February 13, 2025. The parties failed to submit the status letter ordered by the Court. On June 4, 2025, the Court entered an Order directing the parties to file a joint status

letter by June 5, 2025.  On June 5, 2025, the government filed a status letter on behalf of the parties remaining in the case.  In the letter, the government, with Armand's consent, requested an exclusion of time between June 5, 2025 and the date of the next-scheduled status conference.  See ECF No. 324.  On June 10, 2025, the Court scheduled a status conference for June 13, 2025.  See June 10, 2025 Scheduling Order.  On June 12, 2025, the Court adjourned the June 13, 2025 status conference until June 17, 2025 and directed the parties to file a letter advising the Court as to whether the parties consented to an exclusion of time until June 17, 2025.  See June 12, 2025 Scheduling Order.  On June 13, 2025, counsel for Armand filed a letter on behalf of all parties, including the government, consenting to an exclusion of time until June 18, 2025.  See ECF No. 326.  On June 13, 2025, the Court adjourned the June 17, 2025 status conference until June 18, 2025.  See June 13, 2025 Scheduling Order.  On June 18, 2025, the Court held a status conference. The Court scheduled the next status conference for August 18, 2025, and excluded time until August 19, 2025.  See June 18, 2025 Minute Entry and Order.  The defendant consented to that exclusion of time.  In total, between February 13, 2025 and June 13, 2025, 120 days elapsed, meaning that after the excusable 70-day delay permitted by the Speedy Trial Act, 50 unexcused days—just under two months—had elapsed.

In the time between the defendant's initial arraignment and February 13, 2025, 10 of the 12 defendants charged in this case pleaded guilty.  At the time the February 13, 2025 status letter was due, the only defendants who had not resolved the case were Gregory Armand and Cencheng Luo ("Luo").  On July 28, 2025, the government entered into a Deferred Prosecution Agreement with Luo, leaving Armand as the only remaining defendant.

## LEGAL STANDARD

Section 3161(c)(1) "provides that a criminal case shall be brought to trial within [seventy] days, subject to limited exclusions."  United States v. Pikus, 39 F.4th 39, 42 (2d Cir.

2022); see also United States v. Hoskins, 44 F.4th 140, 152 (2d Cir. 2022) ("The [Speedy Trial Act] requires a defendant's trial to commence within [seventy] days of his indictment or first appearance (whichever is later)[.]").  When a trial is not commenced within the prescribed period of time, "the indictment shall be dismissed on motion of the defendant."  18 U.S.C. § 3162(a)(2). Such dismissal may be with or without prejudice.  See id.; see also Zedner v. United States, 547 U.S. 489, 499 (2006) ("[I]f a meritorious and timely motion to dismiss is filed [by the defendant], the district court must dismiss the charges, though it may choose whether to dismiss with or without prejudice.").

In determining whether to dismiss an indictment with or without prejudice, the "court shall consider, among others, each of the following facts: the seriousness of the offense, the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of [the Speedy Trial Act] and on the administration of justice."  18 U.S.C. § 3162(a)(2).  "In addition to these statutory factors, the Supreme Court has indicated that prejudice to the defendant should also be considered."  United States v. Taylor, 487 U.S. 326, 334 (1988).

It is well-settled that there is no presumption that dismissal with or without prejudice is the appropriate remedy for a violation of the Speedy Trial Act.  The Supreme Court has recognized that "Congress did not intend any particular type of dismissal to serve as the presumptive remedy for a Speedy Trial Act violation."  Taylor, 487 U.S. at 334; see also United States v. Simmons, 786 F.2d 479, 485 (2d Cir. 1986) ("[T]here is no presumption in favor of dismissal with prejudice in this circuit.").  Rather, "the determination of whether to dismiss an indictment with or without prejudice is committed to the discretion of the district court," United States v. Bert, 814 F.3d 70, 79 (2d Cir. 2016) (internal quotation marks omitted).  In determining

the remedy, the court "must carefully consider those factors as applied to the particular case and, whatever its decision, clearly articulate their effect in order to permit meaningful appellate review." Taylor, 487 U.S. at 336.

Moreover, while no single factor is dispositive, dismissals with prejudice generally require a showing of a "bad faith," or a "pattern of neglect," showing a "truly neglectful attitude either on the part of the government or the court," United States v. Bert, 814 F.3d 70, 85 (2d Cir. 2016) (quoting Taylor, 487 U.S. at 339), as well as actual prejudice to the defendant, United States v. Gaskin, 364 F.3d 438, 451 n.3 (2d Cir. 2004).

## DISCUSSION

The government respectfully submits that, given the factors the Court is required to consider, any dismissal of the Indictment should be without prejudice. Following an appropriate balancing of the requisite factors, including the seriousness of the defendant's crimes in participating in an extensive money laundering scheme that spanned two years and laundered over $18 million, the circumstances of inadvertent delay, and the lack of prejudice to the defendant, the dismissal should be without prejudice so that the government may reprosecute the defendant for his crimes.

## I.    The Seriousness of the Offense

"Where the indictment charges a serious offense, it is less likely that the charge will be dismissed with prejudice." United States v. Teman, No. 19-CR-696 (PAE), 2019 WL 7041646, at *7 (S.D.N.Y. Dec. 20, 2019). The charges here are undeniably serious.

The defendant was part of a massive conspiracy that laundered over $18 million in victim funds over the course of two years, and in which he personally laundered over $258,000. He faces up to 10 years in prison for his actions, see 18 U.S.C. § 1957(b)(1), and his estimated Guidelines range, before any reductions for acceptance of responsibility, is 57-71 months'

imprisonment.  The seriousness of the defendant's offense weighs heavily in favor of dismissal without prejudice.  See United States v. Stevenson, 832 F.3d 412, 419 (3d Cir. 2016) ("The logic behind this factor is intuitive: the graver the crimes, the greater the insult to societal interests if the charges are dropped [due to a violation of the Speedy Trial Act], once and for all, without a meaningful determination of guilt or innocence.") (internal quotation marks omitted).

The defendant argues that he was simply a "peripheral participant" whose "participation is confined to banking activity on a single day" and involving "a single fraud victim."  Mot. 6.  But that characterization wholly ignores his participation in a massive money laundering conspiracy and it belies the defendant's role in that scheme.

As alleged in the Indictment, the defendant conspired with his ten co-defendants to launder victim funds for almost two years.  As described above, the defendant did this, in part, by using several bank accounts to receive hundreds of thousands of dollars of victim money, which he then laundered into other accounts—and he is charged substantively with laundering $25,000 of those funds.  He was in direct contact with the leader of the money laundering scheme, Zhang, as well as other co-conspirators about the money laundering conspiracy.  In at least one instance, the defendant also received a picture of a victim's identification document from Zhang.  That the defendant is not charged with using false passports to perpetuate the conspiracy or as being the leader of the conspiracy does not render his conduct not serious.  There is no question that the defendant's charged conduct here is serious.  See United States v. Pikus, No. 24-1262-CR, 2025 WL 1214405, at *2 (2d Cir. Apr. 28, 2025) (offense serious where "indictment charged Pikus with conspiring to perpetrate a massive healthcare fraud scheme that lasted several years and involved tens of millions of dollars in fraudulent claims to Medicare and Medicaid, as well as the concealment of illegal kickbacks through shell companies and false tax returns"); United States v.

9

Ojo, 630 F. App'x 83, 86 (2d Cir. 2015) ("unquestionably serious" offense of wire fraud that, while nonviolent, was punishable by a prison term of up to 20 years and involved a loss of $80,000 suffered over 30 victims); United States v. Alston, 699 F.Supp. 386, 387-88 (E.D.N.Y. 1988) (finding that conspiracy to steal approximately $300,000 over a five-month period, which carried a maximum penalty of five years in prison and a $10,000 fine, was a serious crime under the Speedy Trial Act).

II.      The Facts and Circumstances of the Case That Led to the Dismissal

The Court's assessment of the facts and circumstances that led to the dismissal "focuses equally on the impact of the court's conduct and the impact of the government's conduct on any judicial delay." Bert, 814 F.3d at 80. "[N]egligent conduct by the court or the government renders the second factor (reason for the delay) neutral, at best where the delay is not overly long and there has been no showing of prejudice." Id. (internal quotations and alterations omitted) (citing Simmons, 786 F.2d at 486). "[C]ourts should only preclude reprosecution of a serious crime upon a showing of 'something more than an isolated unwitting violation,' such as a finding of 'bad faith' or a 'pattern of neglect.'" Id. (quoting Taylor, 487 U.S. at 339); see also United States v. Hernandez, 863 F.2d 239, 244 (2d Cir.1988) (dismissal with prejudice inappropriate "in the absence of a factually supported finding of bad faith or a pattern of neglect"). "[T]he length of the delay, as a measure of the seriousness of the speedy trial violation, is a critical consideration in evaluating the facts and circumstances that led to the dismissal." Id. (internal quotation marks and citations omitted). "There is no bright line rule as to whether a period of delay is substantial enough to weigh in favor of or against dismissal with prejudice." United States v. Solnin, 81 F. Supp. 3d 193, 203 (E.D.N.Y. 2015) (dismissing indictment without prejudice despite eight-month

delay).[2]  Because the violation of the Speedy Trial Act at issue here, and the 50-day unexcused

delay that resulted therefrom, was neither the product of bad faith nor a pattern of neglect, this

factor weighs in favor of dismissal without prejudice.

At most, the circumstances that led to the Speedy Trial Act violation can be

described as an "isolated, unwitting" oversight by the government.  On February 6, 2025, the Court

entered an order directing the parties as a collective unit—not just the government—to file a status

letter by February 13, 2025.  The government drafted a letter, which it circulated to counsel for

Armand and Luo on February 11, 2025.  See Mot. Ex. A.  Counsel for Armand and Luo consented

to the letter as drafted.  The government inadvertently failed to file the letter by February 13, 2025,

and was wholly unaware of its oversight until the Court entered its June 4, 2025 order alerting the

parties to their collective failure to file the required status letter by February 13, 2025.  At the June

18, 2025 status conference the government was fully truthful with the Court when it conceded that

it simply forgot to file the status update on February 13, 2025.  On the other hand, counsel for

Armand was contemporaneously aware that the government had neglected to file the agreed-upon

status letter by February 13, 2025, and elected not to alert the government or the Court, or to file

its own letter.  As counsel for Armand admitted at the June 18, 2025 conference, counsel

intentionally disobeyed the Court's order directing all parties to submit a status letter by February

13, 2025.  Even though the government inadvertently missed the February 13, 2025 deadline,

counsel for Armand was independently obligated to file a status letter and intentionally decided

---

[2] The 50-day delay was not so long as to, on its own, weigh in favor of dismissal with
prejudice, nor does the defendant so argue.  See, e.g., United States v. Wilson, 11 F.3d 346, 352
(2d Cir. 1993) (affirming dismissal without prejudice in case involving 42-day unexcused delay
for one defendant).

not to do so, in willful contravention of the Court's Order.  See Tr. at 8:1-9:19 (June 18, 2025 Status Conference).[3]

Armand's attempt to paint the isolated, unintentional oversight by the government as evidence of a pattern of neglect grossly misconstrues the record of conduct in this case.  As noted above, prior to the February 13, 2025 oversight, the government had filed status letters on November 14, 2022, September 14, 2023 and January 23, 2024, all of which requested exclusions of time pursuant to the Speedy Trial Act.  In addition to those status letters, the parties had appeared for multiple status conferences in which the parties all consented to exclusions of time under the Speedy Trial Act.  This record reflects a studious attention to Speedy Trial Act concerns over a two-plus year period prior to a singular oversight in February 2025.

Armand's attempts to miscast the government's conduct as a willful disregard for his Speedy Trial Act rights, or to infer bad faith from the government's oversight, is completely unsupported by the record.  For example, the defendant argues that the fact that the government's draft letter circulated to counsel on February 11, 2025, did not seek an exclusion of time is an indication that the government had decided to disregard his Speedy Trial Act rights.  In actuality, in each of the Court's prior orders that directed the parties to submit a status letter—except, notably, the order immediately precipitating the February 13, 2025 status update—the Court explicitly asked the parties to address whether they were seeking an exclusion of time.  See Nov. 3, 2022 Order ("The parties are directed to file a letter providing a status update and indicating consent to exclusion of time"); Sept. 13, 2023 Order ("The parties are directed to submit a joint letter . . . indicating the status of the case and whether the parties request any exclusion of time"); Jan. 23, 2024 Order ("The parties shall file a joint status letter by January 23, 2024, indicating,

---

[3] The transcript of the June 18, 2025 status conference is attached hereto as Exhibit A.

among other things, <u>whether they consent to an exclusion of time</u>").  Further, in each of those instances, when the Court ordered the parties to submit a status letter the Court had not yet excluded time between the original status conference date and the new adjourned date.  For example, on November 3, 2022, the Court adjourned the status conference scheduled for November 14, 2022 until December 14, 2022.  As of November 3, 2022, the Speedy Trial Act was tolled only until November 14, 2022.  Thus, the Court needed the parties to explicitly state in their status letter their positions regarding a further exclusion of time until December 14, 2022. Similarly, on September 13, 2023, the Court adjourned the September 14, 2023 status conference until October 25, 2023.  As of September 13, 2023, the Speedy Trial Act was tolled only until September 14, 2023.  Thus, the Court needed the parties to explicitly state in their status letter their positions regarding a further exclusion of time until October 25, 2023.  Finally, on January 23, 2024, the Court adjourned the January 24, 2024 status conference until March 7, 2024.  As of January 23, 2024, the Speedy Trial Act was tolled only until January 24, 2024.  Thus, the Court needed the parties to explicitly state in their status letter their positions regarding a further exclusion of time until March 7, 2024.  Naturally, in response to those explicit directives, the government drafted letters that explicitly stated that the parties were jointly seeking an exclusion of time.

On the other hand, the February 5, 2025 Order was different from the prior orders. On February 5, 2025, the Court adjourned the February 6, 2025 status conference <u>sine die</u>.  At that time, the Speedy Trial Act was tolled only until February 6, 2025.  However, in the Court's February 5, 2025 Order, the Court—breaking with its pattern of conduct in each of the prior instances in which it adjourned a status conference and requested a status letter—<u>sua</u> <u>sponte</u> excluded time until February 13, 2025 and did not set a date for a new status conference.  Thus, in

response to that Order, the government drafted a letter that provided a status update but did not explicitly ask for an exclusion of time.  Of course, the Court can exclude time of its own accord and nothing in the Speedy Trial Act required the government to request an exclusion of time.  See 18 U.S.C. § 3161(h)(7)(A) (excluding from Speedy Trial Act clock "[a]ny period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government . . ." (emphasis added)).  Simply put, when the Court directed the parties to address its position vis-à-vis exclusion of time, the government included a position in its status letters.  The defendant's attempt to infer nefarious intentions or bad faith to the fact that the draft February 11, 2025 letter did not request an exclusion of time is, therefore, completely baseless and specious.

Similarly, Armand's attempt to paint the government's oversight as a "troubling" reflection that the government paid "meticulous attention to case management for defendants willing to negotiate but seeming indifference toward the sole defendant demanding his right to a trial" is not only not supported by anything in the record, but in fact belied by it.  In the government's draft February 11, 2025 letter, the government noted that it was in active negotiations with Luo regarding a resolution of the case as to him, but that it was not presently engaged in resolutions negotiations with Armand.  And yet, the government's oversight applied equally to Armand and Luo.  Luo's Speedy Trial Act rights were violated just as much as Armand's were, despite the fact that the government was in resolution negotiations with Luo which ultimately resulted in the government entering into a deferred prosecution agreement with him.  The violation of Armand's—and Luo's—Speedy Trial Act rights was the result of a singular oversight, not a willful inattention to Armand's case because he wanted to go to trial.

14

Similarly, Armand's argument that the government "simply abandoned any further communication" with Armand after "the Government acknowledged . . . that there was no further legitimate reason to exclude time, that plea negotiations were nonexistent, and discovery was complete" is unfounded. First, as noted above, the government never acknowledged that there was no further reason to exclude time. On the contrary, the government maintains that there continues to be valid bases for excluding time given the complexity of the case and continuing review of discovery in anticipation of trial. Indeed, the defendant agrees, as evidenced by the defendant's consent to an exclusion of time from June 18, 2025 (the date of the status conference following the parties' submission of their joint letter on June 4, 2025) to August 19, 2025 (the date of the following status conference). See June 18, 2025 Minute Entry and Order. But more importantly, the government did not "abandon" communication with the defendant. The Court had set a trial date in January 2026. The government understood based on its failed plea negotiations with Armand that he intended to go to trial. There was simply no reason for the government to communicate with Armand between February and June 2025—discovery was complete and there was a trial date set. Armand's attempt to infer sinister motives to a four-month absence of communication when trial was many months away and discovery had been completed is baseless.

The cases cited by the defendant are clearly distinguishable from this case. For example, though in United States v. Caparella, 716 F.2d 976 (2d Cir. 1983), the Second Circuit held that the second factor weighed in favor of dismissal with prejudice despite no finding of bad faith by the government, Caparella predated subsequent Second Circuit cases such as Bert and Hernandez, which both stand for the proposition that there should be a finding of either bad faith or a pattern of neglect in order for the second factor to militate in favor of dismissal with prejudice. See Bert, 814 F.3d at 80; Hernandez, 863 F.2d at 244. In United States v. Giambrone, 920 F.2d

15

176 (2d Cir. 1990), the Second Circuit noted that the court can consider "a demonstrably lackadaisical attitude on the part of the government attorney in charge of the case or a pattern of dilatory practices on the part of the United States Attorney's office in the district in question." Id. at 180.  As outlined above, the government's conduct, over a two-plus year period in this case, demonstrated that it was highly attentive to the defendant's Speedy Trial Act rights, absent this lone oversight.  The government's conduct belies any contention that it engaged in a "pattern of dilatory practices" or had a "demonstrably lackadaisical attitude" with respect to the Speedy Trial Act.

Accordingly, for the reasons stated above, the Court should conclude that the facts and circumstances that led to the dismissal—in particular the isolated nature of the oversight, the lack of bad faith on the government's part, the absence of any evidence that the government engaged in a pattern of neglect, and the defendant's own role in disregarding the Court's February 2025 Order—militate in favor of dismissal without prejudice.

III.    The Impact of Reprosecution

The third statutory factor requires the Court to consider "the impact of a reprosecution on the administration of [the Speedy Trial Act] and on the administration of justice." 18 U.S.C. § 3162(a)(2).  This factor weighs in favor of a dismissal without prejudice, which will serve as a sufficient sanction for the violation of the Speedy Trial Act.

The sanctions provisions of the Speedy Trial Act are designed "to promote compliance with the Act without needlessly subverting important criminal prosecutions." Zedner v. United States, 547 U.S. 489, 499 (2006).  Dismissal without prejudice is not a "toothless sanction," rather, it "forces the Government to obtain a new indictment if it decides to reprosecute." Taylor, 487 U.S. at 342; see also United States v. Wilson, 11 F.3d 346, 353 (2d Cir. 1993) (affirming district court's decision to dismiss indictment without prejudice because, "[w]hile we

believe the Government bears some responsibility for the Speedy Trial Act violations, these violations were adequately redressed by requiring the Government to seek another indictment"); United States v. Munlyn, 607 F. Supp. 2d 394, 401 (E.D.N.Y. 2009) ("[W]hen the charged crime is a serious one, permitting the government to re-file the indictment benefits the administration of justice as a whole.").

Determination of this factor should balance compliance with the demands of the Speedy Trial Act, the interest of the parties, the Court, and the public in swiftly administering justice, and the societal demand that those accused of serious crimes be dealt with according to the law. See United States v. Kiszewski, 877 F.2d 210, 214 (2d Cir. 1989) (affirming district court's considerations, including how "allowing the government an opportunity to reprosecute the defendant" for the "extremely serious offense" of perjury "would, on balance, have a favorable impact on the administration of justice"). Under this factor, the Court should give weight to the deterrent value of requiring the government to reindict the defendant, as well as "any other effect that its decision could have on the administration of the Speedy Trial Act," including "the likelihood of repeated violations and whether there are potential administrative changes prompted by this violation." Bert, 814 F.3d at 86, as well as "a demonstrably lackadaisical attitude on the part of the government attorney in charge of the case or a pattern of dilatory practices on the part of the United States Attorney's office in the district in question," Giambrone, 920 F.2d at 180; Teman, 2019 WL 7041646, at *11 ("In considering whether re-prosecution serves the interests in the swift administration of justice, courts may again consider any bad faith, lax attitude, or pattern of neglect from the government.")

The government respectfully submits that dismissal without prejudice is a sufficient sanction for the Speedy Trial Act violation here—it will require the government to both re-present

the case to a grand jury to obtain a new indictment and it exposes the prosecution to dismissal on statute of limitations grounds if the government does not re-indict by August 2027.  <u>Taylor</u>, 487 U.S. at 342.  To prepare for and present to grand jury will expend prosecutorial and law enforcement resources that otherwise could have been allocated elsewhere and will impose costs on the government that will further encourage compliance.  Significantly, as discussed <u>supra</u>, the government did not engage in any bad faith that caused the delay, but rather brought the delay to the Court's attention and accepted responsibility for the oversight.  <u>See</u> <u>Taylor</u>, 487 U.S. at 343 (reversing dismissal with prejudice where dismissal was "to send a strong message to the Government that unexcused delays will not be tolerated" but "[t]hat factor alone, by definition implicated in almost every Speedy Trial Act case, does not suffice to justify barring reprosecution in light of all the other circumstances present"); <u>United States v. McCrudden</u>, 222 F. Supp. 2d 352, 355 (E.D.N.Y. 2002) ("In this case, the defendant sets forth no evidence of bad faith or a pattern of neglect by the United States Attorney for the Eastern District of New York.  As such, this isolated violation of the Speedy Trial Act does not support dismissal with prejudice to further the administration of justice.").

IV.    <u>Prejudice to the Defendant</u>

While not a statutory factor, the Court should also consider the prejudice to the defendant in determining whether to dismiss with or without prejudice.  <u>Taylor</u>, 487 U.S. at 334; <u>Bert</u>, 814 F.3d at 79.  Generally, "[t]he length of the delay has a bearing on the issue of prejudice: 'The longer the delay, the greater the presumptive or actual prejudice to the defendant, in terms of his ability to prepare for trial or the restrictions on his liberty.'"  <u>Bert</u>, 814 F.3d at 81 (quoting <u>Taylor</u>, 487 U.S. at 340).

The Second Circuit has recognized that there are two types of prejudice: "(1) trial prejudice, i.e., prejudice in the defendant's ability to mount a defense at trial; and (2) non-trial

18

prejudice." Id. at 82.  Non-trial prejudice includes interference with a defendant's liberty, whether detained or out on bond, employment disruptions, draining of financial resources, curtailing associations, subjecting him to public obloquy, or creating anxiety within the defendant, or among family and friends.  See id.  However, natural consequences of prosecution are not dispositive of the prejudice analysis, the defendant must show actual prejudice in persuading the Court to dismiss the case with prejudice.  See United States v. Ojo, 630 F. App'x 83, 86 (2d Cir. 2015) ("While prejudice is presumed to flow from any delay, this factor requires an incremental showing of actual prejudice; otherwise, this factor would always be satisfied and would not be a variable.").

The defendant primarily argues he has suffered non-trial prejudice.  Indeed, his only argument that the delay might impact his ability to mount a trial defense is speculative, claiming "[t]he prejudice to the defense on the merits is, at this time, unknown."  Mot. at 12.  The defendant has not identified any trial prejudice—potential or actual—which militates towards a dismissal without prejudice.  See e.g., Pikus, 39 F.4th at 3 (in discussing the district court's consideration of the presence or absence of trial prejudice, the court commented that the defendant offered no support for his assertion that the delay hurt his ability to mount a defense at trial).

As to non-trial prejudice, the defendant points to his health, the health of his family members, and financial and employment problems.  Mot. 10-12.  The defendant has similarly not articulated how any of these concerns is attributable to the delay in this case.  See United States v. Wells, 893 F.2d 535, 540 (2d Cir. 1990) ("We detect nothing in the record to indicate that the Government's delay caused any prejudice…").  Moreover, on May 8, 2024, the Court announced a trial date of January 26, 2026, and the defendant consented to exclude time until February 13, 2025.  Knowing that his trial would not commence for another year and a half, the defendant never

made a record or a motion to advance his trial. Significantly, the facts and circumstances described above demonstrate that the defendant used gamesmanship in hopes of a windfall dismissal with prejudice when the speedy trial clock expired. While it is not the defendant's responsibility to ensure that he has a speedy trial, "a district court is entitled to construe a defendant's delay in articulating his cognizance of the violation as evidence that he did not suffer actual prejudice[.]" Bert, 814 F.3d at 82.

Accordingly, the defendant, who has remained at liberty pending trial and known of his scheduled trial date in January of 2026, has suffered neither trial nor non-trial prejudice based on the 50-day delay in this case.

## CONCLUSION

For the foregoing reasons, the government respectfully submits that the defendant's motion to dismiss with prejudice should be denied, and the Court should instead dismiss the Indictment without prejudice.

Dated:     Brooklyn, New York
           August 27, 2025

                              Respectfully submitted,

                              JOSEPH NOCELLA, JR.
                              UNITED STATES ATTORNEY
                              Eastern District of New York
                              Attorney for Plaintiff
                              271 Cadman Plaza East
                              Brooklyn, New York 11201


                    By:    _____/s/_____
                           Benjamin L. Weintraub
                           Miranda Gonzalez
                           Raffaela S. Belizaire
                           Assistant United States Attorneys
                           (718) 254-7000