

# CHARLES ALVAREZ, ESQ., LLC

149 Washington Street, 1st Floor │ Bloomfield, New Jersey 07003ᵅ
Telephone (973) 404-0847 │ Facsimile (551) 666-5094
www.charlesalvarezlaw.com

Charles Alvarez, Esq.*  Ivette Ramos Alvarez, Esq.*
Charles@charlesalvarezlaw.com  Ivette@charlesalvarezlaw.com

**VIA EMAIL**

February 9, 2026

The Honorable LaShann DeArcy Hall, U.S.D.J.
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    **Re:  United States v. Yanbin Chen**
         **Criminal Docket No. 22-CR-0458 (LDH)**

Dear Judge DeArcy Hall:

    Please accept this letter brief in lieu of a more formal brief which is being submitted in advance of Mr. Chen's sentencing on March 10,2026.

### PRELIMINARY STATEMENT

    Mr. Chen came to this country to escape persecution and pursue the American dream.  Somewhere along the way of his pursuit of this dream, he lost his way and through his own actions and decisions, he turned this dream into a living nightmare.  He let his desperation and naivety cloud his judgment.  He allowed himself to become involved in a scheme that was much larger than himself and focused only on the short-term gains and did not consider what long-term harm would be done not just to the victims, but to himself and his family.

    As a result of his involvement, he now not only faces a potential federal prison sentence, but removal from the United States altogether.  He now realizes that the path he was on was not just reckless but stupendously dangerous.  He knows he cannot change the

---

ᵅ NY office address: 563 W. 139 St., New York, NY 10031

* Admitted to the Bars of New York and New Jersey

past, but he is prepared to atone for his actions and move forward towards a better future.

While the direction Mr. Chen chooses is ultimately up to him, the Court's sentence will certainly be a large factor in shaping the path forward. There will undoubtedly be many obstacles on the road of his rehabilitation and reintegration, but Mr. Chen has accepted these challenges and welcomes the opportunity to work on himself for his and his family's future.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 13, 2022, Mr. Chen was arrested in the instant matter and charged by way of indictment with various offenses including money laundering, bank fraud, passport fraud, and conspiracy to commit the same. On December 16, 2024, Mr. Chen pled guilty to count 11 of the indictment which charges him with a money laundering conspiracy pursuant to 18 U.S.C. §§ 1956(h) and 1957(b)(1). Mr. Chen further stipulated to separate conduct related to other offenses in the indictment for purposes of sentencing.

The defense does not object to the offense conduct as recited in the PSR. In short, starting on or about May 2021 and going through on or about August 2022, Mr. Chen was involved in large scale fraud and money laundering scheme. In coordination with others, Mr. Chen would obtain funds which had been illegally obtained and transfer them through different accounts either under his name or an alias. He did so at the direction of others and received a fee for these transactions.

## LEGAL ARGUMENT

Following the decision in U.S. v. Booker, 543 U.S. 220 (2005), a sentencing court is to engage in a three-step process when determining what sentence to impose on a defendant. The three steps are as follows: 1) calculate the defendant's Guideline range as it would have done previous to Booker; 2) rule on any departure motion; and 3) exercise its discretion by considering factors promulgated by 18 U.S.C. § 3553(a).

Regardless of how serious a particular criminal offense, the Supreme Court of the United States has clearly stated, "it has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." Koon v. United States, 518 U.S. 81, 113 (1996).

2

In this instance, the "unique study" required by Koon, would be profoundly flawed were the Court not to consider Mr. Chen as an individual in the context of his life as a whole.

### 1) THE APPLICABLE OFFENSE LEVEL FOR MR. CHEN'S SHOULD BE 17 AS DETAILED IN HIS PLEA AGREEMENT

As per the plea agreement entered between Mr. Chen and the Government, his guidelines' offense level is 17. The presentence report ("PSR") prepared by probation however, states that Mr. Chen's total offense level is a 20. The PSR, however, states in footnote 16 that the Court had previously ruled it would adopt the calculation in the plea agreement and so the applicable level would be 17. Level 17 with no criminal history (as is the case with Mr. Chen) results in a sentence range of 24 to 30 months in custody. Mr. Chen requests that the Court be guided by agreed upon stipulations provided in the plea, rather than probations calculation, when determining the total offense level.

### 2) MR. CHEN HAS NO MOTIONS DOWNWARD DEPATURE MOTIONS FOR THE COURT TO CONSIDER

There are no motions for a downward departure filed by Mr. Chen.

### 3) THE COURT SHOULD CONSIDER MR. CHEN's PERSONAL CHARACTERISTICS AS PER 18 U.S.C. § 3553(a) WHEN DETERMINING HIS SENTENCE

In imposing its sentence, the Court is directed to consider "the history and characteristics of the defendant." 18 U.S.C.A. § 3553(a)(1). As the court in Koon stated, each case is a *unique study* in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." Koon, 518 U.S. at 113 (1996) (emphasis added). The Court would be remiss if it did not consider Mr. Chen in the context of his life, in its entirety, when determining his final sentence in this case.

Mr. Chen is 37-year-old father of one, with limited education, and no criminal history. For the first time in his life, he is faced with the possibility of having to serve a prison sentence in a foreign country. In fact, this is the first time Mr. Chen has ever had any contact with the criminal justice system at any level in any country. The current circumstances are unchartered territory for Mr. Chen and his family.

3

Mr. Chen grew up in the Fujian province in China. Although his family did not have substantial means, he reported his basic needs were met. Mr. Chen left school at the age of 15 due to his poor academic performance. Upon leaving school he attempted to obtain some vocational training in stone sculpting. Mr. Chen, however, could not complete his training in stone sculpting and obtained a truck driver's license which is how he earned a living prior to coming to the United States.

Like many others before him, Mr. Chen came to this country to both seek new opportunities and to escape persecution for his religious beliefs. The circumstances of his departure are particularly noteworthy. As a practicing Christian, Mr. Chen would attend religious gatherings with other members of his faith. While the Chinese government professes to support a freedom of religion, the reality is that it is heavily monitored and controlled by the government. Groups that do not conform with the government's ideal are persecuted. Mr. chen found himself in such a situation; he could not practice his faith without fear of government retribution. The fear of what would happen not only to him, but to his family, ultimately led him to flee to the United States.

Upon his arrival in the United States, Mr. Chen sought out whatever work he could obtain. Due to his lack of education and unfamiliarity with the English language his job opportunities were limited. He primarily worked in restaurants and then nail salons. His goal was to obtain some form of financial stability before sending for his family to join him. From his arrival in the United States until approximately 2020, Mr. Chen was consistently employed. Unfortunately, as was the case with millions of people around the world, the COVID-19 pandemic upended all aspects of his life. This was the first time since entering the United States that Mr. Chen was not steadily employed.

It is no surprise that it was around this time that Mr. Chen became associated with and involved in the instant criminal offense. With no opportunities or prospects for making a living, he was identified and influenced by his co-defendants to engage in this criminal activity. There is no excuse of justification for his participation in this criminal scheme, however, there is no question that his co-defendants preyed upon his lack of education and desperation when they recruited him into this offense.

Mr. Chen is now facing the dire consequences of his involvement in this scheme. Not only is he certainly facing a prison sentence, but he is subject to removal from the United States as he is not a Citizen. He will likely be forced to return to China, which he was trying to escape for his religious freedom.

4

      To say that the current circumstances of Mr. Chen's case have been stressful on him would be an understatement. As he reported, the never used any drugs, and only drank alcohol sparingly through his life. The stress of this case and the specter of his sentence however overwhelmed him and he began to use ketamine to cope. Mr. Chen even went so far as to request that he be remanded to custody because he was having difficulty coping with the stress of his situation.

      It is evident that Mr. Chen has reached a critical point in his life. He is 37 years old and has had to learn the hard way that criminal activity is not a sustainable or safe way to make a living. Mr. Chen realizes that he ruined his dreams of a better future for him and his family in the United State by his actions.

      The consequences of Mr. Chen's actions, both direct and indirect, will follow him, and his family, for the rest of his life. Not only will he have to struggle against the stigma of being a convicted felon, but he will have to return to the country that persecuted him for his religious beliefs. He will need extraordinary resolve and the support of his loved ones to put his life on track. As the Court is aware, this is Mr. Chen's first contact with the criminal justice system, and the impact this case has had on him and his family is more than sufficient to deter him from ever engaging in criminal activity again. Mr. Chen is prepared to accept the sentence of this Court and use it not only to atone for wrongdoing he did, but to also take the time to better himself and prepare for a productive and crime-free future.

## CONCLUSION

      For the foregoing reasons Mr. Chen respectfully requests that the Court take the § 3553 factors into consideration when determining his sentence. The defendant reserves the right to present additional testimony and evidence relating to his sentence at the time of his sentencing hearing.

      Thank you.

Respectfully,

CHARLES ALVAREZ, ESQ.

Cc:   Benjamin Weintraub, AUSA
      U.S. Probation